UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division
www.flsb.uscourts.gov

In re:  Case No.: 18-13389-BKC-RBR

SUMMIT FINANCIAL CORP.,  Chapter 11

    Debtor.
_____/

**DEBTOR-IN-POSSESSION'S EMERGENCY MOTION FOR ENTRY OF AN ORDER (1) AUTHORIZING USE OF CASH COLLATERAL; (2) GRANTING ADEQUATE PROTECTION; AND (3) SCHEDULING A FINAL HEARING**

** Emergency Hearing Requested Pursuant to Local Rule 9075-1 **

**The Debtor requests an emergency hearing in this matter to prevent immediate and irreparable harm that would occur if the Debtor does not have immediate access to use of cash collateral to fund the continued operation of its business, payroll and critical expenses in order to preserve the value of the estate, as referenced in the Debtor's budget attached hereto. As certain of the Debtor's bills come due on March 29, 2018, the Debtor respectfully requests that this motion be set for hearing on or before March 29, 2018.**

Debtor-in-Possession, Summit Financial Corp. (the "Debtor"), through its proposed undersigned counsel, seeks the entry of an order: (i) authorizing its proposed use of cash collateral pursuant to 11 U.S.C. § 363; (ii) granting adequate protection to the secured creditors referenced below, pursuant to 11 U.S.C. §§ 361 and 363; and (iii) scheduling a final hearing on this motion within 30 days of the date hereof. In support of this motion (the "Motion"), the Debtor states:

### Jurisdiction

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested is 11 U.S.C. §§ 105 and 363 and Fed. R. Bankr. P. 4001(d)(1)(D).

_____
Leiderman Shelomith Alexander + Somodevilla, PLLC
Miami | Fort Lauderdale

**Background**

3. On March 23, 2018 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code.

4. The Debtor continues to manage and operate its business as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108. No trustee or examiner has been appointed.

5. Summit Financial Corp. is in the business of providing financing by purchasing and servicing retail installment sales contracts originated at franchised automobile dealerships and select independent used car dealerships located throughout Florida.

6. Summit Financial Corp. is family-owned and has operated successfully for over 34 years. The Debtor employs 43 employees throughout Florida. The Debtor operates at 100 NW 100 Ave, Plantation, FL 33324.

7. This Chapter 11 filing was precipitated by a large number of defaults of retail installment sales contracts caused by Hurricane Irma, which resulted in the Debtor defaulting on its obligations to its secured lender(s). The Debtor's cash flow was impacted by Hurricane Irma that made landfall in Florida on September 10, 2017.

8. FEMA reported as of October 16, 2017 that approximately 2,148,134 businesses in Florida, Georgia, Puerto Rico and the Virgin Islands were potentially impacted by the storm, with 2,108,378 businesses in 48 Florida counties (including 258,684 businesses in Broward) potentially being impacted[1]. The Debtor is one of those 258,684 Broward businesses affected by the storm. Due to the hurricane, all throughout Florida, major roadways and interstates were either closed or were not available, power outages lasted for days, and in some locations, weeks, and individuals were prevented from working and ultimately making their car payments to the Debtor. These challenges resulted in a

---

[1] *See* Dun & Bradstreet, "Impact of Hurricane Irma", http://www.dnb.com/utilitypages/businesses-impacted-from-hurricane-irma.html.

_____

Leiderman Shelomith Alexander + Somodevilla, PLLC
Miami | Fort Lauderdale

domino effect by causing a delay in the receipt of revenue, which could be utilized by the Debtor.

9. Upon information and belief, the Debtor's pre-petition secured creditors who may claim an interest in the Debtor's cash collateral are Bank of America, N.A. ("Bank of America") and BMO Harris Bank, N.A.[2] (The secured creditors referenced in this paragraph shall collectively be referred to as the "Secured Creditors") pursuant to the Third Amended and Restated Loan and Security Agreement between the Debtor and Bank of America. The Debtor reserves the right to challenge the validity, priority and extent of the Secured Creditors' liens against the Debtor's assets, as well as the amount and validity of the Secured Creditors' claims against the Debtor.

10. The claims of the Secured Creditors are summarized as follows[3]:

- **Bank of America, N.A.        $77,000,000**
- **BMO Harris Bank N.A.         $33,000,000**

## Cash Collateral and the Relief Requested by the Debtor

11. Through this Motion, the Debtor seeks an Order of this Court authorizing the Debtor to use cash collateral pursuant to 11 U.S.C. §§ 105 and 363, Fed. R. Bank. P. 4001(b)(2) and Local Rule 4001-3, since any cash collateral generated by the Debtor may constitute the cash collateral of the Secured Creditors.

12. The Debtor has an immediate and critical need to use cash collateral in order to preserve and protect the value of its assets. The Debtor will need to use cash collateral to conduct its operation, including, but not limited to, payment of wages, funding of new loans in the ordinary course of its business, supplies and outside services. The Debtor's approximate cash needs for the next twelve (12) weeks (the "Budget Period") are set forth in the budget attached hereto as Exhibit "A" (the "Budget"), which includes the Debtor's

---

[2] The obligation owed to BMO Harris Bank N.A. is serviced by Bank of America.

[3] The Debtor's only other secured lender is NEC Financial Services, LLC, which is the lessor of 1 NEC SV9300 phone system. NEC Financial Services, LLC does not have an interest in cash collateral.

_____

Leiderman Shelomith Alexander + Somodevilla, PLLC
Miami | Fort Lauderdale

accountant's significant assumptions. The Debtor requests that the Court approve the Debtor's use of cash collateral within a 10% variance from the Budget. Without the ability to continue to use cash collateral, the Debtor's estate and creditors would suffer immediate and irreparable harm.

13. Specifically, without the use of cash collateral to pay ongoing operating expenses, the Debtor will be required to discontinue its business operation, which would cause immediate and irreparable harm not only to the Chapter 11 estate, but to the potential recovery of creditors. It is only through the Debtor's continued business activities and the generation of revenue therefrom that the Debtor will be able to continue operating.

14. 11 U.S.C. § 363(c)(2) permits a debtor-in-possession to use, sell or lease "cash collateral" if: (a) each entity that has an interest in such cash collateral consents; or (b) the court, after notice and a hearing, authorizes such use, sale or lease. If a secured creditor does not consent to the use of its cash collateral, the Court may authorize a debtor to use cash collateral if it determines that the debtor has provided "adequate protection" to the secured creditor's interest in the cash collateral. *See* 11 U.S.C. § 363(c)(2)(B) and 363(c)(3).

15. While the Bankruptcy Code does not explicitly define "adequate protection", it does suggest that adequate protection may be provided by: (a) periodic cash payments to the extent that there is a decrease in the lien holder's interest in the property; (b) providing additional or replacement liens; or (c) other relief resulting in the realization of the "indubitable equivalent" of the lien holder's interest in the property. *See* 11 U.S.C. § 361.

16. The Debtor acknowledges that the Secured Creditors, assuming that the Secured Creditors have valid claims and are properly secured and perfected in the cash collateral, may have a lien on the cash collateral in accordance with 11 U.S.C. §§ 361 and 363. In connection therewith and in an abundance of caution, the Debtor seeks the use of cash collateral in its operations, and as such, if necessary, it will provide adequate

protection to the Secured Creditors pursuant to the terms hereof, to the extent necessary and appropriate.

17.   Therefore, the Debtor requests that the Court conduct a preliminary hearing pursuant to Fed. R. Bank. P. 4001(b)(2) and authorize the Debtor to use cash collateral on an interim basis pending a final hearing.

18.   In addition to the protections set forth below, the Secured Creditors are adequately protected in that the Debtor's proposed Budget illustrates that the Debtor will be operating on a cash-flow positive basis and the Debtor agrees to grant the Secured Creditors replacement liens on post-petition assets to the extent their pre-petition collateral is diminished by the Debtor's use of cash collateral.

19.   Furthermore, the value of the Debtor's accounts receivable (the retail installment sales contracts described above) is approximately $136,000,000.  Therefore, the Secured Creditors enjoy an equity cushion, such that their collateral is fully protected.

20.   Finally, the Secured Creditors' collateral, consisting primarily of the accounts receivable described above, is not diminishing in value and will not, as long as such accounts are being properly serviced by the ongoing operation of the Debtor.

21.   Supplemental to the replacement liens, the Debtor will furnish the Secured Creditors with such financial and other information as the Secured Creditors reasonably request with respect to the Debtor's operations.

22.   Notwithstanding the above, the Secured Creditors are adequately protected for any potential diminution in the value of the pre-petition collateral, including any diminution resulting from the Debtor's use of the cash collateral, during the Budget Period.

23.   Finally, the Debtor further proposes to provide replacement liens on the Debtor's post-petition cash and accounts receivable, to the extent of any Secured Creditors' lien(s) on accounts receivable pre-petition.

24. The Secured Creditors are only entitled to protection against the decline in value of its pre-petition collateral resulting from the Debtor's use of cash collateral. The granting of the replacement liens set forth above provide the Secured Creditors with more than sufficient adequate protection within the meaning of 11 U.S.C. §§ 361 and 363(e). 11 U.S.C. § 361(2) expressly provides that the granting of a replacement lien constitutes a means of providing adequate protection.

25. Furthermore, the use of cash collateral will preserve the Debtor's going concern, resulting in a higher distribution to unsecured creditors.

26. Pursuant to Fed. R. Bankr. P. 4001(b)(2), the Court can approve the Debtor's request for use of cash collateral during the 14 day period following of the filing of this Motion "as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing."

27. Accordingly, the Debtor submits that the Court should approve the Debtor's proposed use of cash collateral on an interim basis, and schedule a final hearing.

### Local Rule 9075-1 Certification

28. Undersigned counsel is in the process of working with counsel for Bank of America, regarding the issues described herein, including negotiation of a Budget (and other terms) that is acceptable to all parties.

29. Therefore, undersigned counsel hereby certifies that he attempted to resolve this matter prior to filing this Motion but was unable to fully and completely resolve any and all issues that exist.

WHEREFORE, the Debtor respectfully requests that the Court enter an order (in the form attached as Exhibit "B"): (i) authorizing its proposed use of cash collateral pursuant to 11 U.S.C. § 363; (ii) granting adequate protection to the secured creditors referenced above pursuant to 11 U.S.C. §§ 361 and 363; (iii) scheduling a final hearing on this motion within

_____
Leiderman Shelomith Alexander + Somodevilla, PLLC
Miami | Fort Lauderdale

30 days of the date hereof; and (iv) for such other and further relief as the Court deems just and proper.

Dated: March 26, 2018.

LEIDERMAN SHELOMITH ALEXANDER
+ SOMODEVILLA, PLLC
Proposed Bankruptcy Counsel for the Debtor-in-Possession
2699 Stirling Road, Suite C401
Ft. Lauderdale, Florida 33312
Telephone: (954) 920-5355
Facsimile:  (954) 920-5371

By:             /s/
    ZACH B. SHELOMITH
    Florida Bar No. 0122548
    zbs@lsaslaw.com
    FELIPE PLECHAC-DIAZ
    Florida Bar No. 0105483
    fpd@lsaslaw.com

LAW OFFICES OF DOUGLAS J. JEFFREY, P.A.
Proposed General and Special Counsel for the Debtor-in-Possession
6625 Miami Lakes Drive East, Suite 379
Miami Lakes, Florida 33014
Telephone: (305) 828-4744
Facsimile:  (305) 828-4718

By:            /s/
    DOUGLAS J. JEFFREY
    Florida Bar No. 149527
    dj@jeffreylawfirm.com

SUMMIT FINANCIAL CORP

MONTHLY BUDGET

|  | April 1-7 Week 1 | April 8-14 Week 2 | April 15-21 Week 3 | April 22-28 Week 4 | April 29-May 5 Week 5 | May 6 -12 Week 6 |
|---|---:|---:|---:|---:|---:|---:|
| **Cash Beginning Balance** | $ 340,325.95 | $ 685,259.80 | $ 1,337,304.47 | $ 2,029,497.76 | $ 2,543,890.05 | $ 2,804,108.90 |
| **REVENUE SOURCES** | | | | | | |
| **Payments Received and Deposited** | $ 1,097,569.23 | $ 1,404,680.05 | $ 1,444,828.66 | $ 1,267,027.66 | $ 1,097,569.23 | $ 1,404,680.05 |
| Interest Income | $ 484,746.65 | $ 484,746.65 | $ 484,746.65 | $ 484,746.65 | $ 481,650.35 | $ 481,650.35 |
| Dealer's Service Fee | $ 54,937.88 | $ 54,937.88 | $ 54,937.88 | $ 54,937.88 | $ 54,587.07 | $ 54,587.07 |
| Late Fee Income | $ 1,615.94 | $ 1,615.94 | $ 1,615.94 | $ 1,615.94 | $ 1,605.54 | $ 1,605.54 |
| Other income | $ 807.85 | $ 807.85 | $ 807.85 | $ 807.85 | $ 802.77 | $ 802.77 |
| Principal Payments Received | $ 555,460.92 | $ 862,571.74 | $ 902,720.35 | $ 724,919.35 | $ 558,923.50 | $ 866,034.32 |
| ***Weekly Revenues*** | $ 1,097,569.23 | $ 1,404,680.05 | $ 1,444,828.66 | $ 1,267,027.66 | $ 1,097,569.23 | $ 1,404,680.05 |
| **CASH DISBURSEMENTS** | | | | | | |
| **Financing Costs** | | | | | | |
| # New Loan Originations | 35.00 | 35.00 | 35.00 | 35.00 | 40.00 | 40.00 |
| New Loan Origination Funding | $ 588,105.00 | $ 588,105.00 | $ 588,105.00 | $ 588,105.00 | $ 672,120.00 | $ 672,120.00 |
| ***Weekly Funding Disbursements*** | $ 588,105.00 | $ 588,105.00 | $ 588,105.00 | $ 588,105.00 | $ 672,120.00 | $ 672,120.00 |
| **Payroll & Benefits** | | | | | | |
| Payroll- Office | $ 54,615.38 | $ 54,615.38 | $ 54,615.38 | $ 54,615.38 | $ 54,615.38 | $ 54,615.38 |
| Payroll - Officers | $ 21,000.00 | $ 21,000.00 | $ 21,000.00 | $ 21,000.00 | $ 21,000.00 | $ 21,000.00 |
| Payroll Taxes | $ 6,284.58 | $ 6,284.58 | $ 6,284.58 | $ 6,284.58 | $ 6,284.58 | $ 6,284.58 |
| Employee Benefits | $ 6,928.41 | $ 6,928.41 | $ 6,928.41 | $ 6,928.41 | $ 6,928.41 | $ 6,928.41 |
| ***Weekly Payroll Costs*** | $ 88,828.37 | $ 88,828.37 | $ 88,828.37 | $ 88,828.37 | $ 88,828.37 | $ 88,828.37 |
| **Direct Expenses** | | | | | | |
| Commissions | $ 4,375.00 | $ 4,375.00 | $ 4,375.00 | $ 4,375.00 | $ 5,000.00 | $ 5,000.00 |
| Credit Reporting | $ 525.00 | $ 525.00 | $ 525.00 | $ 525.00 | $ 600.00 | $ 600.00 |
| Data Processing | $ 20,769.00 | $ 20,769.00 | $ 20,769.00 | $ 20,769.00 | $ 20,769.00 | $ 20,769.00 |
| ***Weekly Direct Expenses*** | $ 25,669.00 | $ 25,669.00 | $ 25,669.00 | $ 25,669.00 | $ 26,369.00 | $ 26,369.00 |
| **Operating Expenses** | | | | | | |
| Auto Expenses | $ 808.31 | $ 808.31 | $ 808.31 | $ 808.31 | $ 808.31 | $ 808.31 |
| Bank Charges | $ 6,004.62 | $ 6,004.62 | $ 6,004.62 | $ 6,004.62 | $ 6,004.62 | $ 6,004.62 |
| Dues and Subscriptions | $ 1,616.63 | $ 1,616.63 | $ 1,616.63 | $ 1,616.63 | $ 1,616.63 | $ 1,616.63 |
| Equipment Leasing | $ 923.79 | $ 923.79 | $ 923.79 | $ 923.79 | $ 923.79 | $ 923.79 |
| General Insurance | $ 1,431.87 | $ 1,431.87 | $ 1,431.87 | $ 1,431.87 | $ 1,431.87 | $ 1,431.87 |
| Legal and Professional | $ 4,618.94 | $ 4,618.94 | $ 4,618.94 | $ 4,618.94 | $ 4,618.94 | $ 4,618.94 |
| Licenses and Taxes | $ 3,233.26 | $ 3,233.26 | $ 3,233.26 | $ 3,233.26 | $ 3,233.26 | $ 3,233.26 |
| Travel, Meals and Entertainment | $ 461.89 | $ 461.89 | $ 461.89 | $ 461.89 | $ 461.89 | $ 461.89 |
| Office Expenses | $ 1,430.72 | $ 1,430.72 | $ 1,430.72 | $ 1,430.72 | $ 1,430.72 | $ 1,430.72 |
| Postage | $ 642.26 | $ 642.26 | $ 642.26 | $ 642.26 | $ 642.26 | $ 642.26 |
| Rent | $ 6,923.08 | $ 6,923.08 | $ 6,923.08 | $ 6,923.07 | $ 6,923.08 | $ 6,923.08 |
| Utilities | $ 1,963.05 | $ 1,963.05 | $ 1,963.05 | $ 1,963.05 | $ 1,963.05 | $ 1,963.05 |
| Telephone | $ 1,847.58 | $ 1,847.58 | $ 1,847.58 | $ 1,847.58 | $ 1,847.58 | $ 1,847.58 |
| ***Weekly Operating Expenses*** | $ 31,905.99 | $ 31,905.99 | $ 31,905.99 | $ 31,905.98 | $ 31,905.99 | $ 31,905.99 |
| **Chapter 11 Administrative Fees and Costs** | | | | | | |
| Case Administrative Costs | $ 3,000.00 | $ 3,000.00 | $ 3,000.00 | $ 3,000.00 | $ 3,000.00 | $ 3,000.00 |
| Legal | $ 8,083.14 | $ 8,083.14 | $ 8,083.14 | $ 8,083.14 | $ 8,083.14 | $ 8,083.14 |
| Accounting | $ 4,041.57 | $ 4,041.57 | $ 4,041.57 | $ 4,041.57 | $ 4,041.57 | $ 4,041.57 |
| Quarterly US Trustee Fees (weekly accrual) | $ 3,002.31 | $ 3,002.31 | $ 3,002.31 | $ 3,002.31 | $ 3,002.31 | $ 3,002.31 |
| ***Weekly Chapter 11 Costs*** | $ 18,127.02 | $ 18,127.02 | $ 18,127.02 | $ 18,127.02 | $ 18,127.02 | $ 18,127.02 |
| **Total Weekly Expenses** | $ 752,635.38 | $ 752,635.38 | $ 752,635.38 | $ 752,635.37 | $ 837,350.38 | $ 837,350.38 |
| **Net Weekly Cash Flow** | $ 344,933.85 | $ 652,044.67 | $ 692,193.28 | $ 514,392.29 | $ 260,218.85 | $ 567,329.67 |
| **Ending Cash Balance** | $ 685,259.80 | $ 1,337,304.47 | $ 2,029,497.76 | $ 2,543,890.05 | $ 2,804,108.90 | $ 3,371,438.57 |

Exhibit "A"

1

SUMMIT FINANCIAL CORP

MONTHLY BUDGET

|  | May 13-19 Week 7 | May 20-26 Week 8 | May 27-June 2 Week 9 | June 3-9 Week 10 | June 10-16 Week 11 | June 17-23 Week 12 |
|---|---|---|---|---|---|---|
| **Cash Beginning Balance** | $ 3,371,438.57 | $ 3,978,916.85 | $ 4,408,594.15 | $ 4,499,383.00 | $ 4,897,282.67 | $ 5,335,330.95 |
| **REVENUE SOURCES** | | | | | | |
| **Payments Received and Deposited** | $ 1,444,828.66 | $ 1,267,027.66 | $ 1,097,569.23 | $ 1,404,680.05 | $ 1,444,828.66 | $ 1,267,027.66 |
| Interest Income | $ 481,650.35 | $ 481,650.35 | $ 480,318.24 | $ 480,318.24 | $ 480,318.24 | $ 480,318.24 |
| Dealer's Service Fee | $ 54,587.07 | $ 54,587.07 | $ 54,436.03 | $ 54,436.03 | $ 54,436.03 | $ 54,436.03 |
| Late Fee Income | $ 1,605.54 | $ 1,605.54 | $ 1,601.15 | $ 1,601.15 | $ 1,601.15 | $ 1,601.15 |
| Other income | $ 802.77 | $ 802.77 | $ 800.46 | $ 800.46 | $ 800.46 | $ 800.46 |
| Principal Payments Received | $ 906,182.94 | $ 728,381.93 | $ 560,413.34 | $ 867,524.16 | $ 907,672.77 | $ 729,871.77 |
| *Weekly Revenues* | $ 1,444,828.66 | $ 1,267,027.66 | $ 1,097,569.23 | $ 1,404,680.05 | $ 1,444,828.66 | $ 1,267,027.66 |
| **CASH DISBURSEMENTS** | | | | | | |
| **Financing Costs** | | | | | | |
| # New Loan Originations | 40.00 | 40.00 | 50.00 | 50.00 | 50.00 | 50.00 |
| New Loan Origination Funding | $ 672,120.00 | $ 672,120.00 | $ 840,150.00 | $ 840,150.00 | $ 840,150.00 | $ 840,150.00 |
| *Weekly Funding Disbursements* | $ 672,120.00 | $ 672,120.00 | $ 840,150.00 | $ 840,150.00 | $ 840,150.00 | $ 840,150.00 |
| **Payroll & Benefits** | | | | | | |
| Payroll- Office | $ 54,615.38 | $ 54,615.38 | $ 54,615.38 | $ 54,615.38 | $ 54,615.38 | $ 54,615.38 |
| Payroll - Officers | $ 21,000.00 | $ 21,000.00 | $ 21,000.00 | $ 21,000.00 | $ 21,000.00 | $ 21,000.00 |
| Payroll Taxes | $ 6,284.58 | $ 6,284.58 | $ 6,284.58 | $ 6,284.58 | $ 6,284.58 | $ 6,284.58 |
| Employee Benefits | $ 6,928.41 | $ 6,928.41 | $ 6,928.41 | $ 6,928.41 | $ 6,928.41 | $ 6,928.41 |
| *Weekly Payroll Costs* | $ 88,828.37 | $ 88,828.37 | $ 88,828.37 | $ 88,828.37 | $ 88,828.37 | $ 88,828.37 |
| **Direct Expenses** | | | | | | |
| Commissions | $ 5,000.00 | $ 5,000.00 | $ 6,250.00 | $ 6,250.00 | $ 6,250.00 | $ 6,250.00 |
| Credit Reporting | $ 600.00 | $ 600.00 | $ 750.00 | $ 750.00 | $ 750.00 | $ 750.00 |
| Data Processing | $ 20,769.00 | $ 20,769.00 | $ 20,769.00 | $ 20,769.00 | $ 20,769.00 | $ 20,769.00 |
| *Weekly Direct Expenses* | $ 26,369.00 | $ 26,369.00 | $ 27,769.00 | $ 27,769.00 | $ 27,769.00 | $ 27,769.00 |
| **Operating Expenses** | | | | | | |
| Auto Expenses | $ 808.31 | $ 808.31 | $ 808.31 | $ 808.31 | $ 808.31 | $ 808.31 |
| Bank Charges | $ 6,004.62 | $ 6,004.62 | $ 6,004.62 | $ 6,004.62 | $ 6,004.62 | $ 6,004.62 |
| Dues and Subscriptions | $ 1,616.63 | $ 1,616.63 | $ 1,616.63 | $ 1,616.63 | $ 1,616.63 | $ 1,616.63 |
| Equipment Leasing | $ 923.79 | $ 923.79 | $ 923.79 | $ 923.79 | $ 923.79 | $ 923.79 |
| General Insurance | $ 1,431.87 | $ 1,431.87 | $ 1,431.87 | $ 1,431.87 | $ 1,431.87 | $ 1,431.87 |
| Legal and Professional | $ 4,618.94 | $ 4,618.94 | $ 4,618.94 | $ 4,618.94 | $ 4,618.94 | $ 4,618.94 |
| Licenses and Taxes | $ 3,233.26 | $ 3,233.26 | $ 3,233.26 | $ 3,233.26 | $ 3,233.26 | $ 3,233.26 |
| Travel, Meals and Entertainment | $ 461.89 | $ 461.89 | $ 461.89 | $ 461.89 | $ 461.89 | $ 461.89 |
| Office Expenses | $ 1,430.72 | $ 1,430.72 | $ 1,430.72 | $ 1,430.72 | $ 1,430.72 | $ 1,430.72 |
| Postage | $ 642.26 | $ 642.26 | $ 642.26 | $ 642.26 | $ 642.26 | $ 642.26 |
| Rent | $ 6,923.08 | $ 6,923.07 | $ 6,923.08 | $ 6,923.08 | $ 6,923.08 | $ 6,923.07 |
| Utilities | $ 1,963.05 | $ 1,963.05 | $ 1,963.05 | $ 1,963.05 | $ 1,963.05 | $ 1,963.05 |
| Telephone | $ 1,847.58 | $ 1,847.58 | $ 1,847.58 | $ 1,847.58 | $ 1,847.58 | $ 1,847.58 |
| *Weekly Operating Expenses* | $ 31,905.99 | $ 31,905.98 | $ 31,905.99 | $ 31,905.99 | $ 31,905.99 | $ 31,905.98 |
| **Chapter 11 Administrative Fees and Costs** | | | | | | |
| Case Administrative Costs | $ 3,000.00 | $ 3,000.00 | $ 3,000.00 | $ 3,000.00 | $ 3,000.00 | $ 3,000.00 |
| Legal | $ 8,083.14 | $ 8,083.14 | $ 8,083.14 | $ 8,083.14 | $ 8,083.14 | $ 8,083.14 |
| Accounting | $ 4,041.57 | $ 4,041.57 | $ 4,041.57 | $ 4,041.57 | $ 4,041.57 | $ 4,041.57 |
| Quarterly US Trustee Fees (weekly accrual) | $ 3,002.31 | $ 3,002.31 | $ 3,002.31 | $ 3,002.31 | $ 3,002.31 | $ 3,002.31 |
| *Weekly Chapter 11 Costs* | $ 18,127.02 | $ 18,127.02 | $ 18,127.02 | $ 18,127.02 | $ 18,127.02 | $ 18,127.02 |
| **Total Weekly Expenses** | $ 837,350.38 | $ 837,350.37 | $ 1,006,780.38 | $ 1,006,780.38 | $ 1,006,780.38 | $ 1,006,780.37 |
| **Net Weekly Cash Flow** | $ 607,478.28 | $ 429,677.29 | $ 90,788.85 | $ 397,899.67 | $ 438,048.28 | $ 260,247.29 |
| **Ending Cash Balance** | $ 3,978,916.85 | $ 4,408,594.15 | $ 4,499,383.00 | $ 4,897,282.67 | $ 5,335,330.95 | $ 5,595,578.25 |

Exhibit "A"

2

SUMMIT FINANCIAL CORP                                          MONTHLY BUDGET

|  | June 24-30 Week | QUARTERLY TOTALS |  |
|---|---|---|---|
|  | 13 |  |  |
| **Cash Beginning Balance** | $ 5,595,578.25 | $ 340,325.95 |  |
| **REVENUE SOURCES** |  |  |  |
| **Payments Received and Deposited** | $ 1,097,569.23 | $ 16,739,886.04 |  |
| Interest Income | $ 480,318.24 | $ 6,267,179.21 |  |
| Dealer's Service Fee | $ 54,436.03 | $ 710,279.91 |  |
| Late Fee Income | $ 1,601.15 | $ 20,891.69 |  |
| Other income | $ 800.46 | $ 10,444.80 |  |
| Principal Payments Received | $ 560,413.34 | $ 9,731,090.43 |  |
| *Weekly Revenues* | $ 1,097,569.23 | $ 16,739,886.04 |  |
| **CASH DISBURSEMENTS** |  |  |  |
| **Financing Costs** |  |  |  |
| # New Loan Originations | 50.00 | 550.00 |  |
| New Loan Origination Funding | $ 840,150.00 | $ 9,241,650.00 |  |
| *Weekly Funding Disbursements* | $ 840,150.00 | $ 9,241,650.00 |  |
| **Payroll & Benefits** |  |  |  |
| Payroll- Office | $ 54,615.38 | $ 710,000.00 |  |
| Payroll - Officers | $ 21,000.00 | $ 273,000.00 |  |
| Payroll Taxes | $ 6,284.58 | $ 81,699.50 |  |
| Employee Benefits | $ 6,928.41 | $ 90,069.28 |  |
| *Weekly Payroll Costs* | $ 88,828.37 | $ 1,154,768.78 |  |
| **Direct Expenses** |  |  |  |
| Commissions | $ 6,250.00 | $ 68,750.00 |  |
| Credit Reporting | $ 750.00 | $ 8,250.00 |  |
| Data Processing | $ 20,769.00 | $ 269,997.00 |  |
| *Weekly Direct Expenses* | $ 27,769.00 | $ 346,997.00 |  |
| **Operating Expenses** |  |  |  |
| Auto Expenses | $ 808.31 | $ 10,508.08 |  |
| Bank Charges | $ 6,004.62 | $ 78,060.05 |  |
| Dues and Subscriptions | $ 1,616.63 | $ 21,016.17 |  |
| Equipment Leasing | $ 923.79 | $ 12,009.24 |  |
| General Insurance | $ 1,431.87 | $ 18,614.32 |  |
| Legal and Professional | $ 4,618.94 | $ 60,046.19 |  |
| Licenses and Taxes | $ 3,233.26 | $ 42,032.33 |  |
| Travel, Meals and Entertainment | $ 461.89 | $ 6,004.62 |  |
| Office Expenses | $ 1,430.72 | $ 18,599.31 |  |
| Postage | $ 642.26 | $ 8,349.42 |  |
| Rent | $ 6,923.07 | $ 90,000.00 |  |
| Utilities | $ 1,963.05 | $ 25,519.63 |  |
| Telephone | $ 1,847.58 | $ 24,018.48 |  |
| *Weekly Operating Expenses* | $ 31,905.98 | $ 414,777.83 |  |
| **Chapter 11 Administrative Fees and Costs** |  |  |  |
| Case Administrative Costs | $ 3,000.00 | $ 39,000.00 |  |
| Legal | $ 8,083.14 | $ 105,080.83 |  |
| Accounting | $ 4,041.57 | $ 52,540.42 |  |
| Quarterly US Trustee Fees (weekly accrual) | $ 3,002.31 | $ 39,030.02 |  |
| *Weekly Chapter 11 Costs* | $ 18,127.02 | $ 235,651.27 |  |
| **Total Weekly Expenses** | $ 1,006,780.37 | $ 11,393,844.88 |  |
| **Net Weekly Cash Flow** | $ 90,788.86 |  |  |
| **Ending Cash Balance** | $ 5,686,367.11 | $ 5,686,367.11 |  |

Exhibit "A"

3

# DINNALL  FYNE & COMPANY INC.
## accountants and advisors

1515 N. University Drive
Ste. 114
Coral Springs, FL  33071
954-340-5696(Phone)
afyne@dinnallfyne.com

**Cash Beginning Balance**-  This amount represents the balance in the Depository Account at close of business on March 23, 2018.

**Payments Received and Deposited**-  Please refer to the Projected Cash spreadsheet.  This amount is based on the average of all deposits made in calendar year 2017 into the Depository account.  The monthly average was reduced by 3% to reflect a slight decrease due to the disruption of normal business practices.  However, it should not be significant as it is from already existing contracts being serviced.

We also analyzed the daily deposits from four months and calculated an average breakdown of the monthly deposits by week.  There is not a significant difference in receipts per week.  It is rather consistent.  We did for illustrative purposes adjust the weekly receipts from those weekly averages.  This does reflect differences in certain weeks that coincide with traditional pay periods (the first week and the week containing the 15th of the month).

**Lines 11- 14- Receipt categories**-  The interest income is based on the schedule of the accrued interest on outstanding and performing loans from a projection prepared by management.

**Line 15 Principal Payments Received** -is the difference of items in lines 11 – 14 and the projected weekly cash receipts from all deposits made in 2017.  Please see attached
Bank statements showing all deposits received in 2017.  There are likely other amounts included in this figure, but primarily should be the principal payments.

**Line 23 New Loan Origination Funding-**Amounts are based upon 2017 loan originations per month and the average new loan funding per transaction.  These are historical figures.   In 2017, the Company averaged 288 new loans per month. The average of new loans is lower in the first thirteen weeks to reflect that the company will need to ramp up to average sales after the disruption due to funding being reduced.   Attached is the spreadsheet from management which shows the contractual method of releasing funds for operations. It is labeled 2017 availability schedule.  There is a distinct correlation of performance pre and post IRMA which affected collections and drove the available funding percentage from 85% to 78%

**Lines 26 through 30 Payroll Costs-** These figures were prepared by Management and reflect the projected payroll costs for 2018.  We corroborated these numbers by comparing them to the 2017 payroll tax returns and payroll reports produced by first ADP and then PayChex.
The officer's salary is for David Wheeler and Scott Wheeler.  Alvin Wheeler is no longer drawing a salary.

Exhibit "A"

Payroll taxes reflects the Employers portion of the Social Security and Medicare taxes.  We added an additional $500.00 per week to reflect unemployment taxes.

Employee Benefits include primarily the employee's health insurance as well as de minimis benefits, workmen's compensation and matching pension costs.

**Lines 33 and 34 Commissions and Credit Reporting** are based upon costs per new contract.  In this case $125.00 for commission and $15.00 per credit report.

**Line 35 Data Processing-**  This amount is for the software companies that own the IT platforms that support the underwriting and billing and receipts and other mandatory programs the Company uses to service its customers.

**All Operating Expenses –** All amounts are the companies budgeted amounts broken down by week.  The Companies budget is based on actual historical amounts adjusted for known differences.  The expenses are consistent with 2017 and 2016 figures.
We have adjusted items that may not be absolutely necessary such as travel, meals and entertainment which was budgeted at $8,000 per month.   Our cash flow projection budgets $2,000.00 per month.  This may not be sufficient as travel costs are unknown at this point.

Bank charges are primarily processing charges for their receipts.  Legal and Professional amounts are for collection costs for delinquent accounts and repossessions as well as any other legal costs that concern day to day operations.

**Line 54 Administrative Fees and Costs-**  Legal and accounting fees are here for informational purposes as these costs require approval from the court which is not anticipated in the first thirteen weeks.  They are for illustrative purposes only to show that the present cash flow can support the costs for this Case.  Other Administrative amounts will also need to be approved and are here to reflect anticipated costs for this case.

**Line 64 Net Weekly Cash Flow**-  This line shows the cash flow expected in the next thirteen weeks.  It does not include any non-cash expenses which usually are reflected on the financials and tax returns, nor does it reflect an amount for debt service.

Exhibit "A"

**PROPOSED ORDER – EXHIBIT "B"**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division
www.flsb.uscourts.gov

In re:                                                          Case No.: 18-13389-RBR

SUMMIT FINANCIAL CORP.,                      Chapter 11

    Debtor.
_____/

**ORDER GRANTING DEBTOR-IN-POSSESSION'S EMERGENCY MOTION FOR ENTRY OF AN ORDER (1) AUTHORIZING USE OF CASH COLLATERAL; (2) GRANTING ADEQUATE PROTECTION; AND (3) SCHEDULING A FINAL HEARING**

THIS CAUSE came on before the Court on _____, 2018 at _____, upon the Debtor-In-Possession's Emergency Motion for Entry of an Order (1) Authorizing Use of Cash Collateral; (2) Granting Adequate Protection; and (3) Scheduling a Final Hearing (the "Motion"). Having reviewed the Motion, hearing arguments of counsel, and the Court being otherwise fully advised in the premises, it is hereby

**ORDERED and ADJUDGED** as follows:

1.    The Motion is GRANTED.

2.    <u>Use of Cash Collateral.</u> The Debtor is authorized to use cash collateral as defined in 11 U.S.C. § 363(a) on an interim basis to pay in the ordinary course of its business for the purposes contained in the budget attached as Exhibit "A" to the Motion (the "Budget"),

through and including _____, 2018 at _____, unless extended by further order of this Court.  The Debtor is also authorized: (i) to exceed any line item on the Budget by an amount equal to ten (10) percent of each such line item; or (ii) to exceed any line item by more than ten (10) percent so long as the total of all amounts in excess of all line items for the Budget do not exceed ten (10) percent in the aggregate of the total Budget.

3. <u>Replacement Liens as Adequate Protection to Secured Creditors.</u> Notwithstanding the provisions of 11 U.S.C. § 552(a), and in addition to the security interests preserved by 11 U.S.C. § 552(b), the Debtor grants in favor of the Secured Creditors (as defined in the Motion), as security for all indebtedness that is owed by the Debtor to the Secured Creditors, under its secured documentation, but only to the extent that Secured Creditors' cash collateral is used by the Debtor, a first priority post-petition security interest and lien in, to and against all of the Debtor's assets, to the same extent that the Secured Creditors held a properly perfected pre-petition security interest in such assets, which are or have been acquired, generated or received by the Debtor subsequent to the Petition Date.  Under no circumstance shall the Secured Creditors have a lien on any of the Debtor's assets that it did not have a right to pre-petition.

4. <u>No Novation.</u>  This Order shall not cause a novation of any of Secured Creditors' secured documentation.

5. <u>Creditor Not Deemed Owner or Operator.</u>  Solely by agreeing to the use of cash collateral by the Debtor, the Secured Creditors shall not be deemed to have assumed any liability to any third person, and shall not be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtor or its assets.

6. <u>Non-Waiver of Rights and Remedies.</u>  This Order is not intended to and shall not prejudice, alter, affect or waive any rights and/or remedies of Debtor or Secured Creditors under the Bankruptcy Code or applicable non-bankruptcy law (including, but not limited to, all matters pertaining to cash and other collateral) and does not bind any subsequently appointed trustee or

committee.  The adequate protection payments set forth above are meant solely to be in the form of adequate protection, and do not bind the Debtor or any other Secured Creditor with respect to proposed Plan treatment or payments, and does not waive the rights of any party with respect thereto.

      7.    <u>Duration.</u>  The provisions of this Order shall remain in effect until 5:00 p.m. on _____.

      8.    <u>Further Hearing.</u>  This Court shall hold a further hearing on the Debtor's use of cash collateral on _____, 2018 at _____ at the United States Courthouse, 299 E Broward Blvd, Room 308, Ft. Lauderdale, FL 33301.

**###**

**Submitted by:**

Zach B. Shelomith, Esq.
Leiderman Shelomith Alexander
+ Somodevilla, PLLC
2699 Stirling Rd # C401
Ft. Lauderdale, FL 33312
Telephone (954) 920-5355
Facsimile (954) 920-5371
zbs@lsaslaw.com

**Copies furnished to:**

Zach B. Shelomith, Esq.

Attorney Shelomith is directed to serve copies of this order on all interested parties and to file a certificate of service.