UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division
www.flsb.uscourts.gov

In re:                                          Case No. 18-13389-BKC-RBR

SUMMIT FINANCIAL CORP.,                         Chapter 11

    Debtor.
_____/

**DEBTOR'S EMERGENCY MOTION FOR: (1) AUTHORITY TO CONTINUE USE OF EXISTING BUSINESS FORMS AND RECORDS; (2) AUTHORITY TO MAINTAIN EXISTING CORPORATE BANK ACCOUNTS (ON AN INTERIM BASIS); (3) AUTHORITY TO MAINTAIN EXISTING CASH MANAGEMENT SYSTEM; AND (4) EXTENSION OF TIME TO COMPLY WITH 11 U.S.C. § 345 INVESTMENT GUIDELINES**

**\*\* Emergency Hearing Requested Pursuant to Local Rule 9075-1 \*\***

**The Debtor maintains a number of bank accounts with Bank of America N.A., which processes hundreds of daily transactions. The United States Trustee Guidelines require the closing of all pre-petition bank accounts and the establishment of new DIP accounts. Changing the Debtor's existing bank accounts at this critical juncture in this Chapter 11 case would severely disrupt the Debtor's cash management system, adversely affect the Debtor's business, and jeopardize its ability to reorganize. 11 U.S.C. § 345 also imposes investment guidelines on the Debtor. Therefore, the Debtor is requesting an extension of time to comply with 11 U.S.C. § 345 or to seek interim relief from its requirements. Therefore, the Debtor respectfully requests that this Motion be set for hearing on or before March 29, 2018.**

Debtor-in-Possession, Summit Financial Corp. (the "Debtor"), through its proposed undersigned counsel, pursuant to 11 U.S.C. §§ 105(a) and 345 and Local Rule 9075-1, seeks the entry of an order: (i) authorizing the Debtor's continued use of existing business forms and records; (ii) authorizing the Debtor to maintain existing corporate bank accounts (on an interim basis); (iii) authorizing the Debtor to maintain existing cash management system, and (iv) extending the time to comply with the guidelines provided for in 11 U.S.C. § 345. In support of this motion (the "Motion"), the Debtor states:

**BACKGROUND**

1. On March 23, 2018 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code.

_____
Leiderman Shelomith Alexander + Somodevilla, PLLC
Miami | Fort Lauderdale

2.  The Debtor continues to manage and operate its business as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.  No trustee or examiner has been appointed.

3.  Summit Financial Corp. is in the business of providing financing by purchasing and servicing retail installment sales contracts originated at franchised automobile dealerships and select independent used car dealerships located throughout Florida.

4.  Summit Financial Corp. is family-owned and has operated successfully for over 34 years. The Debtor employs 43 employees throughout Florida. The Debtor operates at 100 NW 100 Ave, Plantation, FL 33324.

5.  This Chapter 11 filing was precipitated by a large number of defaults of retail installment sales contracts caused by Hurricane Irma, which resulted in the Debtor defaulting on its obligations to its secured lender(s).  The Debtor's cash flow was impacted by Hurricane Irma that made landfall in Florida on September 10, 2017.

6.  FEMA reported as of October 16, 2017 that approximately 2,148,134 businesses in Florida, Georgia, Puerto Rico and the Virgin Islands were potentially impacted by the storm, with 2,108,378 businesses in 48 Florida counties (including 258,684 businesses in Broward) potentially being impacted. The Debtor is one of those 258,684 Broward businesses affected by the storm.  Due to the hurricane, all throughout Florida, major roadways and interstates were either closed or were not available, power outages lasted for days, and in some locations, weeks, and individuals were prevented from working and ultimately making their car payments to the Debtor.  These challenges resulted in a domino effect by causing a delay in the receipt of revenue, which could be utilized by the Debtor.

**RELIEF REQUESTED**

7. By this Motion, the Debtor respectfully request the entry of an Order: (i) authorizing the Debtor's continued use of existing business forms and records; (ii) authorizing the Debtor to maintain existing corporate bank accounts (on an interim basis); (iii) authorizing the Debtor to maintain existing cash management system, and (iv) extending the time to comply with the guidelines provided for in 11 U.S.C. § 345.

8. The Office of the United States Trustee has established certain operating guidelines for debtors in possession in order to supervise the administration of Chapter 11 cases.

9. These guidelines require Chapter 11 debtors to, among other things, close all existing bank accounts and open new debtor in possession ("DIP") bank accounts in certain financial institutions designated as authorized depositories by the U.S. Trustee, establish one DIP account for all estate monies required for the payment of taxes (including payroll taxes), maintain a separate DIP account for cash collateral, and obtain checks for all DIP accounts that bear the designation, "debtor in possession," the bankruptcy case number, and the type of account. The guidelines also require debtors to close their books and records as of the petition date and to open new books and records. These requirements are designed to provide a clear line of demarcation between pre-petition and post-petition transactions and operations and to prevent the inadvertent post-petition payment of pre-petition claims. Through this Motion, the Debtor seeks relief from certain of these requirements.

10. 11 U.S.C. § 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Extensive authority supports the relief the Debtor seeks in the Motion. In other Chapter 11 cases, courts have recognized that strict enforcement of the United States Trustee requirements does not always serve the purposes of a Chapter 11. Accordingly, courts have often

---

Leiderman Shelomith Alexander + Somodevilla, PLLC
Miami | Fort Lauderdale

granted relief from these requirements and replaced them with alternative procedures. *See, e.g,, In re Mercedes Homes, Inc., et al,*, Case No. 09-11191-BKC-PGH (Bankr. S.D. Fla. Jan, 29, 2009); *In re TOUSA, Inc„ et al.*, Case No. 08-10928-BKC-JKO (Bankr. S.D. Fla. Jan. 31, 2008); *In re Levitt and Sons, LLC, et al.*, Case No. 07-19845-BKCRBR (Bankr. S.D. Fla. Nov. 14, 2007); *In re Gemini Air Cargo Logistics, Inc.* Case No. 06-10780-BKC-AJC (Bankr. S.D. Fla. Mar. 20, 2006) (*Order Granting Debtors' Emergency Motion For Order: (I) Authorizing Continued Use Of Existing Business Forms And Records; (2) Authorizing Maintenance Of Existing Corporate Bank Accounts And Cash Management System; And (3) Extending Time To Comply With 11 U.S.C § 345 Investment Guidelines*); *In re Fine Air Serv., Corp.,* Chapter 11 Case No. 00-18671-75 (Bankr. S.D. Fla. Feb. 7, 2001) (*Order Granting Debtor's Emergency Motion for Order Authorizing (a) Continued Use of Existing Bank Accounts and Business Forms and (b) Maintenance of Cash-Management System*); *In re Kitty Hawk, Inc.,* Case No. 400- 42141-BJH (Bantu. N.D. Tex, May 3, 2000) (*Order Granting Motion for Order (I) Authorizing Continued Use of Existing Business Forms and Records; (2) Authorizing Maintenance of Existing Corporate Bank Accounts and Cash Management System; and (3) Extending Time to Comply with 11 U.S.C. § 345 Investment Guidelines*); *In re UAL Corp.,* Chapter 11 Case No. 02-B-48191 (Bankr. N.D. Ill., Dec. 9, 2002); *In re Atlas Air Worldwide Holdings, Inc.*, Chapter 11 Case No. 04-10792-BKC-RAM (Bankr. S.D. Fla. March 26, 2004).

### Existing Business Forms and Records

11.     The Debtor seeks relief from the requirement that it open a new set of books and records as of the Petition Date. The Debtor respectfully submits that opening a new set of books and records at this juncture would create unnecessary administrative burdens and hardship and would cause unnecessary expense, utilization of resources, and delay. With the use of computer technology, it is now easy to differentiate between pre- and post-petition transactions by date.

12. The Debtor, in the ordinary course of its business, uses many checks, invoices, stationery, and other business forms. By virtue of the nature and scope of the business in which the Debtor is engaged and the numerous other parties with whom the Debtor deals, the Debtor needs to use its existing business forms without alteration or change. A substantial amount of time and expense would be required in order to print new checks and other business forms. Additionally, it is believed that the various payment-related platforms, including merchant services and other online payment applications and automatic debiting systems utilized by the Debtor require adequate time and preparation for implementation and re-direction of processed payments.

13. Thus, fulfillment of the requirement would likely delay payment of post-petition claims and negatively affect the Debtor's ability to reorganize.

14. Accordingly, the Debtor respectfully requests that it be authorized to continue to use its existing business forms and to maintain its existing business records at this time.

**Existing Corporate Bank Accounts and Cash Management Systems**

15. The Debtor respectfully requests authority to maintain its existing bank accounts (each as "Bank Account" or "Account" and collectively, the "Bank Accounts" or "Accounts") and its cash management system (the "Cash Management System") in accordance with its usual and customary practices to ensure a smooth transition into Chapter 11 with minimal disruption to operations and its ability to reorganize.

16. The Debtor also requests authority to close any of the Bank Accounts if, in the exercise of its business judgment, the Debtor determines that such action is in the best interest of its estate.

17. Only if the Bank Accounts are continued with the same account numbers, at least on an interim basis, can the transition into Chapter 11 be smooth and orderly, with minimal interference with continuing operations. To conduct its post-petition business, and to facilitate reorganization, the Debtor needs to be able to issue checks to vendors, service

providers, employees, and others. To open new accounts and obtain checks for those accounts will cause delay and disruption to the Debtor's business. Moreover, as discussed above, a change in the Accounts to which customers wire and route payments could delay the Debtor's receipt of funds needed for continued operations and reorganization. By preserving business continuity and avoiding operational and administrative paralysis that closing the existing Bank Accounts and opening new ones would necessarily create, all parties-in-interest, including employees, vendors, and customers, will be best served, and the benefit to the Debtor's estate will be considerable. The confusion that would otherwise result could only work to the detriment of this Chapter 11 Case. (Of course, no checks issued prior to the Petition Date are to be honored, except as otherwise provided by separate order of this Court.)

18. The Debtor employs a Cash Management System in the ordinary course of business. The Cash Management System is similar to those commonly employed by corporate enterprises of size and complexity comparable to the Debtor.

19. The Debtor maintains the following four bank accounts at Bank of America, N.A.: (1) account ending in # 8407 (the "Deposit Account"); (2) account ending in # 9570 (the "Payroll Account"); (3) an account ending in # 8410 (the "Funding Account"); and (4) an account ending in # 9562 (the "Account Payable Account").

20. The Debtor seeks to maintain the Deposit Account, Payroll Account, Funding Account and Account Payable Account for a period of at least sixty (60) days to transition these Accounts to DIP accounts.

21. The operating and use of Deposit Account, Payroll Account, Funding Account, and Account Payable Account constitute the Debtor's Cash Management System. The system is essential for the Debtor's routine business requirements.

22. The Debtor will provide real time access to all Accounts to the Office of the United States Trustee.

23.     The Cash Management System used by the Debtor constitutes ordinary, usual, and essential business practices. The Debtor's operations require that the Cash Management System continue during the pendency of this Chapter 11 case. If the Debtor is required to adopt a new cash management system, its operations and payments to its employees and from its customers would be severely disrupted and such a delay would surely have a negative impact on the Debtor's business.

24.     The Debtor will continue to maintain records respecting all transfers between and among the Bank Accounts so that all transactions can be ascertained after they have occurred. In addition, the Debtor will instruct its bank to add the designation, "Debtor in Possession" or "DIP" to its current and any future Accounts with each such bank, will treat the Accounts for all purposes as Accounts of the Debtor as DIPs, and will maintain records that recognize the distinction between prepetition and post-petition transfers.

25.     Additionally, if and when the Debtor is charged monthly fees for maintaining the Bank Accounts, the Debtor requests authority to pay such fees in the ordinary course of business, including any portion of such fees attributable to prepetition services.

**Extension of Time To Come Into Compliance With 11 U.S.C. 345(b)**

26.     By this Motion, and pursuant to 11 U.S.C. § 105(a), the Debtor also seeks: (i) an extension of sixty (60) days from the Petition Date to come into compliance with 11 U.S.C. § 345(b); and (ii) approval of the form and manner in which the Debtor may deposit and invest funds in accordance with its existing cash management policies. As discussed above, the Bank Accounts are maintained with financial institutions that are financially stable. The Debtor has been advised that its bank is an authorized depository. Consequently, an extension of time to determine any actions necessary to comply with 11 U.S.C. § 345(b)'s investment guidelines should pose no risk to the Debtor's estate or its creditors.

27.     11 U.S.C. § 345(b) provides as follows:

Except with respect to a deposit or investment that is insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States, the trustee shall require from an entity with which such money is deposited or invested—

(1) a bond—

    (A) in favor of the United States;
    (B) secured by the undertaking of a corporate surety approved by the United States trustee for the district in which the case is pending; and
    (C) conditioned on
        (i) a proper accounting for all money so deposited or invested and for any return on such money;
        (ii) prompt repayment of such money and return; and
        (iii) faithful performance of duties as a depository; or

(2) the deposit of securities of the kind specified in section 9303 of title 31; unless the court for cause orders otherwise.

28.    11 U.S.C. § 345 authorizes deposits or investments of money of estates, such as the Debtor's cash, in a manner that "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment."

29.    Due to the significant amounts of money that may be in the Bank Accounts from time to time, it would take some time for the Debtor to locate and determine, where necessary, appropriate alternative accounts that satisfy the requirements of 11 U.S.C. § 345(b). Requiring the Debtor to change its deposits and other procedures abruptly could result in harm to the Debtor, its estate, and its creditors because such change would disrupt the Cash Management System. Conversely, the Debtor's estate and its creditors will not be harmed by the Debtor's maintenance of the status quo because of the relatively safe and prudent deposit guidelines already utilized by the Debtor.

30.    For each of the foregoing reasons, the Debtor respectfully submits that a sixty (60) day extension of the time to come into compliance with the investment guidelines set forth in 11 U.S.C. § 345(b) should not pose any risk to the Debtor's estate.

**Local Rule 9075-1 Certification**

31.  Undersigned counsel is in the process of working with counsel for Bank of America, regarding the issues described herein.  Therefore, undersigned counsel hereby certifies that he attempted to resolve this matter prior to filing this Motion but was unable to fully and completely resolve any and all issues that exist.

WHEREFORE, the Debtor respectfully requests that the Court enter an Order: (i) granting the Motion; (ii) authorizing the Debtor's continued use of existing business forms and records; (iii) authorizing it to maintain its existing corporate bank accounts (on an interim basis); (iv) authorizing it to maintain its existing cash management system; (v) extending the time for the Debtor to comply with the Investment Guidelines of 11 U.S.C. § 345; and (vi) granting such other and further relief which is just and proper.

Dated: March 26, 2018.

LEIDERMAN SHELOMITH ALEXANDER + SOMODEVILLA, PLLC
Proposed Bankruptcy Counsel for the Debtor-in-Possession
2699 Stirling Road, Suite C401
Ft. Lauderdale, Florida 33312
Telephone: (954) 920-5355
Facsimile:  (954) 920-5371

By:_____/s/_____
ZACH B. SHELOMITH
Florida Bar No. 0122548
zbs@lsaslaw.com
FELIPE PLECHAC-DIAZ
Florida Bar No. 0105483
fpd@lsaslaw.com

LAW OFFICES OF DOUGLAS J. JEFFREY, P.A.
Proposed General and Special Counsel for the Debtor-in-Possession
6625 Miami Lakes Drive East, Suite 379
Miami Lakes, Florida 33014
Telephone: (305) 828-4744
Facsimile:  (305) 828-4718

By:_____/s/_____
DOUGLAS J. JEFFREY
Florida Bar No. 149527
dj@jeffreylawfirm.com