*...c Southern District of Florida on* __03/29/18__



Raymond B. Ray, Judge
United States Bankruptcy Court

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **SUMMIT FINANCIAL CORP.,** | **Case No. 18-13389-RBR** |
| Debtor. | |

*Agreed a*

**INTERIM ORDER GRANTING DEBTOR'S EMERGENCY MOTION FOR AUTHORITY TO USE CASH COLLATERAL, GRANTING ADEQUATE PROTECTION AND NOTICE OF FINAL HEARING**

This matter came before the Court for hearing on March 28, 2018 (the "Hearing"), on

*Debtor-in-Possession's Emergency Motion for Entry of an Order (1) Authorizing Use of Cash*

*Collateral; (2) Granting Adequate Protection; and (3) Scheduling a Final Hearing* [Docket No.

8] (the "Cash Collateral Motion") filed on March 26, 2018, by the Debtor Summit Financial

Corp. (the "Debtor"), requesting authority to use Cash Collateral (as defined below) pursuant to section 363 of Title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code") and Rules 4001(b) and (d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and to provide adequate protection to certain pre-petition secured parties. Based upon the Court's consideration of the Cash Collateral Motion and all matters brought to the Court's attention at the Hearing, and after due deliberation and consideration, the Court makes the following findings of fact and conclusions of law applicable to the Debtor's use of Cash Collateral (to the extent any findings of fact constitute conclusions of law, they are adopted as such, and *vice versa*):

   **A.     Petition Date**. On March 23, 2018 (the "Petition Date"), the Debtor filed with the Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby commencing with respect to the Debtor a chapter 11 case (the "Case").  The Debtor is continuing to manage its properties and to operate its business as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed.

   **B.     Pre-Petition Agent's Assertions.**  Without prejudice to the rights of any other party (but subject to the limitations thereon contained in paragraph 7 hereof), Pre-Petition Agent (defined below) asserts as follows:

   (i)      Pre-Petition Loan Documents.    Pursuant to that certain Third Amended and Restated Loan and Security Agreement dated as of February 14, 2017 (as at any time amended, modified, restated or supplemented, the "Pre-Petition Loan Agreement"), certain financial institutions in their capacity as lenders (collectively, "Pre-Petition Lenders") and Bank of America, N.A., as administrative and collateral agent (in such capacity, the "Pre-Petition Agent"; and together with the Pre-Petition Lenders, any affiliates of Pre-Petition Lenders who provide Bank Products (as defined in the Pre-Petition Loan Agreement, the "Pre-Petition Bank

Products"), the Issuing Bank (as defined in the Pre-Petition Loan Agreement), and each of the successors and assigns of any of the foregoing entities, the "Pre-Petition Credit Parties") established a revolving credit facility (with a letter of credit sub-facility) for the Debtor in an aggregate principal amount up to $110,000,000. The Pre-Petition Loan Agreement, together with any other agreement, note, instrument, guaranty, financing statement, pledge, assignment, and other document executed at any time in connection therewith, in each case as the same have been amended, modified, restated or supplemented from time to time, are hereinafter referred to collectively as the "Pre-Petition Loan Documents." All of the Pre-Petition Loan Documents create legal, valid and binding obligations of the Debtor.

(ii)     Pre-Petition Collateral. Pursuant to certain of the Pre-Petition Loan Documents, the Debtor granted to Pre-Petition Agent, for the benefit of the Pre-Petition Credit Parties and to secure all Pre-Petition Debt (as defined below), a first priority continuing security interest in and lien upon all or substantially all of the Debtor's assets, including, without limitation, all accounts, inventory, contracts, loan agreements, installment sale contracts, notes and other forms of obligations, chattel paper, documents, instruments, letter-of-credit rights, supporting obligations, certificates of title, certificates of origin, general intangibles, goods, equipment, investment property, computer hardware and software, money, cash, cash equivalents, refunds, securities, deposit accounts, commercial tort claims, books and records, and all products and proceeds of any of the foregoing (collectively, and as more particularly described in the Pre-Petition Loan Agreement, the "Pre-Petition Collateral"; and with such pre-Petition Date liens and security interests in favor of Pre-Petition Agent being collectively called the "Pre-Petition Security Interests"). Pre-Petition Agent asserts that the Pre-Petition Security Interests are legal, valid, binding, enforceable, non-avoidable and duly perfected and are not subject to any contest, attack, rejection, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization,

avoidance or other claim, cause of action or other challenge of any nature under the Bankruptcy Code, any applicable non-bankruptcy law or otherwise.

   (iii) <u>Pre-Petition Debt</u>.  As of the Petition Date, the Debtor was indebted and liable under the Pre-Petition Loan Documents to Pre-Petition Credit Parties for revolving credit loans in the approximate principal amount of $101,382,098 (the "<u>Pre-Petition Loans</u>"), for fees, expenses, and other charges associated with depository accounts and other Bank Product Debt (as defined in the Pre-Petition Loan Agreement) (collectively, the "<u>Pre-Petition Bank Product Obligations</u>"), and on a contingent basis in the approximate amount of $300,000 in face amount of standby letters of credit (the "<u>Pre-Petition LCs</u>"; together with the Pre-Petition Loans, the Pre-Petition Bank Product Obligations, all other liabilities and obligations of the Debtor in respect of indemnities, guaranties and other payment assurances made or given to or by the Debtor for the benefit of Pre-Petition Credit Parties, and all interest, fees, costs, legal expenses and all other amounts heretofore or hereafter accruing thereon or at any time chargeable to the Debtor in connection therewith, collectively referred to as the "<u>Pre-Petition Debt</u>").   Pre-Petition Agent asserts that the Pre-Petition Debt is due and owing to the Pre-Petition Credit Parties without any defense, offset, recoupment or counterclaim of any kind; the Pre-Petition Debt constitutes the legal, valid and binding obligations of the Debtor as and to the extent provided in the Pre-Petition Loan Documents, enforceable in accordance with the terms of the applicable Pre-Petition Loan Documents; and none of the Pre-Petition Debt or any payments made to any Pre-Petition Credit Party or applied to the indebtedness or other obligations at any time outstanding under any Pre-Petition Loan Documents prior to the Petition Date is subject to avoidance, subordination, recharacterization, recovery, attack, offset, counterclaim, defense or other claim of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

(iv)    Cash Collateral.  All cash and deposits of the Debtor as of the Petition Date, including, without limitation, all amounts on deposit or maintained by the Debtor in any account with any Pre-Petition Credit Party and all deposits made by the Debtor with any landlord or other person or entity, are subject to valid and enforceable rights of setoff and valid, perfected, enforceable first-priority liens under the Pre-Petition Loan Documents and applicable law, and are included in the Pre-Petition Collateral, and therefore the Debtor's cash and deposits constitute cash collateral of each Pre-Petition Credit Party within the meaning of section 363(a) of the Bankruptcy Code.  All such cash and deposits (including, without limitation, all proceeds of the Pre-Petition Collateral and of other property encumbered by liens and security interests granted under this Order, regardless of whether such proceeds are in existence on the Petition Date or thereafter come into existence) are referred to herein as "Cash Collateral."

**C.**    **Need for Use of Cash Collateral.**  The Debtor asserts that it requires the use of Cash Collateral to continue operating its business, including to make payroll and to pay other critical expenses in the ordinary course of business.  The Debtor has represented that serious and potentially irreparable harm to the Debtor, its creditors, and its estate may occur absent authorization for the use of the Cash Collateral.

**D.**    **Service of Motion.**  The Debtor has certified that copies of the Motion and notice of the Hearing have been served by electronic mail, telecopy transmission, hand delivery, overnight courier or first class United States mail upon the Office of the United States Trustee (the "United States Trustee"), counsel for Pre-Petition Agent, and the Debtor's 30 largest unsecured creditors.  The Court finds that notice of the Motion, as it relates to this Order, is sufficient for all purposes under the Bankruptcy Code and the Bankruptcy Rules, including, without limitation, sections 102(1) and 363 of the Bankruptcy Code and Bankruptcy Rule 4001(b) and (d).

**E.** **Finding Cause.** Good cause has been shown for the entry of this Order, the granting of adequate protection as set forth herein and authorization for the Debtor to use Cash Collateral during the Interim Period (as defined below). The Debtor's need for use of Cash Collateral is ongoing, immediate and critical. Entry of this Order will preserve the assets of the Debtor's estate and its value and is in the best interests of the Debtor, its creditors and the Debtor's estate.

**F.** **Jurisdiction; Core Proceeding; Venue.** This Court has jurisdiction to enter this Order pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion constitutes a core proceeding, as defined in 28 U.S.C. § 157(b)(2). Venue for this chapter 11 case and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

**G.** **Adequate Protection.** Pre-Petition Agent has requested, and is entitled to, adequate protection of its interests in the Pre-Petition Collateral under 11 U.S.C. §§ 361 and 363.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED, as follows:

**1.** **Grant of Motion; Authority to Use Cash Collateral.**

(a) Subject to all of the terms, conditions and limitations of this Order, the Debtor shall be authorized to use Cash Collateral for Permitted Purposes (as defined below) during the period (the "Interim Period") commencing on the date of entry of this Order and ending on the date scheduled for the Final Hearing (defined below). The Interim Period may be extended by written agreement of the Debtor and Pre-Petition Agent. Neither the consent of Pre-Petition Agent to use of Cash Collateral, nor the Debtor's use of Cash Collateral, shall release, limit, impair or provide any defense to enforcement of any guaranty of payment or performance of any of the Pre-Petition Debt, and all such guaranties shall remain in full force and effect and enforceable according to their terms.

(b)      . The term "Permitted Purposes" shall mean the Debtor's use of Cash Collateral owned by it in the ordinary course of the Debtor's business solely for the purposes of supporting the Debtor's ongoing working capital needs, to the extent, and only for the specific purposes, and up to the amounts set forth in the budget attached to this Order (as such budget may be amended with the written approval of Pre-Petition Agent, the "Budget");[1] provided, however, that in no event shall any Cash Collateral be used to pay (i) any pre-petition claim against the Debtor other than amounts specifically approved by the Court after notice and hearing, including payroll, payroll related taxes, employee benefits and "trust fund" sales and use taxes to the extent of applicable line items in the Budget, and adequate protection payments as authorized by the Court, or (ii) during the Interim Period, any professional fees or expenses of any professionals retained by the Debtor.

2.      **Collection of Accounts Receivable and Consumer Loans**. The Debtor shall diligently attempt to collect all of its pre-petition and post-petition accounts receivable and consumer loans and all other rights to the payment of money and shall cause all such collections remitted by its customers and other account obligors to be promptly deposited into the Debtor's collection accounts. Nothing in this Order shall be construed to require Pre-Petition Agent to extend credit or make available to the Debtor any funds received by Pre-Petition Agent that are not good, fully collected funds at such time. Pre-Petition Agent shall be authorized to deduct from Cash Collateral amounts sufficient to pay and to be used to pay reasonable and customary fees and expenses associated with the wiring or other transfer of such funds. Until expended by

---

[1] Notwithstanding the fact that the Budget extends beyond the Interim Period, nothing herein approves such extended Budget or precludes any party from objecting, or proposing any changes or amendments, to such extended Budget.

the Debtor, all Cash Collateral shall remain subject to the liens and claims of Pre-Petition Credit Parties under the Pre-Petition Loan Documents and this Order.

**3. Suspension and Termination of Authority to Use Cash Collateral**.

(a) <u>Suspension</u>. The Debtor's authority to use Cash Collateral shall be suspended (and the Debtor shall therefore not be authorized to use such Cash Collateral for any purpose other than paying the Pre-Petition Debt) for so long as any one or more of the following conditions exists: (i) the Debtor has failed to discharge any duty or other obligation imposed upon it in this Order or has otherwise violated any requirement or condition to the use of Cash Collateral provided in this Order, (ii) during any calendar week, the Debtor's actual cash collections are less than 90% of the Debtor's aggregate cash collections projected for such week in the Budget, (iii) the amount of the Overadvance (as defined in the Pre-Petition Loan Agreement) plus cash exceeds the amount of the Overadvance in existence as of the Petition Date, or (iv) there is pending any motion by the Debtor to dismiss or convert the Case to a case under chapter 7.

(b) <u>Disputes</u>. On any date that Pre-Petition Agent determines that the Debtor's authority to use Cash Collateral has been suspended pursuant to subparagraph (a) above, Pre-Petition Agent or its counsel may file (using the Court's CM/ECF filing system) a "Notice of Suspension," in which the condition or conditions resulting in the suspension of authority to use Cash Collateral shall be specified, and seek and obtain (and the Debtor agrees not to oppose the scheduling of) an emergency hearing on the Cash Collateral Motion with respect to whether the Debtor should be authorized to continue to use Cash Collateral and, if so, under what terms and conditions.

(c) <u>Termination</u>. The Debtor's authority to use Cash Collateral shall automatically terminate for all purposes (except to pay the Pre-Petition Debt) upon the soonest to occur of the

following events or conditions: (i) the Interim Period expires; (ii) a chapter 11 trustee or examiner with expanded powers is appointed in the Case; (iii) the Case is converted to a chapter 7 case or is dismissed; (iv) the Court enters an order granting Pre-Petition Agent relief from the automatic stay or prohibiting the use of Cash Collateral by the Debtor; or (v) this Order is amended, vacated, stayed, reversed or otherwise modified without the prior written consent of Pre-Petition Agent.

**4.** **Adequate Protection of Pre-Petition Credit Parties.** As adequate protection of its interests in the Pre-Petition Collateral, the Pre-Petition Agent, on behalf of the Pre-Petition Credit Parties, is entitled, pursuant to sections 105, 361, 363 and 364 of the Bankruptcy Code, to claims and other protections (the "Adequate Protection Claims") in an amount equal to the Collateral Diminution. As used in this Order, the term "Collateral Diminution" shall mean an amount equal to the aggregate diminution of the value in any Pre-Petition Credit Party's interest in the Pre-Petition Collateral (including Cash Collateral) from and after the Petition Date for any reason, including, without limitation, any such diminution resulting from the use of Cash Collateral, the depreciation, sale, loss, use, or collection by the Debtor (or any other decline in value) of such Pre-Petition Collateral, or the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, in each case to the fullest extent provided under the Bankruptcy Code. The Pre-Petition Agent is hereby granted, subject to the rights of third parties preserved under paragraph 7 of this Order, the following for the benefit of the Pre-Petition Credit Parties:

(a) Adequate Protection Liens. Pre-Petition Agent, for the benefit of the Pre-Petition Credit Parties, is hereby granted by this Order (effective and perfected upon the date of entry of this Order, and without the necessity of the execution, filing or recording by the Debtor, the Pre-Petition Agent or any other Pre-Petition Credit Party of security agreements, pledge agreements, mortgages, security deeds, financing statements or other agreements), valid and perfected

C:\Users\msul\Desktop\Summit\Summit Financial -
Interim Cash Collateral Order 3-29 EDITS.docx

- 8 -

replacement security interests in and liens (the "Adequate Protection Liens") on all of the Debtor's pre-petition and post-petition real and personal property, including, without limitation, all of the Debtor's accounts, inventory, contracts, loan agreements, installment sale contracts, notes and other forms of obligations, chattel paper, documents, instruments, letter-of-credit rights, supporting obligations, certificates of title, certificates of origin, general intangibles, goods, equipment, investment property, computer hardware and software, money, cash, cash equivalents, refunds, securities, deposit accounts, commercial tort claims, books and records, and all products and proceeds of any of the foregoing, whether such assets were in existence on the Petition Date or were thereafter created, acquired or arising and wherever located (all such real and personal property, including, without limitation, all Pre-Petition Collateral, being collectively hereinafter referred to as the "Collateral") to secure the amount of any Collateral Diminution, provided that the Adequate Protection Liens shall attach to proceeds (the "Avoidance Proceeds") realized from the successful prosecution or settlement of the Debtor's claims and causes of action pursuant to sections 502(b), 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code only upon entry of a final order on the Cash Collateral Motion (a "Final Order") that so provides. The Adequate Protection Liens shall not be subject to sections 506(c) (effective upon entry of the Final Order), 510(c), 549, or 550 of the Bankruptcy Code, and no lien avoided and preserved for the benefit of the estate pursuant to section 510 of the Bankruptcy Code shall be made *pari passu* with or senior to any Adequate Protection Liens.

(b)     Priority of Adequate Protection Claims. The Adequate Protection Claims are allowed as superpriority administrative claims pursuant to sections 503(b) and 507(b) of the Bankruptcy Code and shall have priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, without limitation, sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c) (subject to entry

- 9 -

of the Final Order), 507(a), 507(b), 546, 726, 1113, or 1114 of the Bankruptcy Code, excluding any pre-petition retainers in Debtor's counsel's trust account that were not paid directly by the Debtor.

(c)     Payment of Accrued Interest. The Debtor shall pay to Pre-Petition Agent interest that accrues on the unpaid principal balance of the Pre-Petition Debt as and when due under the Pre-Petition Loan Agreement, subject to the challenge rights of parties in interest preserved under paragraph 7 below.

(d)     Reservation of Rights. Nothing herein shall be deemed to be a waiver by any Pre-Petition Credit Party of its right to request additional or further protection of its interests in any Pre-Petition Collateral, to move for relief from the automatic stay, to seek the appointment of a trustee or examiner for the Debtor or the conversion or dismissal of this Case, to object to any proposed sale or other disposition of the Debtor's assets under section 363 of the Bankruptcy Code or otherwise, to accept or reject any plan of reorganization or liquidation, or to request any other relief in the Case; nor shall anything herein constitute an admission by a Pre-Petition Credit Party regarding the quantity, quality or value of any Collateral securing the Pre-Petition Debt or constitute a finding of adequate protection with respect to the interests of the Pre-Petition Agent in any Collateral. The Pre-Petition Credit Parties shall be deemed to have reserved all rights to assert entitlement to the protections and benefits of section 507(b) of the Bankruptcy Code in connection with any use, sale, encumbering or other disposition of any of the Collateral, to the extent that the protections afforded by this Order to the Pre-Petition Security Interests proves to be inadequate.

**5.     Automatic Perfection of Adequate Protection Liens.** The Adequate Protection Liens and all claims, rights, interests, administrative claims and other protections granted to or for the benefit of Pre-Petition Credit Parties pursuant to this Order and the Bankruptcy Code

shall constitute valid, enforceable, non-avoidable and duly perfected security interests and liens. No Pre-Petition Credit Party shall not be required to file or serve financing statements, mortgages, deeds to secure debt or similar instruments which otherwise may be required under federal or state law in any jurisdiction, or take any action, including taking possession, to validate and perfect such security interests and liens, but upon request by any Pre-Petition Credit Party, the Debtor is hereby authorized and directed to execute and deliver any such financing statements, mortgages, deeds to secure debt or similar instruments. The failure by any Pre-Petition Credit Party to request, or the failure or refusal of the Debtor to execute or deliver, any documentation relating to the Adequate Protection Liens shall in no way affect the validity, perfection or priority of such Adequate Protection Liens.

**6.** **Access to Premises and Records; Reporting; Insurance.**

(a) Pre-Petition Agent and its respective representatives and agents (including, without limitation, employees, officers, legal counsel, appraisers, auditors, accountants, and consultants) shall be authorized, during normal business hours, to conduct on-site field examinations in order to inspect and evaluate the Debtor's property and financial records.

(b) The Debtor shall timely deliver to Pre-Petition Agent all financial, collateral and other reporting, documents and information, including, without limitation, Borrowing Base Certificates (as defined in the Pre-Petition Loan Agreement), in each case as and when required by the Pre-Petition Loan Documents. In addition, on each Wednesday, the Debtor shall deliver to Agent a written comparison showing the Debtor's actual performance during the week ending on the previous Friday as compared to the projections for such calendar week in the Budget.

(c) The Debtor shall maintain insurance in effect with respect to its operations and each of its properties in amounts and under terms and conditions consistent with insurance

C:\Users\msul\Desktop\Summit\Summit Financial -
Interim Cash Collateral Order 3-29 EDITS.docx

- 11 -

coverage in effect on the Petition Date, and in any event, in compliance with the Pre-Petition Loan Agreement and the guidelines of the Office of the United States Trustee.

## 7. Deadline for Challenges of Asserted Claims and Liens.

(a)     Pre-Petition Agent's assertions contained in this Order, including, without limitation, those contained in paragraph B of this Order, shall be binding upon all parties in interest, including, without limitation, the Debtor, any successor thereto (including, without limitation, any Chapter 7 trustee or Chapter 11 trustee, examiner or post-confirmation fiduciary appointed or elected for the Debtor), and any Committee, under all circumstances and for all purposes unless and to the extent (a) such party in interest (including the Debtor and any Committee) has timely and properly filed an adversary proceeding or contested matter by no later than the Challenge Deadline (A) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Pre-Petition Debt or any Pre-Petition Security Interest or (B) otherwise asserting any defenses, claims, causes of action, counterclaims or offsets against any Pre-Petition Credit Party or its respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors in any way relating to any transactions, events, actions or failure to act under or in connection with any of the Pre-Petition Loan Documents (collectively, a "Challenge"), and (b) the Court rules in favor of the plaintiff with respect to any such timely and properly filed Challenge. As used herein, the term "Challenge Deadline" means the earliest to occur of (A) the date that the Court enters an order confirming any Chapter 11 plan of reorganization or liquidation proposed by the Debtor, or (B) the date of entry of an order approving the sale of all or substantially all of the assets of Pre-Petition Borrower, or (C) (i) in the case of the Debtor or another party in interest with requisite standing other than the Committee, 75 days after the date of entry of this Order, (ii) in the case of the Committee, 60 days after the filing of notice of appointment of the Committee, or (iii) in each

case of clauses (i) and (ii), any such later date agreed to in writing by the Pre-Petition Agent, in its sole discretion, or ordered by the Court for cause shown, after notice and an opportunity to be heard, provided that such motion for an order to extend the Challenge Deadline is filed with the Court prior to the expiration of any applicable period as set forth in clause (i) or (ii) of this sentence. If prior to expiration of the Challenge Deadline, the Committee files a motion in which the Committee seeks standing from this Court to pursue a Challenge and attaches to such motion a proposed complaint setting forth the basis for such Challenge, then, with respect to such proposed challenge, the expiration of the Challenge Deadline shall be tolled until the Court rules on the motion seeking standing; provided that the Committee shall not be authorized to prosecute any such Challenge (including by way of discovery or motion) unless and until the Court shall have granted the Committee's motion seeking standing to pursue such Challenge.

(b) If no such Challenge is timely and properly filed as of the applicable Challenge Deadline against a Pre-Petition Credit Party or the Court does not rule in favor of the plaintiff with respect to a Challenge that is timely filed as to a Pre-Petition Credit Party, then for all purposes in this Case and in any successor case (i) the Pre-Petition Agent's assertions in this Order, including, without limitation, those contained in paragraph B of this Order, with respect to such Pre-Petition Credit Party shall be binding on all parties in interest, including the Committee, and any examiner, trustee or post-confirmation agent or trustee; (ii) the Pre-Petition Debt owing to such Pre-Petition Credit Party shall constitute an allowed secured claim that is not subject to defense, claim, counterclaim, recharacterization, subordination, offset or avoidance, for all purposes in the Case and any successor case; (iii) the Pre-Petition Security Interests in favor of such Pre-Petition Credit Party shall be deemed to have been, as of the Petition Date and thereafter, legal, valid, binding, perfected, first priority security interests and liens, not subject to recharacterization, subordination, avoidance, nullification, or other defense and shall not be

- 13 -

subject to any other or further claim or challenge by any Committee or any other party in interest seeking to exercise the rights of the Debtor's estate, including, without limitation, any trustee, examiner, or any other successor in interest to the Debtor; and (iv) the Debtor (for itself, its estate and its successors and assigns) shall be deemed to have forever waived and released any and all Claims (as defined in the Bankruptcy Code), counterclaims, actions, causes of action, defenses or setoff rights that the Debtor may have against such Pre-Petition Credit Party or any of its officers, directors, agents, employees, attorneys and affiliates and that arise out of or relate to any of the Pre-Petition Loan Documents or any action, inaction, or transactions thereunder, whether disputed or undisputed, at law or in equity, or known or unknown, including, without limitation, any recharacterization, subordination, avoidance or other claim arising under or pursuant to section 105 or Chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state or federal law. If any such Challenge is properly filed on or before the Challenge Deadline, the Pre-Petition Agent's assertions contained in this Order, including, without limitation, those contained in paragraph B of this Order, shall nonetheless remain binding and preclusive as provided in paragraph 7(a), except to the extent that such admissions, stipulations, agreements and releases were expressly challenged in such Challenge and the plaintiff prevails on the merits with respect thereto. Nothing contained in this Order shall vest or confer any person or entity, including the Committee, with standing or authority to commence or prosecute, or participate in, any Challenge.

     **8.**    **No Consent to Surcharge.**    Pre-Petition Agent has not consented to any surcharge under section 506(c) of the Bankruptcy Code, and no such consent may be implied from any action, inaction or acquiescence of Pre-Petition Agent.

     **9.**    **Reservation of Rights**. Nothing in this Order shall constitute or be construed to (1) be an admission by Pre-Petition Agent as to the adequacy of the protection provided herein;

(2) release, impair or alter in any way the obligations and liability of any guarantor of the Pre-Petition Debt or any subordination of other obligations of the Debtor in favor of prior payment of the Pre-Petition Debt or any defense of a guarantor that existed on the Petition Date; (3) prohibit Pre-Petition Agent from seeking any further relief in this Case, including, without limitation, additional adequate protection, dismissal or conversion, relief from the automatic stay under section 362(d) of the Bankruptcy Code, the appointment of a trustee or examiner, or the taking of any Bankruptcy Rule 2004 examinations; (4) constitute a waiver by the Debtor or Pre-Petition Agent of the right to request in a further interim or final order on Cash Collateral provisions which may be different from or in addition to any of the provisions contained in this Order; or (5) subject to the Challenge Deadline, preclude any creditor, any Committee or any subsequently appointed trustee from objecting to or otherwise challenging the validity or amount of the Pre-Petition Debt or the extent, validity or perfection of the Pre-Petition Liens.

**10. Binding Effect; Successors and Assigns.** The provisions of this Order shall be binding upon all parties in interest in this Case, including, without limitation, the Pre-Petition Credit Parties and the Debtor and their respective successors and assigns (including any Chapter 11 or Chapter 7 trustee hereafter appointed for the estate of the Debtor, any examiner appointed pursuant to section 1104 of the Bankruptcy Code, the Committee or any other fiduciary appointed as a legal representative of the Debtor or with respect to any property of the Debtor), and shall inure to the benefit of the Pre-Petition Credit Parties and their respective successors and assigns. The provisions of this Order and any action taken pursuant to the terms hereof shall survive the entry of any order dismissing any of the Case or converting the Case to a case under chapter 7 of the Bankruptcy Code, and all of the terms and conditions of this Order as well as the liens and security interests granted pursuant hereto shall continue in this or in any superseding

case under the Bankruptcy Code, and such liens and security interests shall retain their priorities provided by this Order until satisfied and discharged.

**11. Order Immediately Effective.** Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Order shall be valid, take full effect, and be enforceable immediately upon entry hereof; there shall be no stay of execution or effectiveness of this Order; and any stay of the effectiveness of this Order that might otherwise apply is hereby waived for cause shown.

**12. Payment of Bankruptcy Fees.** Notwithstanding anything to the contrary in this Order, (i) fees payable to the Clerk of the Court or United States Trustee pursuant to 28 U.S.C. § 1930 in this bankruptcy case, and (ii) the fees pursuant to 28 U.S.C. § 1930(a)(6), may be paid by the Debtor even if the amount is higher than the line item in the Budget.

**13. No Novation.** This Order shall not cause a novation of any of the Pre-Petition Loan Documents or otherwise.

**14. Notice of Final Hearing and Objection Deadline.** A final hearing on the Cash Collateral Motion will be held at 1:30 p.m., on April 24, 2018, at the United States Bankruptcy Court, 299 East Broward Boulevard, Courtroom 308, Fort Lauderdale, Florida 33301 (the "**Final Hearing**"). Such Final Hearing may be adjourned or postponed without further notice except announcement in open court. Any objections or responses to the Cash Collateral Motion shall be filed with the Court and served so as to be received by 4:00 p.m. (prevailing Eastern Time) no later than two (2) days prior to the Final Hearing. Promptly after the entry of this Order, the Debtor shall mail, by first class mail, a copy of this Order to counsel for the United States Trustee, counsel for Pre-Petition Agent, and the Debtor's 30 largest

unsecured creditors, and shall file a certificate of service regarding same with the Clerk of the Court.

###

*** Submitted By:

Zach B. Shelomith, Esq.
Leiderman Shelomith Alexander + Somodevilla, PLLC
2699 Stirling Rd. #C401
Ft. Lauderdale, FL 33312
Telephone (954) 920-5355
Facsimile (954) 920-5371
zbs@lsaslaw.com

Copies Furnished To:

Zach B. Shelomith

Zach B. Shelomith, Esquire, is directed to serve copies of this Order on all parties in interest and to file a Certificate of Service.

**<u>Attach Approved Budget</u>**

| | April 1-7 Week | April 8-14 Week | April 15-21 Week | April 22-28 Week | April 29-May 5 Week | May 6 -12 Week |
|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 |
| | | | | | | |
| | $ 340,325.95 | $ 1,299,727.34 | $ 2,557,627.55 | $ 3,855,676.38 | $ 4,381,496.13 | $ 4,653,142.45 |
| | | | | | | |
| **REVENUE SOURCES** | | | | | | |
| | | | | | | |
| **Payments Received and Deposited** | $ 1,097,569.23 | $ 1,404,680.05 | $ 1,444,828.66 | $ 1,267,027.66 | $ 1,097,569.23 | $ 1,404,680.05 |
| | | | | | | |
| Interest Income | $ 484,746.65 | $ 484,746.65 | $ 484,746.65 | $ 484,746.65 | $ 481,650.35 | $ 481,650.35 |
| Dealer's Service Fee | $ 54,937.88 | $ 54,937.88 | $ 54,937.88 | $ 54,937.88 | $ 54,587.07 | $ 54,587.07 |
| Late Fee Income | $ 1,615.94 | $ 1,615.94 | $ 1,615.94 | $ 1,615.94 | $ 1,605.54 | $ 1,605.54 |
| Other income | $ 807.85 | $ 807.85 | $ 807.85 | $ 807.85 | $ 802.77 | $ 802.77 |
| Principal Payments Received | $ 555,460.92 | $ 862,571.74 | $ 902,720.35 | $ 724,919.35 | $ 558,923.50 | $ 866,034.32 |
| | | | | | | |
| **Weekly Revenues** | $ 1,097,569.23 | $ 1,404,680.05 | $ 1,444,828.66 | $ 1,267,027.66 | $ 1,097,569.23 | $ 1,404,680.05 |
| | | | | | | |
| **CASH DISBURSEMENTS** | | | | | | |
| **Financing Costs** | | | | | | |
| # New Loan Originations | 0.00 | 0.00 | 0.00 | 35.00 | 40.00 | 40.00 |
| | | | | | | |
| New Loan Origination Funding | $ - | $ - | $ - | $ 588,105.00 | $ 672,120.00 | $ 672,120.00 |
| **Weekly Funding Disbursements** | $ - | $ - | $ - | $ 588,105.00 | $ 672,120.00 | $ 672,120.00 |
| | | | | | | |
| **Payroll & Benefits** | | | | | | |
| Payroll- Office | $ 40,000.00 | $ 48,000.00 | $ 48,000.00 | $ 48,000.00 | $ 48,000.00 | $ 48,000.00 |
| Payroll - Officers | $ 17,000.00 | $ 17,000.00 | $ 17,000.00 | $ 17,000.00 | $ 17,000.00 | $ 17,000.00 |
| Payroll Taxes | $ 4,860.50 | $ 5,472.50 | $ 5,472.50 | $ 5,472.50 | $ 5,472.50 | $ 5,472.50 |
| Employee Benefits | $ 6,928.41 | $ 6,928.41 | $ 6,928.41 | $ 6,928.41 | $ 6,928.41 | $ 6,928.41 |
| **Weekly Payroll Costs** | $ 68,788.91 | $ 77,400.91 | $ 77,400.91 | $ 77,400.91 | $ 77,400.91 | $ 77,400.91 |
| **Direct Expenses** | | | | | | |
| Commissions | $ - | $ - | $ - | $ 4,375.00 | $ 5,000.00 | $ 5,000.00 |
| Credit Reporting | $ - | $ - | $ - | $ 525.00 | $ 600.00 | $ 600.00 |
| Data Processing | $ 20,769.00 | $ 20,769.00 | $ 20,769.00 | $ 20,769.00 | $ 20,769.00 | $ 20,769.00 |
| **Weekly Direct Expenses** | $ 20,769.00 | $ 20,769.00 | $ 20,769.00 | $ 25,669.00 | $ 26,369.00 | $ 26,369.00 |
| | | | | | | |
| **Operating Expenses** | | | | | | |
| Auto Expenses | $ 808.31 | $ 808.31 | $ 808.31 | $ 808.31 | $ 808.31 | $ 808.31 |
| Bank Charges | $ 6,004.62 | $ 6,004.62 | $ 6,004.62 | $ 6,004.62 | $ 6,004.62 | $ 6,004.62 |
| Dues and Subscriptions | $ 1,616.63 | $ 1,616.63 | $ 1,616.63 | $ 1,616.63 | $ 1,616.63 | $ 1,616.63 |
| Equipment Leasing | $ 923.79 | $ 923.79 | $ 923.79 | $ 923.79 | $ 923.79 | $ 923.79 |
| General Insurance | $ 1,431.87 | $ 1,431.87 | $ 1,431.87 | $ 1,431.87 | $ 1,431.87 | $ 1,431.87 |
| Legal and Professional | $ 4,618.94 | $ 4,618.94 | $ 4,618.94 | $ 4,618.94 | $ 4,618.94 | $ 4,618.94 |
| Licenses and Taxes | $ 3,233.26 | $ 3,233.26 | $ 3,233.26 | $ 3,233.26 | $ 3,233.26 | $ 3,233.26 |
| Travel, Meals and Entertainment | $ 461.89 | $ 461.89 | $ 461.89 | $ 461.89 | $ 461.89 | $ 461.89 |
| Office Expenses | $ 1,430.72 | $ 1,430.72 | $ 1,430.72 | $ 1,430.72 | $ 1,430.72 | $ 1,430.72 |
| Postage | $ 642.26 | $ 642.26 | $ 642.26 | $ 642.26 | $ 642.26 | $ 642.26 |
| Rent | $ 5,500.00 | $ 5,500.00 | $ 5,500.00 | $ 6,923.07 | $ 6,923.08 | $ 6,923.08 |
| Utilities | $ 1,963.05 | $ 1,963.05 | $ 1,963.05 | $ 1,963.05 | $ 1,963.05 | $ 1,963.05 |
| Telephone | $ 1,847.58 | $ 1,847.58 | $ 1,847.58 | $ 1,847.58 | $ 1,847.58 | $ 1,847.58 |
| **Weekly Operating Expenses** | $ 30,482.91 | $ 30,482.91 | $ 30,482.91 | $ 31,905.98 | $ 31,905.99 | $ 31,905.99 |
| | | | | | | |
| **Chapter 11 Administrative Fees and Costs** | | | | | | |
| Case Administrative Costs | $ 3,000.00 | $ 3,000.00 | $ 3,000.00 | $ 3,000.00 | $ 3,000.00 | $ 3,000.00 |
| Legal | $ 8,083.14 | $ 8,083.14 | $ 8,083.14 | $ 8,083.14 | $ 8,083.14 | $ 8,083.14 |
| Accounting | $ 4,041.57 | $ 4,041.57 | $ 4,041.57 | $ 4,041.57 | $ 4,041.57 | $ 4,041.57 |
| Quarterly US Trustee Fees (weekly accrual) | $ 3,002.31 | $ 3,002.31 | $ 3,002.31 | $ 3,002.31 | $ 3,002.31 | $ 3,002.31 |
| **Weekly Chapter 11 Costs** | $ 18,127.02 | $ 18,127.02 | $ 18,127.02 | $ 18,127.02 | $ 18,127.02 | $ 18,127.02 |

1

| | May 13-19 Week | May20-26 Week | May 27-June 2 Week | June 3-9 Week | June 10-16 Week | June 17-23 Week |
|---|---|---|---|---|---|---|
| | 7 | 8 | 9 | 10 | 11 | 12 |
| | | | | | | |
| | $ 5,231,899.58 | $ 5,850,805.33 | $ 6,291,910.08 | $ 6,394,126.39 | $ 6,803,453.52 | $ 7,252,929.27 |
| | | | | | | |
| **REVENUE SOURCES** | | | | | | |
| | | | | | | |
| **Payments Received and Deposited** | $ 1,444,828.66 | $ 1,267,027.66 | $ 1,097,569.23 | $ 1,404,680.05 | $ 1,444,828.66 | $ 1,267,027.66 |
| | | | | | | |
| Interest Income | $ 481,650.35 | $ 481,650.35 | $ 480,318.24 | $ 480,318.24 | $ 480,318.24 | $ 480,318.24 |
| Dealer's Service Fee | $ 54,587.07 | $ 54,587.07 | $ 54,436.03 | $ 54,436.03 | $ 54,436.03 | $ 54,436.03 |
| Late Fee Income | $ 1,605.54 | $ 1,605.54 | $ 1,601.15 | $ 1,601.15 | $ 1,601.15 | $ 1,601.15 |
| Other income | $ 802.77 | $ 802.77 | $ 800.46 | $ 800.46 | $ 800.46 | $ 800.46 |
| Principal Payments Received | $ 906,182.94 | $ 728,381.93 | $ 560,413.34 | $ 867,524.16 | $ 907,672.77 | $ 729,871.77 |
| | | | | | | |
| **Weekly Revenues** | $ 1,444,828.66 | $ 1,267,027.66 | $ 1,097,569.23 | $ 1,404,680.05 | $ 1,444,828.66 | $ 1,267,027.66 |
| | | | | | | |
| **CASH DISBURSEMENTS** | | | | | | |
| **Financing Costs** | | | | | | |
| # New Loan Originations | 40.00 | 40.00 | 50.00 | 50.00 | 50.00 | 50.00 |
| | | | | | | |
| New Loan Origination Funding | $ 672,120.00 | $ 672,120.00 | $ 840,150.00 | $ 840,150.00 | $ 840,150.00 | $ 840,150.00 |
| **Weekly Funding Disbursements** | $ 672,120.00 | $ 672,120.00 | $ 840,150.00 | $ 840,150.00 | $ 840,150.00 | $ 840,150.00 |
| | | | | | | |
| **Payroll & Benefits** | | | | | | |
| Payroll- Office | $ 48,000.00 | $ 48,000.00 | $ 48,000.00 | $ 48,000.00 | $ 48,000.00 | $ 48,000.00 |
| Payroll - Officers | $ 17,000.00 | $ 17,000.00 | $ 17,000.00 | $ 17,000.00 | $ 17,000.00 | $ 17,000.00 |
| Payroll Taxes | $ 5,472.50 | $ 5,472.50 | $ 5,472.50 | $ 5,472.50 | $ 5,472.50 | $ 5,472.50 |
| Employee Benefits | $ 6,928.41 | $ 6,928.41 | $ 6,928.41 | $ 6,928.41 | $ 6,928.41 | $ 6,928.41 |
| **Weekly Payroll Costs** | $ 77,400.91 | $ 77,400.91 | $ 77,400.91 | $ 77,400.91 | $ 77,400.91 | $ 77,400.91 |
| **Direct Expenses** | | | | | | |
| Commissions | $ 5,000.00 | $ 5,000.00 | $ 6,250.00 | $ 6,250.00 | $ 6,250.00 | $ 6,250.00 |
| Credit Reporting | $ 600.00 | $ 600.00 | $ 750.00 | $ 750.00 | $ 750.00 | $ 750.00 |
| Data Processing | $ 20,769.00 | $ 20,769.00 | $ 20,769.00 | $ 20,769.00 | $ 20,769.00 | $ 20,769.00 |
| **Weekly Direct Expenses** | $ 26,369.00 | $ 26,369.00 | $ 27,769.00 | $ 27,769.00 | $ 27,769.00 | $ 27,769.00 |
| | | | | | | |
| **Operating Expenses** | | | | | | |
| Auto Expenses | $ 808.31 | $ 808.31 | $ 808.31 | $ 808.31 | $ 808.31 | $ 808.31 |
| Bank Charges | $ 6,004.62 | $ 6,004.62 | $ 6,004.62 | $ 6,004.62 | $ 6,004.62 | $ 6,004.62 |
| Dues and Subscriptions | $ 1,616.63 | $ 1,616.63 | $ 1,616.63 | $ 1,616.63 | $ 1,616.63 | $ 1,616.63 |
| Equipment Leasing | $ 923.79 | $ 923.79 | $ 923.79 | $ 923.79 | $ 923.79 | $ 923.79 |
| General Insurance | $ 1,431.87 | $ 1,431.87 | $ 1,431.87 | $ 1,431.87 | $ 1,431.87 | $ 1,431.87 |
| Legal and Professional | $ 4,618.94 | $ 4,618.94 | $ 4,618.94 | $ 4,618.94 | $ 4,618.94 | $ 4,618.94 |
| Licenses and Taxes | $ 3,233.26 | $ 3,233.26 | $ 3,233.26 | $ 3,233.26 | $ 3,233.26 | $ 3,233.26 |
| Travel, Meals and Entertainment | $ 461.89 | $ 461.89 | $ 461.89 | $ 461.89 | $ 461.89 | $ 461.89 |
| Office Expenses | $ 1,430.72 | $ 1,430.72 | $ 1,430.72 | $ 1,430.72 | $ 1,430.72 | $ 1,430.72 |
| Postage | $ 642.26 | $ 642.26 | $ 642.26 | $ 642.26 | $ 642.26 | $ 642.26 |
| Rent | $ 6,923.08 | $ 6,923.07 | $ 6,923.08 | $ 6,923.08 | $ 6,923.08 | $ 6,923.07 |
| Utilities | $ 1,963.05 | $ 1,963.05 | $ 1,963.05 | $ 1,963.05 | $ 1,963.05 | $ 1,963.05 |
| Telephone | $ 1,847.58 | $ 1,847.58 | $ 1,847.58 | $ 1,847.58 | $ 1,847.58 | $ 1,847.58 |
| **Weekly Operating Expenses** | $ 31,905.99 | $ 31,905.98 | $ 31,905.99 | $ 31,905.99 | $ 31,905.99 | $ 31,905.98 |
| | | | | | | |
| **Chapter 11 Administrative Fees and Costs** | | | | | | |
| Case Administrative Costs | $ 3,000.00 | $ 3,000.00 | $ 3,000.00 | $ 3,000.00 | $ 3,000.00 | $ 3,000.00 |
| Legal | $ 8,083.14 | $ 8,083.14 | $ 8,083.14 | $ 8,083.14 | $ 8,083.14 | $ 8,083.14 |
| Accounting | $ 4,041.57 | $ 4,041.57 | $ 4,041.57 | $ 4,041.57 | $ 4,041.57 | $ 4,041.57 |
| Quarterly US Trustee Fees (weekly accrual) | $ 3,002.31 | $ 3,002.31 | $ 3,002.31 | $ 3,002.31 | $ 3,002.31 | $ 3,002.31 |
| **Weekly Chapter 11 Costs** | $ 18,127.02 | $ 18,127.02 | $ 18,127.02 | $ 18,127.02 | $ 18,127.02 | $ 18,127.02 |

| | June 24-30 | QUARTERLY |
|---|---|---|
| | Week | TOTALS |
| | 13 | |
| | | |
| | $ 7,524,604.02 | $ 340,325.95 |
| | | |
| **REVENUE SOURCES** | | |
| | | |
| **Payments Received and Deposited** | $ 1,097,569.23 | $ 16,739,886.04 |
| | | |
| Interest Income | $ 480,318.24 | $ 6,267,179.21 |
| Dealer's Service Fee | $ 54,436.03 | $ 710,279.91 |
| Late Fee Income | $ 1,601.15 | $ 20,891.69 |
| Other Income | $ 800.46 | $ 10,444.80 |
| Principal Payments Received | $ 560,413.34 | $ 9,731,090.43 |
| | | |
| **Weekly Revenues** | $ 1,097,569.23 | $ 16,739,886.04 |
| | | |
| **CASH DISBURSEMENTS** | | |
| **Financing Costs** | | |
| # New Loan Originations | 50.00 | 445.00 |
| | | |
| New Loan Origination Funding | $ 840,150.00 | $ 7,477,335.00 |
| *Weekly Funding Disbursements* | $ 840,150.00 | $ 7,477,335.00 |
| | | |
| **Payroll & Benefits** | | |
| Payroll- Office | $ 48,000.00 | $ 616,000.00 |
| Payroll - Officers | $ 17,000.00 | $ 221,000.00 |
| Payroll Taxes | $ 5,472.50 | $ 70,530.50 |
| Employee Benefits | $ 6,928.41 | $ 90,069.28 |
| *Weekly Payroll Costs* | $ 77,400.91 | $ 997,599.78 |
| **Direct Expenses** | | |
| Commissions | $ 6,250.00 | $ 55,625.00 |
| Credit Reporting | $ 750.00 | $ 6,675.00 |
| Data Processing | $ 20,769.00 | $ 269,997.00 |
| *Weekly Direct Expenses* | $ 27,769.00 | $ 332,297.00 |
| | | |
| **Operating Expenses** | | |
| Auto Expenses | $ 808.31 | $ 10,508.08 |
| Bank Charges | $ 6,004.62 | $ 78,060.05 |
| Dues and Subscriptions | $ 1,616.63 | $ 21,016.17 |
| Equipment Leasing | $ 923.79 | $ 12,009.24 |
| General Insurance | $ 1,431.87 | $ 18,614.32 |
| Legal and Professional | $ 4,618.94 | $ 60,046.19 |
| Licenses and Taxes | $ 3,233.26 | $ 42,032.33 |
| Travel, Meals and Entertainment | $ 461.89 | $ 6,004.62 |
| Office Expenses | $ 1,430.72 | $ 18,599.31 |
| Postage | $ 642.26 | $ 8,349.42 |
| Rent | $ 6,923.07 | $ 85,730.76 |
| Utilities | $ 1,963.05 | $ 25,519.63 |
| Telephone | $ 1,847.58 | $ 24,018.48 |
| *Weekly Operating Expenses* | $ 31,905.98 | $ 410,508.59 |
| | | |
| **Chapter 11 Administrative Fees and Costs** | | |
| Case Administrative Costs | $ 3,000.00 | $ 39,000.00 |
| Legal | $ 8,083.14 | $ 105,080.83 |
| Accounting | $ 4,041.57 | $ 52,540.42 |
| Quarterly US Trustee Fees (weekly accrual) | $ 3,002.31 | $ 39,030.02 |
| *Weekly Chapter 11 Costs* | $ 18,127.02 | $ 235,651.27 |

3