

**ORDERED in the Southern District of Florida on March 13, 2019.**

Raymond B. Ray, Judge
United States Bankruptcy Court

_____

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

In re:                                                    Chapter 11

**SUMMIT FINANCIAL CORP.,**                               Case No. 18-13389-RBR

      Debtor.

### FINAL ORDER GRANTING DEBTOR'S EMERGENCY MOTION FOR AUTHORITY TO USE CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION

       This matter came before the Court for hearing on March 12, 2019 at 11:00 a.m. (the "Final Hearing") on *Debtor-in-Possession's Emergency Motion for Entry of an Order (1) Authorizing Use of Cash Collateral; (2) Granting Adequate Protection; and (3) Scheduling a Final Hearing* [Docket No. 8] and *Debtor's Corrected Supplement to (A) Motion for Order Authorizing Use of Cash Collateral [ECF #8], and (B) Response [ECF # 64] to Objection of Bank of America, N.A., to Debtor's Motion for Order Authorizing Use of Cash Collateral* [Docket No. 138] (collectively, the "Motion") filed by the Debtor Summit Financial Corp. (the "Debtor"), requesting authority to use Cash Collateral (as defined below) pursuant to section 363

of Title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "<u>Bankruptcy Code</u>") and Rules 4001(b) and (d) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and to provide adequate protection to certain pre-petition secured parties.  On March 29, 2018, the Court conducted an initial hearing (the "<u>First Hearing</u>") on the Motion and entered an *Agreed Interim Order Granting Debtor's Emergency Motion for Authority to Use Cash Collateral, Granting Adequate Protection and Notice of Final Hearing* [<u>Docket No. 36</u>] (the "<u>First Interim Order</u>").  On April 24, 2018, the Court conducted a second hearing (the "<u>Second Hearing</u>") and entered a *Second Agreed Interim Order Granting Debtor's Emergency Motion for Authority to Use Cash Collateral, Granting Adequate Protection and Notice of Final Hearing* [<u>Docket No. 70</u>] on April 26, 2018 (the "<u>Second Interim Order</u>").  On May 23, 2018, the Court conducted a third hearing (the "<u>Third Hearing</u>") on the Motion and entered a *Third Agreed Interim Order Granting Debtor's Emergency Motion for Authority to Use Cash Collateral, Granting Adequate Protection and Notice of Final Hearing* [<u>Docket No. 111</u>] on May 31, 2018 (the "<u>Third Interim Order</u>"). On June 20, 2018, the Court conducted a fourth hearing (the "<u>Fourth Hearing</u>") on the Motion and entered a *Fourth Agreed Interim Order Granting Debtor's Emergency Motion for Authority to Use Cash Collateral, Granting Adequate Protection and Notice of Final Hearing* [<u>Docket No. 125</u>] on June 25, 2018 (the "<u>Fourth Interim Order</u>").  On August 1, 2018, the Court conducted a fifth hearing (the "<u>Fifth Hearing</u>") on the Motion and entered a *Fifth Agreed Interim Order Granting Debtor's Emergency Motion for Authority to Use Cash Collateral, Granting Adequate Protection and Notice of Final Hearing* [<u>Docket No. 165</u>] on August 3, 2018 (the "<u>Fifth Interim Order</u>").  On August 29, 2018, the Court conducted a sixth hearing (the "<u>Sixth Hearing</u>") and entered a *Sixth Agreed Interim Order Granting Debtor's Emergency Motion for Authority to Use Cash Collateral, Granting Adequate Protection and Notice of Final Hearing* [<u>Docket No. 180</u>] on September 6, 2018 (the "<u>Sixth Interim Order</u>").  On October 3, 2018, the

Court conducted a seventh hearing (the "Seventh Hearing") and entered a *Seventh Agreed Interim Order Granting Debtor's Emergency Motion for Authority to Use Cash Collateral, Granting Adequate Protection and Notice of Final Hearing* [Docket No. 189] on October 10, 2018 (the "Seventh Interim Order").  On December 12, 2018, the Court conducted an eighth hearing (the "Eighth Hearing") and entered an *Eighth Agreed Interim Order Granting Debtor's Emergency Motion for Authority to Use Cash Collateral, Granting Adequate Protection and Notice of Final Hearing* [Docket No. 353] on December 18, 2018 (the "Eighth Interim Order"). The effectiveness of the Eighth Interim Order has been continued by orders entered on January 17, 2019 [Docket No. 365], February 6, 2019 [Docket No. 396], February 26, 2019 [Docket No. 416] and March 4, 2019 [Docket No. 424].

Based upon the Court's consideration of the Motion and all matters brought to the Court's attention at the hearings, and after due deliberation and consideration, the Court makes the following findings of fact and conclusions of law applicable to the Debtor's use of Cash Collateral (to the extent any findings of fact constitute conclusions of law, they are adopted as such, and *vice versa*):

A.    **Petition Date**.  On March 23, 2018 (the "Petition Date"), the Debtor filed with the Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby commencing with respect to the Debtor a chapter 11 case (the "Case").  The Debtor is continuing to manage its assets and to operate its business as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed.

B.    **Pre-Petition Agent's Assertions.**  Without prejudice to the rights of any other party (but subject to the limitations thereon contained in paragraph 7 hereof), Pre-Petition Agent (defined below) asserts as follows:

(i)    <u>Pre-Petition Loan Documents</u>.    Pursuant to that certain Third Amended and Restated Loan and Security Agreement dated as of February 14, 2017 (as at any time amended, modified, restated or supplemented, the "<u>Pre-Petition Loan Agreement</u>"), certain financial institutions in their capacity as lenders (collectively, "<u>Pre-Petition Lenders</u>") and Bank of America, N.A., as administrative and collateral agent (in such capacity, the "<u>Pre-Petition Agent</u>"; and together with the Pre-Petition Lenders, any affiliates of Pre-Petition Lenders who provide Bank Products (as defined in the Pre-Petition Loan Agreement, the "<u>Pre-Petition Bank Products</u>"), the Issuing Bank (as defined in the Pre-Petition Loan Agreement), and each of the successors and assigns of any of the foregoing entities, the "<u>Pre-Petition Credit Parties</u>") established a revolving credit facility (with a letter of credit sub-facility) for the Debtor in an aggregate principal amount up to $110,000,000.    The Pre-Petition Loan Agreement, together with any other agreement, note, instrument, guaranty, financing statement, pledge, assignment, and other document executed at any time in connection therewith, in each case as the same have been amended, modified, restated or supplemented from time to time, are hereinafter referred to collectively as the "<u>Pre-Petition Loan Documents</u>."    All of the Pre-Petition Loan Documents create legal, valid and binding obligations of the Debtor.

(ii)    <u>Pre-Petition Collateral</u>.    Pursuant to certain of the Pre-Petition Loan Documents, the Debtor granted to Pre-Petition Agent, for the benefit of the Pre-Petition Credit Parties and to secure all Pre-Petition Debt (as defined below), a first priority continuing security interest in and lien upon all or substantially all of the Debtor's assets, including, without limitation, all accounts, inventory, contracts, loan agreements, installment sale contracts, notes and other forms of obligations, chattel paper, documents, instruments, letter-of-credit rights, supporting obligations, certificates of title, certificates of origin, general intangibles, goods, equipment, investment property, computer hardware and software, money, cash, cash equivalents, refunds,  securities,

deposit accounts, commercial tort claims, books and records, and all products and proceeds of any of the foregoing (collectively, and as more particularly described in the Pre-Petition Loan Agreement, the "Pre-Petition Collateral"; and with such pre-Petition Date liens and security interests in favor of Pre-Petition Agent being collectively called the "Pre-Petition Security Interests"). Pre-Petition Agent asserts that the Pre-Petition Security Interests are legal, valid, binding, enforceable, non-avoidable and duly perfected and are not subject to any contest, attack, rejection, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim, cause of action or other challenge of any nature under the Bankruptcy Code, any applicable non-bankruptcy law or otherwise.

(iii)    Pre-Petition Debt. As of the Petition Date, the Debtor was indebted and liable under the Pre-Petition Loan Documents to Pre-Petition Credit Parties for revolving credit loans in the approximate principal amount of $101,382,098 (the "Pre-Petition Loans"), for fees, expenses, and other charges associated with depository accounts and other Bank Product Debt (as defined in the Pre-Petition Loan Agreement) (collectively, the "Pre-Petition Bank Product Obligations"), and on a contingent basis in the approximate amount of $300,000 in face amount of standby letters of credit (the "Pre-Petition LCs"; together with the Pre-Petition Loans, the Pre-Petition Bank Product Obligations, all other liabilities and obligations of the Debtor in respect of indemnities, guaranties and other payment assurances made or given to or by the Debtor for the benefit of Pre-Petition Credit Parties, and all interest, fees, costs, legal expenses and all other amounts heretofore or hereafter accruing thereon or at any time chargeable to the Debtor in connection therewith, collectively referred to as the "Pre-Petition Debt"). Pre-Petition Agent asserts that the Pre-Petition Debt is due and owing to the Pre-Petition Credit Parties without any defense, offset, recoupment or counterclaim of any kind; the Pre-Petition Debt constitutes the legal, valid and binding obligations of the Debtor as and to the extent provided in the Pre-

- 5 -

Petition Loan Documents, enforceable in accordance with the terms of the applicable Pre-Petition Loan Documents; and none of the Pre-Petition Debt or any payments made to any Pre-Petition Credit Party or applied to the indebtedness or other obligations at any time outstanding under any Pre-Petition Loan Documents prior to the Petition Date is subject to avoidance, subordination, recharacterization, recovery, attack, offset, counterclaim, defense or other claim of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

(iv)    <u>Cash Collateral</u>.  All cash and deposits of the Debtor as of the Petition Date, including, without limitation, all amounts on deposit or maintained by the Debtor in any account with any Pre-Petition Credit Party and all deposits made by the Debtor with any landlord or other person or entity, are subject to valid and enforceable rights of setoff and valid, perfected, enforceable first-priority liens under the Pre-Petition Loan Documents and applicable law, and are included in the Pre-Petition Collateral, and therefore the Debtor's cash and deposits constitute cash collateral of each Pre-Petition Credit Party within the meaning of section 363(a) of the Bankruptcy Code, up to and including the extent of the unpaid Pre-Petition Debt and post-petition obligations of the Debtor to the Pre-Petition Credit Parties.  All such cash and deposits (including, without limitation, all proceeds of the Pre-Petition Collateral and of other property encumbered by liens and security interests granted under this Order, regardless of whether such proceeds are in existence on the Petition Date or thereafter come into existence) are referred to herein as "<u>Cash Collateral</u>."

C.    **Need for Use of Cash Collateral.**  The Debtor asserts that it requires the use of Cash Collateral to protect, preserve and dispose of its assets and make payroll and to pay other critical expenses in the ordinary course of business.  The Debtor has represented that serious and potentially irreparable harm to the Debtor, its creditors (both secured and unsecured), and its estate may occur absent authorization for the use of the Cash Collateral.

D.      **Service of Motion**.  The Debtor has certified that copies of the Motion, the Interim Orders and notice of the hearings on the Motion have been served by electronic mail, telecopy transmission, hand delivery, overnight courier or first class United States mail upon the Office of the United States Trustee (the "United States Trustee"), counsel for Pre-Petition Agent, and the Debtor's 30 largest unsecured creditors.  The Court finds that notice of the Motion, as it relates to this Order, is sufficient for all purposes under the Bankruptcy Code and the Bankruptcy Rules, including, without limitation, sections 102(1) and 363 of the Bankruptcy Code and Bankruptcy Rule 4001(b) and (d).

E.      **Finding Cause**.  Good cause has been shown for the entry of this Order, the granting of adequate protection as set forth herein and authorization for the Debtor to use Cash Collateral. The Debtor's need for use of Cash Collateral is ongoing, immediate and critical. Entry of this Order will preserve the assets of the Debtor's estate and its value and is in the best interests of the Debtor, its creditors and the Debtor's estate.

F.      **Jurisdiction; Core Proceeding; Venue**.  This Court has jurisdiction to enter this Order pursuant to 28 U.S.C. §§ 157(b) and 1334.  Consideration of the Motion constitutes a core proceeding, as defined in 28 U.S.C. § 157(b)(2).  Venue for this chapter 11 case and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

G.      **Adequate Protection.**  Pre-Petition Agent has requested, and is entitled to, adequate protection of its interests in the Pre-Petition Collateral under 11 U.S.C. §§ 361 and 363.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED, as follows:

1.      **Grant of Motion; Authority to Use Cash Collateral.**

(a)      Subject to all of the terms, conditions and limitations of this Order, the Debtor shall be authorized to use Cash Collateral for Permitted Purposes (as defined below).  Neither the

consent of Pre-Petition Agent to use of Cash Collateral, nor the Debtor's use of Cash Collateral, shall release, limit, impair or provide any defense to enforcement of any guaranty of payment or performance of any of the Pre-Petition Debt, and all such guaranties shall remain in full force and effect and enforceable according to their terms.

(b)    The term "Permitted Purposes" shall mean the Debtor's use of Cash Collateral owned by it in the ordinary course of the Debtor's business solely for the purposes of supporting the Debtor's ongoing working capital needs to the extent, and only for the specific purposes, and in an amount not to exceed on a line item basis each weekly amount set forth in a written budget approved in writing by the Pre-Petition Agent (as such budget may be amended with the written approval of the Pre-Petition Agent, the "Budget"), subject to the terms, conditions and limitations in this Order, provided, however, that in no event shall any Cash Collateral be used to pay any pre-petition claim against the Debtor other than amounts specifically approved by the Court after notice and hearing, including payroll, payroll related taxes, employee benefits and "trust fund" sales and use taxes to the extent of applicable line items in the Budget, and adequate protection payments as authorized by the Court.  Upon approval of a Budget by the Pre-Petition Agent, the Pre-Petition Agent shall promptly file a copy of such Budget with the Court.

(c)    As long as the Debtor's use of Cash Collateral is not terminated, as set forth in this Order, the Pre-Petition Agent shall transfer to the Debtor on the Transfer Date the amount of the expenses in the Budget for the calendar week that includes the Transfer Date, minus the aggregate amount of cash previously turned over to the Debtor on account of expenses that was not spent by the Debtor during the week of such previous turn over, from the Debtor's Collection Account (xxxx8407) to the Debtor's Master Disbursement Account (xxxx8410).

2.    **Collection of Accounts Receivable and Consumer Loans**. The Debtor shall diligently attempt to collect all of its pre-petition and post-petition accounts receivable and

consumer loans and all other rights to the payment of money and shall cause all such collections remitted by its customers and other account obligors to be promptly deposited into the Debtor's collection accounts. Nothing in this Order shall be construed to require Pre-Petition Agent to extend credit or make available to the Debtor any funds received by Pre-Petition Agent that are not good, fully collected funds at such time. Pre-Petition Agent shall be authorized to deduct from Cash Collateral amounts sufficient to pay and to be used to pay reasonable and customary fees and expenses associated with the wiring or other transfer of such funds. Until expended by the Debtor, all Cash Collateral shall remain subject to the liens and claims of Pre-Petition Credit Parties under the Pre-Petition Loan Documents and this Order.

   **3.** **Termination of Authority to Use Cash Collateral**. Notwithstanding the term of any approved Budget, unless otherwise agreed in writing by the Pre-Petition Agent, the Debtor's authority to use Cash Collateral shall terminate for all purposes (except to pay the Pre-Petition Debt) upon the soonest to occur of the following events or conditions: (i) three business days after the Pre-Petition Agent delivers to counsel for the Debtor a written notice to terminate use of Cash Collateral; (ii) a chapter 11 trustee or examiner with expanded powers is appointed in the Case; (iii) the Case is converted to a chapter 7 case or is dismissed; (iv) the Court enters an order granting Pre-Petition Agent relief from the automatic stay or prohibiting the use of Cash Collateral by the Debtor; or (v) this Order is amended, vacated, stayed, reversed or otherwise modified without the prior written consent of Pre-Petition Agent.

   **4.** **Adequate Protection of Pre-Petition Credit Parties.** As adequate protection of its interests in the Pre-Petition Collateral, the Pre-Petition Agent, on behalf of the Pre-Petition Credit Parties, is entitled, pursuant to sections 105, 361, 363 and 364 of the Bankruptcy Code, to claims and other protections (the "Adequate Protection Claims") in an amount equal to the Collateral Diminution. As used in this Order, the term "Collateral Diminution" shall mean an

amount equal to the aggregate diminution of the value in any Pre-Petition Credit Party's interest in the Pre-Petition Collateral (including Cash Collateral) from and after the Petition Date for any reason, including, without limitation, any such diminution resulting from the use of Cash Collateral, the depreciation, sale, loss, or use (or any other decline in value) of such Pre-Petition Collateral, after taking into consideration Cash Collateral that remains in the Debtor's accounts, or the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, in each case to the fullest extent provided under the Bankruptcy Code.  The Pre-Petition Agent is hereby granted, subject to the rights of third parties preserved under paragraph 7 of this Order, the following for the benefit of the Pre-Petition Credit Parties:

(a)    Adequate Protection Liens.  Pre-Petition Agent, for the benefit of the Pre-Petition Credit Parties, is hereby granted by this Order (effective and perfected upon the date of entry of this Order, and without the necessity of the execution, filing or recording by the Debtor, the Pre-Petition Agent or any other Pre-Petition Credit Party of security agreements, pledge agreements, mortgages, security deeds, financing statements or other agreements), valid and perfected replacement security interests in and liens (the "Adequate Protection Liens") on all of the Debtor's pre-petition and post-petition real and personal property, including, without limitation, all of the Debtor's accounts, inventory, contracts, loan agreements, installment sale contracts, notes and other forms of obligations, chattel paper, documents, instruments, letter-of-credit rights, supporting obligations, certificates of title, certificates of origin, general intangibles, goods, equipment, investment property, computer hardware and software, money, cash, cash equivalents, refunds, securities, deposit accounts, commercial tort claims, books and records, and all products and proceeds of any of the foregoing, whether such assets were in existence on the Petition Date or were thereafter created, acquired or arising and wherever located, and excluding any pre-petition retainers in Debtor's counsel's trust account(s) that were not paid directly by the

Debtor (all such real and personal property, including, without limitation, all Pre-Petition Collateral, being collectively hereinafter referred to as the "Collateral") but only to the extent of and to secure the amount of any Collateral Diminution. The Adequate Protection Liens shall not be subject to sections 506(c), 510(c), 549, or 550 of the Bankruptcy Code, and no lien avoided and preserved for the benefit of the estate pursuant to section 510 of the Bankruptcy Code shall be made *pari passu* with or senior to any Adequate Protection Liens.

(b)     Priority of Adequate Protection Claims. The Adequate Protection Claims are allowed as superpriority administrative claims pursuant to sections 503(b) and 507(b) of the Bankruptcy Code and shall have priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, without limitation, sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546, 726, 1113, or 1114 of the Bankruptcy Code, excluding any pre-petition retainers in Debtor's counsel's trust account that were not paid directly by the Debtor or funds in the Debtor Professional Fees Account or the Committee Professional Fees Account (defined in paragraph 8 below).

(c)     Adequate Protection Payments. The Debtor shall pay to Pre-Petition Agent, and Pre-Petition Agent is authorized to deduct and recoup from Cash Collateral, on a weekly basis, the adequate protection payments shown in the Budget, and such payments may be applied by Pre-Petition Agent to the unpaid Pre-Petition Debt in accordance with the Pre-Petition Loan Agreement; provided, however, that all such adequate protection payments shall be provisional, subject to final allowance of the claims of the Pre-Petition Credit Parties, and subject to reallocation to principal or disgorgement, in each case in connection with a challenge to the Pre-Petition Security Interests or allowance of the Pre-Petition Debt pursuant to paragraph 7 below. To the extent that available cash in the Debtor's collections account is not sufficient to make any

adequate protection payment when due, then Pre-Petition Agent shall be paid the resulting deficiency on any date thereafter on which there is cash in the collections account, after taking into account the required funding under paragraph 1(c) of this Order.

(d)    Reservation of Rights.  Nothing herein shall be deemed to be a waiver by any Pre-Petition Credit Party of its right to request additional or further protection of its interests in any Pre-Petition Collateral, to move for relief from the automatic stay, to seek the appointment of a trustee or examiner for the Debtor or the conversion or dismissal of this Case, to object to any proposed sale or other disposition of the Debtor's assets under section 363 of the Bankruptcy Code or otherwise, to accept or reject any plan of reorganization or liquidation, or to request any other relief in the Case; nor shall anything herein constitute an admission by a Pre-Petition Credit Party regarding the quantity, quality or value of any Collateral securing the Pre-Petition Debt or constitute a finding of adequate protection with respect to the interests of the Pre-Petition Agent in any Collateral.  The Pre-Petition Credit Parties shall be deemed to have reserved all rights to assert entitlement to the protections and benefits of section 507(b) of the Bankruptcy Code in connection with any use, sale, encumbering or other disposition of any of the Collateral, to the extent that the protections afforded by this Order to the Pre-Petition Security Interests proves to be inadequate.  Similarly, nothing herein shall be deemed to be a waiver by the Debtor of its right to object to such additional or further action(s) taken by any Pre-Petition Credit Party.

**5.    Automatic Perfection of Adequate Protection Liens.**  The Adequate Protection Liens and all claims, rights, interests, administrative claims and other protections granted to or for the benefit of Pre-Petition Credit Parties pursuant to this Order and the Bankruptcy Code shall constitute valid, enforceable, non-avoidable and duly perfected security interests and liens. No Pre-Petition Credit Party shall be required to file or serve financing statements, mortgages, deeds to secure debt or similar instruments which otherwise may be required under federal or

state law in any jurisdiction, or take any action, including taking possession, to validate and perfect such security interests and liens, but upon request by any Pre-Petition Credit Party, the Debtor is hereby authorized and directed to execute and deliver any such financing statements, mortgages, deeds to secure debt or similar instruments.  The failure by any Pre-Petition Credit Party to request, or the failure or refusal of the Debtor to execute or deliver, any documentation relating to the Adequate Protection Liens shall in no way affect the validity, perfection or priority of such Adequate Protection Liens.

   **6.**  **<u>Access to Premises and Records; Reporting; Insurance</u>**.

   (a)  Pre-Petition Agent and its respective representatives and agents (including, without limitation, employees, officers, legal counsel, appraisers, auditors, accountants, and consultants) shall be authorized, during normal business hours, to conduct on-site field examinations in order to inspect and evaluate the Debtor's property and financial records.

   (b)  The Debtor shall timely deliver to Pre-Petition Agent all financial, collateral and other reporting, documents and information, including, without limitation, Borrowing Base Certificates (as defined in the Pre-Petition Loan Agreement), in each case as and when required by the Pre-Petition Loan Documents.  In addition, on each Wednesday, the Debtor shall deliver to Agent a written comparison showing the Debtor's actual performance during the week ending on the previous Friday as compared to the projections for such calendar week in the Budget.  All reports and data provided by the Debtor to the Pre-Petition Agent shall be simultaneously provided to counsel for the  official committee of unsecured creditors appointed in the Case (the "<u>Committee</u>") or his designee, unless the Debtor is otherwise instructed by counsel for the Committee.

   (c)  No later than the fifth (5th) day of each calendar month (or the next business day, if such day is not a business day), the Debtor shall deliver to Pre-Petition Agent loan portfolio

data tapes for the preceding calendar month in electronic format and otherwise in form and substance acceptable to Pre-Petition Agent.

(d)    The Debtor shall maintain insurance in effect with respect to its operations and each of its properties in amounts and under terms and conditions consistent with insurance coverage in effect on the Petition Date, and in any event, in compliance with the Pre-Petition Loan Agreement and the guidelines of the Office of the United States Trustee.

7.    **Deadline for Challenges of Asserted Claims and Liens.**

(a)    Pre-Petition Agent's assertions contained in this Order, including, without limitation, those contained in paragraph B of this Order, shall be binding upon all parties in interest, including, without limitation, the Debtor, any successor thereto (including, without limitation, any Chapter 7 trustee or Chapter 11 trustee, examiner or post-confirmation fiduciary appointed or elected for the Debtor), and any Committee, under all circumstances and for all purposes unless and to the extent (a) such party in interest (including the Debtor and any Committee) has timely and properly filed an adversary proceeding or contested matter by no later than the Challenge Deadline (A) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Pre-Petition Debt or any Pre-Petition Security Interest or (B) otherwise asserting any defenses, claims, causes of action, counterclaims or offsets against any Pre-Petition Credit Party or its respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors in any way relating to any transactions, events, actions or failure to act under or in connection with any of the Pre-Petition Loan Documents (collectively, a "Challenge"), and (b) the Court rules in favor of the plaintiff with respect to any such timely and properly filed Challenge.  As used herein, the term "Challenge Deadline" means the earliest to occur of (A) the date that the Court enters an order confirming any Chapter 11 plan of reorganization or liquidation proposed by the Debtor, or (B) the date of

entry of an order approving the sale of all or substantially all of the assets of Pre-Petition Borrower, or (C) (i) in the case of the Debtor or another party in interest with requisite standing other than the Committee, 75 days after the date of entry of the First Interim Order, (ii) in the case of the Committee, the Committee Challenge Deadline (defined below), or (iii) in each case of clauses (i) and (ii), any such later date agreed to in writing by the Pre-Petition Agent, in its sole discretion, or ordered by the Court for cause shown, after notice and an opportunity to be heard, provided that such motion for an order to extend the Challenge Deadline is filed with the Court prior to the expiration of any applicable period as set forth in clause (i) or (ii) of this sentence.  The Committee has stipulated that the Challenge Deadline has finally expired with respect to the validity, extent, priority, perfection and non-avoidability of the Pre-Petition Security Interests and that the Pre-Petition Security Interests were and are valid, perfected and not subject to avoidance or subordination; but with respect to all other potential Challenges that may be asserted by the Committee, the Challenge Deadline is hereby extended through and including March 29, 2019 (the "Committee Challenge Deadline").  If prior to expiration of the Committee Challenge Deadline, the Committee files a motion in which the Committee seeks standing from this Court to pursue a Challenge and attaches to such motion a proposed complaint setting forth the basis for such Challenge, then, with respect to such proposed challenge, the expiration of the Committee Challenge Deadline shall be tolled until the Court rules on the motion seeking standing.

(b)    If no such Challenge is timely and properly filed by the Committee as of the Committee Challenge Deadline against a Pre-Petition Credit Party or the Court does not rule in favor of the plaintiff with respect to a Challenge that is timely filed as to a Pre-Petition Credit Party, then for all purposes in this Case and in any successor case (i) the Pre-Petition Agent's assertions in this Order, including, without limitation, those contained in paragraph B of this

Order, with respect to such Pre-Petition Credit Party shall be binding on all parties in interest, including the Committee, and any examiner, trustee or post-confirmation agent or trustee; (ii) the Pre-Petition Debt owing to such Pre-Petition Credit Party shall constitute an allowed secured claim that is not subject to defense, claim, counterclaim, recharacterization, subordination, offset or avoidance, for all purposes in the Case and any successor case; (iii) the Pre-Petition Security Interests in favor of such Pre-Petition Credit Party shall be deemed to have been, as of the Petition Date and thereafter, legal, valid, binding, perfected, first priority security interests and liens, not subject to recharacterization, subordination, avoidance, nullification, or other defense and shall not be subject to any other or further claim or challenge by any Committee or any other party in interest seeking to exercise the rights of the Debtor's estate, including, without limitation, any trustee, examiner, or any other successor in interest to the Debtor; and (iv) the Debtor (for itself, its estate and its successors and assigns) shall be deemed to have forever waived and released any and all Claims (as defined in the Bankruptcy Code), counterclaims, actions, causes of action, defenses or setoff rights that the Debtor may have against such Pre-Petition Credit Party or any of its officers, directors, agents, employees, attorneys and affiliates and that arise out of or relate to any of the Pre-Petition Loan Documents or any action, inaction, or transactions thereunder, whether disputed or undisputed, at law or in equity, or known or unknown, including, without limitation, any recharacterization, subordination, avoidance or other claim arising under or pursuant to section 105 or Chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state or federal law.  If any such Challenge is properly filed by the Committee on or before the Committee Challenge Deadline, the Pre-Petition Agent's assertions contained in this Order, including, without limitation, those contained in paragraph B of this Order, shall nonetheless remain binding and preclusive as provided in paragraph 7(a), except to the extent that such admissions, stipulations, agreements and releases were expressly

challenged in such Challenge and the Committee prevails on the merits with respect thereto. Nothing contained in this Order shall vest or confer any person or entity, including the Committee, with standing or authority to commence or prosecute, or participate in, any Challenge.

8.    **Escrow of Estate Professional Fees.**

(a)    For so long as the Debtor's authority to use Cash Collateral has not been terminated pursuant to paragraph 3 above, on a weekly basis, the Debtor shall be permitted to deposit Cash Collateral in an amount equal to the amount shown in the Budget (with no permitted variance) for such week as Debtor Professional Fees in an attorney trust account (the "Debtor Professional Fees Account") maintained by Debtor's counsel to provide for payment of allowed professional fees of chapter 11 attorneys for the Debtor (the "Debtor Professionals"). Pre-Petition Agent shall retain a first priority perfected security interest in all funds in the Debtor Professional Fees Account to the extent of any surplus remaining after payment of all allowed administrative claims of retained Debtor Professionals and Committee Professionals (collectively with Debtor Professionals, the "Estate Professionals") as set forth in this paragraph 8, and all funds at any time in the Debtor Professional Fees Account or disbursed from the Debtor Professional Fees Account or otherwise paid to Estate Professionals shall be used solely (i) to pay allowed fees and expenses of the Estate Professionals for whose benefit the Debtor Professional Fees Account was established and that are permitted to be paid from Cash Collateral, and (ii) to the extent of any surplus, refund, rebate or disgorgement, to be remitted to Pre-Petition Agent for application to any unpaid Pre-Petition Debt. No Pre-Petition Credit Party shall have any duties or responsibilities regarding funding or making deposits to the Debtor Professional Fees Account, and the recourse of Estate Professionals shall be strictly limited to the funds actually on deposit in such account on any date of determination.

(b)    For so long as the Debtor's authority to use Cash Collateral has not been terminated pursuant to paragraph 3 above, on a weekly basis, the Debtor shall be permitted to deposit Cash Collateral in an amount equal to the amount shown in the Budget (with no permitted variance) for such week as Committee Professional Fees in an attorney trust account (the "Committee Professional Fees Account") maintained by counsel for the Committee to provide for payment of allowed professional fees of professionals retained by the Committee (the "Committee Professionals").  Pre-Petition Agent shall retain a first priority perfected security interest in all funds in the Committee Professional Fees Account to the extent of any surplus remaining after payment of all allowed administrative claims of retained Estate Professionals as set forth in this paragraph 8, and all funds at any time in the Committee Professional Fees Account or disbursed from the Committee Professional Fees Account or otherwise paid to Estate Professionals shall be used solely (i) to pay allowed fees and expenses of the Estate Professionals for whose benefit the Committee Professional Fees Account was established and that are permitted to be paid from Cash Collateral, and (ii) to the extent of any surplus, refund, rebate or disgorgement, to be remitted to Pre-Petition Agent for application to any unpaid Pre-Petition Debt.  No Pre-Petition Credit Party shall have any duties or responsibilities regarding funding or making deposits to the Committee Professional Fees Account, and the recourse of Estate Professionals shall be strictly limited to the funds actually on deposit in such account on any date of determination.  If the Committee requests copies of the Debtor's bank account records from Bank of America, then subject to agreement of the Committee and Bank of America, the amounts shown in the Budget as deposits to the Committee Professional Fees Account will be reduced by the amount of the usual and customary bank charges for providing such copies.

(c)    Notwithstanding anything to the contrary in the Budget or this Order, in no event shall any Cash Collateral be used to pay any professional fees or expenses of any professionals

retained by the Debtor, the Committee or any other fiduciary appointed in the Case to the extent that such fees or expenses are incurred in (x) objecting to or challenging the validity, extent or priority of any of the Pre-Petition Security Interests, the amount or the validity or allowance of any of the Pre-Petition Debt, or the validity or enforceability of any of the Pre-Petition Loan Documents, (y) seeking reconsideration of or appealing any aspect of this Order or any other order entered on the Motion, or (z) asserting any claim against any Pre-Petition Credit Party, including, without limitation, any claim under chapter 5 of the Bankruptcy Code

9. **No Consent to Surcharge.**    Pre-Petition Agent has not consented to any surcharge under section 506(c) of the Bankruptcy Code, and no such consent may be implied from any action, inaction or acquiescence of Pre-Petition Agent.

10. **Reservation of Rights**.  Nothing in this Order shall constitute or be construed to (1) be an admission by Pre-Petition Agent as to the adequacy of the protection provided herein; (2) release, impair or alter in any way the obligations and liability of any guarantor of the Pre-Petition Debt or any subordination of other obligations of the Debtor in favor of prior payment of the Pre-Petition Debt or any defense of a guarantor that existed on the Petition Date; (3) prohibit Pre-Petition Agent from seeking any further relief in this Case, including, without limitation, additional adequate protection, dismissal or conversion, relief from the automatic stay under section 362(d) of the Bankruptcy Code, the appointment of a trustee or examiner, or the taking of any Bankruptcy Rule 2004 examinations; or (4) subject to the Committee Challenge Deadline, preclude the Committee from objecting to or otherwise challenging the validity or amount of the Pre-Petition Debt or asserting any other Challenge as to which the Challenge Deadline has not expired.

11. **Binding Effect; Successors and Assigns.**  The provisions of this Order shall be binding upon all parties in interest in this Case, including, without limitation, the Pre-Petition

Credit Parties and the Debtor and their respective successors and assigns (including any Chapter 11 or Chapter 7 trustee hereafter appointed for the estate of the Debtor, any examiner appointed pursuant to section 1104 of the Bankruptcy Code, the Committee or any other fiduciary appointed as a legal representative of the Debtor or with respect to any property of the Debtor), and shall inure to the benefit of the Pre-Petition Credit Parties and their respective successors and assigns.  The provisions of this Order and any action taken pursuant to the terms hereof shall survive the entry of any order dismissing any of the Case or converting the Case to a case under chapter 7 of the Bankruptcy Code, and all of the terms and conditions of this Order as well as the liens and security interests granted pursuant hereto shall continue in this or in any superseding case under the Bankruptcy Code, and such liens and security interests shall retain their priorities provided by this Order until satisfied and discharged.

12.    **Order Immediately Effective.**   Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Order shall be valid, take full effect, and be enforceable immediately upon entry hereof; there shall be no stay of execution or effectiveness of this Order; and any stay of the effectiveness of this Order that might otherwise apply is hereby waived for cause shown.

13.    **Payment of Bankruptcy Fees.**  Notwithstanding anything to the contrary in this Order, (i) fees payable to the Clerk of the Court or United States Trustee pursuant to 28 U.S.C. § 1930 in this bankruptcy case, and (ii) the fees pursuant to 28 U.S.C. § 1930(a)(6), may be paid by the Debtor even if the amount is higher than the line item in the Budget, and shall not be deemed as a violation of this Order or the Budget.

14.    **No Novation.**   This Order shall not cause a novation of any of the Pre-Petition Loan Documents or otherwise.

###

*** Submitted By:

Zach B. Shelomith, Esq.
Leiderman Shelomith Alexander + Somodevilla, PLLC
2699 Stirling Rd. #C401
Ft. Lauderdale, FL 33312
Telephone (954) 920-5355
Facsimile (954) 920-5371
zbs@lsaslaw.com

Copies Furnished To:

Zach B. Shelomith

Zach B. Shelomith, Esquire, is directed to serve copies of this Order on all parties in interest and
to file a Certificate of Service.

5894904_4