UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division
www.flsb.uscourts.gov

In re:                                                         Case No.: 18-13389-BKC-RBR

SUMMIT FINANCIAL CORP.,                                        Chapter 11

    Debtor.
_____/

## DEBTOR'S MOTION TO VOLUNTARILY CONVERT CASE TO CHAPTER 7

Debtor-in-Possession, Summit Financial Corp. ("Debtor"), by counsel, pursuant to 11 U.S.C. § 1112(a) and Fed. R. Bankr. P. 1017(f)(2), requests this Court enter an order (the "Motion") converting this case to a case under Chapter 7 of the United States Bankruptcy Code (the "Bankruptcy Code") in the event that no consensual resolution is reached by all key constituents[1] prior to the April 9, 2019 hearings, and states as follows:

### Preliminary Statement

The Debtor's bankruptcy case was filed close to a year ago with no end in sight, despite the best efforts of the Debtor to expedite a resolution. Given this Court's observations concerning the lack of progress made, which has been raised at every hearing over the past few months, the Debtor believes that the time has come to convert the case, **unless** a consensual global resolution to the issues can be reached by the key constituent parties prior to the next hearings on various motions, which are scheduled for April 9, 2019 [ECF ## 443, 444 and 450]. Debtor believes that in light of the Court's inclination to grant stay relief to the Banks (defined term below), additional time and expense associated with the Official Committee of General Unsecured Creditors' (the "Committee") efforts to attain approval of a non-consensual plan of reorganization, **and** the speculative recoveries associated with the proposed runoff plan submitted by the Committee, general unsecured creditors' recovery, if any, would likely come from undetermined Chapter 5

---

[1] Key constituents refers to the Debtor, Banks (defined below), the Committee (defined below), Wheelers (defined below), and Wheeler Real Estate.

Leiderman Shelomith Alexander + Somodevilla, PLLC
Miami | Fort Lauderdale

and other claims (which require further investigation). As such, Debtor believes that the best method to generate any recovery to the general unsecured creditors is in Chapter 7, under the oversight of a Chapter 7 Trustee, in the event that a consensual resolution to the issues cannot be attained.

### Background

*Underlying Causes for the Commencement of the Instant Bankruptcy Case*

1. On March 23, 2018 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor is operating its business and managing its affairs as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108. No trustee has been appointed in this case.

2. The Debtor is family-owned and operated successfully for over 34 years. Prior to the Petition Date it was in the business of providing financing by purchasing and servicing retail installment sales contracts (consumer vehicle loans) (the "Loan Portfolio") primarily originated at first and second-tiered franchised automobile dealerships and select independent used car dealerships located throughout Florida.

3. The Debtor's primary creditors are Bank of America, N.A. and BMO Harris Bank, N.A. (collectively, "BOA" or the "Banks").

4. The Debtor filed this case following declaration by the Banks of a non-payment default. Thereafter, the Banks demanded that Alvin Wheeler, who together with David and Scott Wheeler, each officers of the Debtor (and who funded unsecured claims in excess of $10 million), pay the Banks approximately $2.5 million to cure that non-payment default. The Banks did not apply said $2.5 million payment in a manner the Debtor understood it would, and threatened to exercise its state law remedies, as a result of its continuing non-payment default. Accordingly, to preserve enterprise value, the Debtor filed the instant bankruptcy case.

*Cancelled Auction, Filing of Committee's Plan, Stay Relief, and Impasse*

5.  Since commencement of the bankruptcy case through November/December 2018 the Debtor, Committee and Bank engaged in negotiations over the continued use of cash collateral, while attempting to reach a consensual plan of reorganization.

6.  At the insistence of the Banks and the Committee, on January 9, 2019 and January 16, 2019, the Debtor conducted an auction sale of its Loan Portfolio, in which the named winner was Westlake Services, LLC [ECF # 369]. Following conclusion of the auction and the scheduling of the hearing to approve the sale of the Loan Portfolio to the winning bidder, the Committee filed an objection, as well as propounded onerous discovery on the Banks and the Debtor. In response, the Banks, not wishing to fund their own fees and expenses, along with the estate professionals' fees and expenses through use of cash collateral, as well as the resulting loss of recovery on account of their secured debt, left the Debtor with no option other than withdrawal of its motion to approve the auction sale.

7.  On February 22, 2019, the Banks filed their Motion for Relief from the Automatic Stay ("Stay Relief Motion") [ECF #409], seeking the Court's permission to exercise any and all of the Banks' non-bankruptcy contractual and legal rights and remedies with respect to its collateral – the Loan Portfolio.

8.  In the interim, Debtor's counsel has been in consistent communication with counsels for all the main case constituents, including counsels for the Banks, the Committee, and the Wheelers (Alvin Wheeler, David Wheeler, and Scott Wheeler, the Debtor's officers, and holders of $10 million in unsecured debt), as well as Wheeler Real Estate (the Debtor's landlord), to pursue a consensual resolution to this Chapter 11 case. Despite these efforts, the chasm does not appear to be narrowing. The parties do not appear to be headed toward a singular path that would likely result in a consensual resolution of this case.

9. Since commencement of the auction, **more than two months ago**, the Debtor has pursued a consensual resolution to this Chapter 11 case. However, none of the parties have been able to achieve a consensus, as follows:

   a. The Banks are seeking modification to the automatic stay to enforce state law rights and remedies, pursuant to its loan agreements with the Debtor.

   b. On March 11, 2019, the Committee filed its own plan of liquidation (the "Committee's Plan") [ECF # 435] that relies on **speculative** liquidation assumptions, and without regard for the fact that the Banks and the Committee (and the Debtor) cannot even agree on the amount of the Banks' claim. This speculative plan will further draw strong objections and will require **significant** discovery and days of evidentiary hearings.

   c. Wheeler Real Estate has filed a motion seeking immediate payment of its administrative claim in the amount of $221,000 [ECF # 427]. In response the Committee seeks **massive** expedited discovery that will take **weeks if not months to complete**.

   d. The cash collateral budget proposed by the Banks does not provide payment of any estate professionals to pursue discovery, contested motions, or contested confirmation hearings. The Banks have advised the Debtor that no such agreed funding will be forthcoming at the present time.

10. Given the current circumstances of this case, as described above, the Debtor, in an effort to preserve and maximize the loan portfolio and acting within its fiduciary responsibilities to all parties, has advised the Court [see ECF # 416] and the Banks of its consent to the Stay Relief Motion. The Wheelers and the Debtor will cooperate and coordinate with the Banks in an orderly transition of the loan portfolio to the Banks and/or its designee following entry of an order granting the Stay Relief Motion.

11. The Debtor has reviewed the Committee's proposed plan that based on a runoff concept. Under an **optimistic scenario** (one in which every unrealistic assumption the plan relies upon materializes)**,** the projected runoff of the Loan Portfolio would produce value to the unsecured creditors above and beyond the payoff of the outstanding indebtedness to the Banks, **but** many years in the future. However, upon information and belief, the Committee's Plan requires the Banks' consent. Regardless, the Committee's Plan is speculative at best, and is

otherwise unlikely to ever amount to any recovery to the unsecured creditors. Instead, the Committee's plan appears to be founded on recoveries arising from Chapter 5 claims. However, these claims are not yet determined.

12. Indeed, since the Committee's plan is speculative and requires a global resolution to the issues, and in the in the absence of such resolution, the Debtor believes the sole source of recoveries for the unsecured creditors may be Chapter 5 (and other) claims, to the extent viable, against insiders and/or other third parties, which are better suited to be handled by an independent Chapter 7 Trustee in a Chapter 7 case.

### Conversion of the Case to Chapter 7 is Appropriate Should there be No Consensus by the Next Hearing

13. Given the foregoing, in the absence of a consensus, the Debtor requests that the Court convert this proceeding to a case under Chapter 7 of the United States Bankruptcy Code.

14. Pursuant to 11 U.S.C. § 1112(a) "[t]he debtor may convert a case under this chapter to a case under chapter 7 of this title unless – (1) the debtor is not a debtor in possession; (2) the case originally was commenced as an involuntary case under this chapter; or (3) the case was converted to a case under this chapter other than on the debtor's request".

15. As noted above, none of these exceptions apply to the Debtor. Furthermore, the Debtor is eligible to be a debtor under Chapter 7. See 11 U.S.C. § 1112(f).

16. "Under 11 U.S.C. § 1112(a) a debtor has an **absolute right** [emphasis added] to convert a case under chapter 11 to a case under chapter 7…" *In re Marill Alarm Sys., Inc.*, 100 B.R. 606, 607 (Bankr. S.D. Fla. 1989). Accordingly, the Debtor may convert this case to a case under Chapter 7.

17. Several weeks have now passed since the last hearing(s) in this case, and the parties have had ample time since then to move towards a consensual resolution and exit from this Chapter 11 proceeding. However, no tangible progress has been made in that regard.

18. Without a global agreement among the major case constituents (the Debtor, Banks, Committee, the Wheelers and Wheeler Real Estate) the best alternative is to appoint an independent Chapter 7 trustee to determine how this case concludes.

19. As such, the Debtor respectfully requests that the Court enter an order converting this case to a case under Chapter 7, unless a consensual agreement is reached by the parties prior to the date of the hearings on April 9, 2019.

WHEREFORE, the Debtor respectfully requests the Court (a) grant the Motion; (b) convert the instant case to Chapter 7, in the absence of a consensual agreement reached by the parties; and (c) any other further relief the Court deems necessary and proper under the circumstances.

Dated: April 2, 2019

LEIDERMAN SHELOMITH ALEXANDER
+ SOMODEVILLA, PLLC
Counsel for the Debtor
2699 Stirling Road, Suite C401
Ft. Lauderdale, Florida 33312
Telephone: (954) 920-5355
Facsimile: (954) 920-5371

By: _____/s/_____
ZACH SHELOMITH
Florida Bar No. 122548
zbs@lsaslaw.com
IDO J. ALEXANDER
Florida Bar No. 51892
ija@lsaslaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing motion was served on April 2, 2019, to all parties on the list to receive e-mail notice/service for this case, via the Notice of Electronic Filing (which is incorporated herein by reference).

By:_____/s/_____
Ido J. Alexander