**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
**www.flsb.uscourts.gov**

In re:                                                    Case No.:  18-13389-RBR

SUMMIT FINANCIAL CORP.,                  Chapter 11

        Debtor.
_____/

## EXPEDITED MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR APPOINTMENT OF CHAPTER 11 TRUSTEE (Expedited Hearing on April 9, 2019 Requested)

The Official Committee of Unsecured Creditors of the Debtor, Summit Financial Corp. (the

"Committee"), by and through its undersigned counsel, and pursuant to 11 U.S.C. § 1104(a), requests

that the Court enter an Order appointing a <u>Chapter 11</u> Trustee,  and as grounds therefor, shows this

Court as follows:

### I.        PRELIMINARY STATEMENT

By way of this Motion, the Committee seeks the appointment of a Chapter 11 Trustee.  The

Committee seeks this relief after it has become abundantly clear that (i) given that the officers and

directors of the Debtor, Summit Financial Corp. (the "Debtor" or "Summit") engaged in misconduct

both prior to and subsequent to the Debtor's bankruptcy filing, such individuals cannot be entrusted

with the fiduciary responsibility to maximize recovery for unsecured creditors, and (ii) an

independent fiduciary is required to make his or her own determination on the best course of action

with respect to whether this case should remain in Chapter 11 or be converted to Chapter 7, and the

disposition of the Debtor's Loan Portfolio.  Neither of these tasks can or should remain in the hands

of the Debtor and its principals, Alvin Wheeler, David Wheeler and Scott Wheeler (the "Wheelers"),

given the substantial conflicts of interest which exist between what is in the best interests of the

Debtor's estate and creditors and what the Wheelers have made clear is their number one priority and interest – obtaining unwarranted and inappropriate releases from the Debtor in their favor and in favor of family members.  As the Wheelers have made clear their intention to use the Debtor to advance their parochial interests to the substantial detriment of creditors and are willing to harm creditor interests if they do not get their way, the appointment of an independent fiduciary is in the best interest of the Debtor's estate and creditors.

## II.  BACKGROUND

1.      Debtor Summit Financial Corp. is a Florida corporation that was formed in or about 1984 and was and remained as of Summit's bankruptcy filing on March 23, 2018 (the "Bankruptcy Petition Date"), in the business of purchasing and servicing automobile retail installment sales contracts originated at franchised automobile dealerships and select independent used car dealerships located in the State of Florida.

2.      The Debtor financed its operations through secured credit facilities. The most recent such facility, in the principal amount of up to $105 million, was amended and restated on February 14, 2017 pursuant to a Third Amended and Restated Loan and Security Agreement between the Debtor and Bank of America, N.A. ("Bank of America") as administrative and collateral agent for itself and BMO Harris Bank, N.A. ("BMO Harris" and collectively with Bank of America, "Bank of America").

3.      As of the Bankruptcy Petition Date, Bank of America possessed a security interest in substantially all of Summit's business assets, including all monies due and owing or received from collections upon the automobile retail installment contacts purchased by the Debtor (the "Loan Portfolio").  Bank of America also is in possession of certain personal guaranties executed in its favor by each of the Wheelers.

2

4.     Commencing in the early 2000's and continuing through the Petition Date of March 23, 2018, the Wheelers solicited financing for the Debtor through unsecured loans (the "Unsecured Loans") provided by private third party lenders (the "Private Lenders"). These Private Lenders were ostensibly third parties who were friends and family of the Wheeler family and specifically knew the Wheelers personally through social or professional relationships or in one case, upon information and belief, even worked as a housekeeper for one of the Wheelers.

5.     The Wheelers memorialized the Unsecured Loans solicited from and provided by these Private Lenders by way of an "Unsecured Subordinated Promissory Note" (the "Subordinated Note(s)") issued by the Debtor in favor of these Private Lenders.  The typical Subordinated Note provided for (i) monthly interest payments, in arrears, at a rate of 12 percent per annum, and (ii) a maturity date of two (2) years from issuance, at which time all principal and any unpaid interest would be due and payable.[1]

6.     Although the Subordinated Notes issued by the Debtor the Private Lenders qualified as "securities" which were not exempt from registration requirements under both federal and state securities laws, Defendants failed to comply with such registration requirements in violation of Section 12(d)(1) of the Securities Act of 1933 and Fla. Stat. § 517.07. Notwithstanding, the Debtor and the Wheelers continued to raise funds from such Private Lenders and made false representations to some Private Lenders that the Subordinated Notes would be repaid before repayment of any monies due and owing to the Wheelers or their immediate family members.

7.     In fact, from March 22, 2014 through the Petition Date, the Debtor's financial records reflect that the Debtor distributed, in the aggregate, approximately $11 million to the Wheelers, which distributions were booked either as wages and expense reimbursement, interest repayments or

---

[1] There appear to be approximately four notes that do have different terms and date certain maturity dates.

3

equity distributions. The Wheelers and their family members or related trusts and entities received further transfers totaling approximately $1.7 million in the one year period preceding the Petition Date.

8.      In many, if not most cases, the Unsecured Loans made by the Private Lenders matured without the Debtor either paying all principal and interest due under such Unsecured Loans or formally renewing and extending such Unsecured Loans. Rather, the Debtor simply would continue to pay the monthly interest payments provided for under the matured Subordinated Notes without regard to any principal reduction or satisfaction, or the demand nature of these matured Subordinated Notes.

9.      Tellingly, upon information and belief, in order to satisfy the requirement in Bank of America's Third Amended and Restated Loan and Security Agreement that any Subordinated Debt be on "terms and conditions satisfactory" to Bank of America, the Debtor misrepresented to both Bank of America and the Debtor's own auditor, Crowe Horwath, the true maturity dates of many of the Subordinated Notes.[2] In fact, in order to show that the Debtor's subordinated debt matured well after the actual maturity dates on the issued Subordinated Notes, the Wheelers and the Debtor created "doctored" notes which reflected issuance dates which did not correspond to actual notes issued to the Private Lenders, and attached as a second page to such notes, what appears to be a duplicate copy of the same signature page signed by David Wheeler.

10.      By example only, creditor Sydelle Lazar loaned the principal amount of $600,000 to the Debtor, which was memorialized in a Subordinated Note dated July 1, 2013 and attached to creditor Lazar's proof of claim 41-1 filed with the Bankruptcy Court. A true and correct copy of this

---

[2] The Debtor's 2014 and 2015 audited Financial Statement, issued in April, 2016, reflects approximately $14.5 million in non-related party subordinated debt maturing in 2017. Yet, the audited Financial Statement for 2016, issued in 2017, reflects only $550,000 in subordinated non-related party debt maturing in 2017 and $17,990,853 maturing in 2018. True and correct copies of relevant excerpts from these Financial Statements are attached as Exhibits 1 and 2, respectively.

4

claim and the July 1, 2013 Note are attached to this Complaint as Exhibit 3. Yet, the Subordinated Note which the Debtor provided to Bank of America and thereafter to the Committee in this case was dated December 31, 2016. A true and correct copy of this "doctored" Subordinated Note is attached hereto as Exhibit 4.

11.     By example only, in 2013, creditor Robert Hendler IRA loaned through the custodian for his IRA, Morgan Stanley, the sum of $700,000 to Summit, which was memorialized in a Subordinated Note dated November 1, 2013. When Hendler changed custodian for his IRA to Pensco Trust, he requested a new Subordinated Note to reflect such new custodian and received a new Subordinated Note dated July 7, 2016 in the amount of $700,000, signed by Alvin Wheeler. True and correct copies of the foregoing Subordinated Notes are attached to Hendler's proof of claim 45-1, which is attached to this Complaint as Exhibit 5. Yet, notwithstanding the issuance of a new Subordinated Note to creditor Hendler's IRA in July, 2016, the Debtor created a "doctored" Subordinated Note dated December 31, 2016 in the name of Hendler's IRA which is attached to this Complaint as Exhibit 6.

12.     The foregoing examples are but two of several instances where the Debtor and the Wheelers created Subordinated Notes dated December 31, 2016, without knowledge of the original noteholders or valid execution. Moreover, a cursory comparison of the various signature pages of these December 31, 2016 Notes, reveals the same exact signature of David Wheeler, suggesting that Summit and the Wheelers affixed a duplicate copy as the second page of each "doctored" Note.

13.     Upon information and belief, the Debtor and the Wheelers authorized and/or perpetrated the creation of "doctored" Subordinated Notes, dated December 31, 2016 and thereafter, as well as misrepresented in the Debtor's 2016 Financial Statement and 2016 tax return the actual maturity of the Debtor's subordinated debt, for the purpose of causing Bank of America to continue

to underwrite its $105 million credit facility and enter into a Third Amended and Restated Loan and Security Agreement in February, 2017 with the Debtor, as well as avoid the undeniable fact that millions of dollars in unsecured debt had matured and was due and owing. In addition, the Debtor provided these same "doctored" Notes to the Committee's financial consultants, Kapila/Mukamal, along with a schedule that corresponded to the maturity dates of the "doctored" Notes.

14.    On March 23, 2018, after the Bank of America credit facility had matured and being unable to either repay the credit facility or obtain refinancing, the Debtor filed for relief under Chapter 11 of the Bankruptcy Code. As of the Petition Date and as a result of the pre-bankruptcy failure of the Debtor and the Wheelers to satisfy the Unsecured Loans made by the Private Lenders upon maturity, a substantial portion of these Private Loans remained unpaid when the Debtor filed for protection under Chapter 11. In its Schedule F filed with the Bankruptcy Court on April 20, 2018, the Debtor identified approximately $17,845,277 being owed to 43 Private Lenders (*non-insider) as of the Petition Date. In addition to such "scheduled claims," Private Lenders have filed 37 proofs of claim (*excluding duplicates) in the aggregate amount of approximately $15,005,277.

15.    On April 20, 2018, the acting United States Trustee for Region 21 appointed the Committee.

16.    During the course of this Chapter 11 case, the Debtor's primary assets has consisted of its Loan Portfolio, minimal cash and potential litigation claims, including those claims that may potentially exist as against the Wheelers. Through the filing of this Motion, the Debtor has not filed a single adversary proceeding to avoid or recover any transfers.

17.    On November 21, 2018 and November 30, 2018, respectively, the Debtor did, however, file its first amended plan [ECF 301] and first amended disclosure statement [ECF 328]. Fundamentally, the first amended plan filed by the Debtor, among other provisions, provided for the

6

Debtor and its estate to release what are defined as the "Released Claims" against, among other "Released Parties," " (a) the Debtor, its shareholders, officers, directors, employees, affiliates, and advisors, and employed professionals of the Estate; (b) the Guarantors,…" [DE No. 301]. "Released Claims" were defined, in part, as: "any and all Claims and Causes of Action, including any derivative claims, asserted or assertible on behalf of the Debtor or the Estate whether known or unknown, forseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, that the Debtor or the Estate would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the restructuring, the Case, the purchase, sale or rescission of the purchase or sale of any security of the Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any such Released Party." The first amended plan also provided that Bank of America, defined in the plan as the "ABL Lenders" would release claims, if any, against the "Guarantors" of the in excess of $105 million credit facility provided to the Debtor by such ABL Lenders. Accordingly, without any benefit flowing to the Debtor or more importantly, unsecured creditors, in this case, and without any analysis being provided in the amended disclosure statement, the Debtor's plan specifically proposed that recipients of $11 million dollars in transfers from the Debtor receive blanket releases from the Debtor.

18.    As noted, although its investigation and analysis is not complete, the Committee's court approved financial advisors, Kapila/Mukamal, has already identified, based on the Debtor's financial records: (i) close to $11 million in disbursements from the Debtor to Alvin Wheeler, David Wheeler and Scott Wheeler, described as shareholder distributions, payroll, loan repayments, interest repayments, and shareholder expense reimbursements during the four years preceding the Petition

Date; (ii) in excess of $1.7 million in disbursements to Wheeler family members and related trusts in the one year preceding the Petition Date, and (iii) several hundred thousand, if not in excess of one million dollars in disbursements to third parties or affiliated Wheeler entities to or for the benefit of the Wheelers and family members or entities.

19.     The Committee believes, as would any independent fiduciary, that some or all of these transfers might be subject to avoidance and recovery under Sections 547, 548 and 550 of the Bankruptcy Code and Fla. Stat. §§ 726.105(1)(b) and 726.106(1).  At a minimum, even if the avoidance and recovery of these transfers are not clear cut, the Committee submits that these transfers and other actions taken by the Wheelers require further analysis and investigation, and the notion that it is somehow acceptable or appropriate that the Debtor, controlled and managed by the Wheelers, should provide blanket releases to the Wheelers, their family, and Wheeler owned entities would be a gross breach of fiduciary duty and antithetical to the purposes of bankruptcy.

20.     Counsel for the Wheelers has advised that all disbursements in favor or for the benefit of the Wheelers and their family or related entities, are legitimate and would not be subject to avoidance or constitute a basis for other claims.  Indeed, both the Debtor and the Wheelers, not only in the Debtor's filed amended plan but in continuous communications concerning the status of this Chapter 11 case have made it clear that premature release of any Debtor claims against the Wheelers and related family members is the quid pro quo for the Debtor and the Wheelers supporting any actions taken in this case which would provide unsecured creditors with the opportunity for a significant distribution based on collections from the Loan Portfolio.

21.     The events which transpired on March 12, 2019 and thereafter only serve to re-enforce the inherent conflict of interest which the Wheelers have, as management of the Debtor, and the inability of the Debtor under current management, to make decisions for the benefit of creditors

as opposed to the Wheelers. Addressed with the Court at the March 12, 2019 hearing, was a Committee filed plan which would potentially provide for a significant distribution to unsecured creditors based upon a runoff of the Loan Portfolio, and Bank of America's stay relief motion which the Bank expressly advised it would defer proceeding upon until the Committee's plan was ready for confirmation. Despite the fact that a runoff of the Loan Portfolio through a confirmed plan is the **only** manner in which unsecured creditors could obtain value from the Loan Portfolio, while counsel for the Debtor sat silent after filing a response to Bank of America's stay relief motion which supported conversion and stay relief, counsel for the Wheelers argued that stay relief and conversion to Chapter 7 were preferable to his clients being sued by a plan fiduciary.

22.    Thus, in what can only be described as a desperate effort to "blackmail" the Committee to support releases for the Wheelers, both the Wheelers and the Debtor which they controlled, advocated for a result in this case which would deny over $18 million of non-insider unsecured creditors (and perhaps even other Wheeler family members and trusts) the opportunity to obtain value from the Loan Portfolio.

23.    Since the March 12, 2019, hearing before the Court, in communications between representatives of the Wheelers and Committee, the Wheelers double downed on their position that the Debtor will seek conversion to Chapter 7 and the resulting loss of unsecured creditors receiving any value from the Loan Portfolio absent the Wheelers receiving releases from the Debtor. Given that the Wheelers and family members have themselves filed claims against the Debtor's estate, the threat of conversion to Chapter 7 and consent to Bank of America's stay relief motion can only be explained as the Wheelers being willing to harm themselves along with all other unsecured creditors if they do not get their way.

24.    The Debtor, controlled by the Wheelers, has now filed a motion to convert this case to

Chapter 7 absent a "consensual resolution." [ECF 470]. Unfortunately, the consensual resolution which the Debtor refers to is one in which the Wheelers will receive releases from the Debtor, a result which neither the Committee nor the Committee believes, the Court, can condone.

25.    Given the Wheelers' pre-petition dishonesty and their breach of fiduciary duty once this Chapter 11 case was filed, there is an immediate need for an independent fiduciary to make decisions on behalf of the Debtor, **prior to any consideration of the Debtor's motion to convert**, which are not motivated by pure self-interest on the part of the Wheelers. The appointment of a Chapter 11 Trustee is both necessary and warranted, and will ensure that the Debtor's decision to convert, if at all, is made because it is in the best interests of the estate and creditors.

## III. ARGUMENT

### A.    The Legal Standard for the Appointment of a Trustee.

Section 1104(a) of the Bankruptcy Code provides that on request of a party in interest, a chapter 11 trustee shall be appointed:

> (1)    for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or
>
> (2)    if such appointment is in the interest of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or
>
> (3)    if grounds exist to convert or dismiss the case under section 1112, but the court determines that the appointment of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1104(a).

The use of the word "shall" in the statute requires bankruptcy courts to appoint a trustee if any of the three sub elements of 11 U.S.C. § 1104(a) are established. *In re Oklahoma Refining Co.,*

838 F.2d 1133 (10th Cir. 1988); *In re Rivermeadows Assocs.,* 185 B.R. 615, 617 (Bankr. D. Wyo. 1995) ("The appointment [of a trustee] is mandatory under §1104(a)(1) if a court finds cause, including 'fraud, dishonesty, incompetence, or gross mismanagement' ...") (internal citation omitted); *In re Sundale, Ltd.,* 400 B.R. 890, 900 (Bankr. S.D. Fla. 2009) ("The use of the word 'shall' leaves no discretion in appointment once cause is found."). Importantly, Section 1104(a) of the Bankruptcy Code is written in the disjunctive, which means proof of any one of the elements is sufficient to satisfy the requirement. *See In re Hardesty,* 190 B.R. 653, 655 (Bankr. D. Kan. 1995).

The moving party must show that cause for appointment of a chapter 11 trustee exists by clear and convincing evidence. *In re Royster Co.,* 145 B.R. 88, 90 (Bankr. M.D. Fla. 1992); *see also In re Sundale, Ltd.,* 400 B.R. at 899; *In re Westek Georgia, LLC,* 2004 Bankr. LEXIS 643 (Bankr. M.D. Ga. May 14, 2004) (citing cases). [3]

While some courts have noted that there is a presumption that current management is normally best suited to orchestrate the chapter 11 process, in the appropriate case, courts have recognized that the appointment of a trustee is critical to preserve the integrity of the bankruptcy process and to insure that the interests of creditors are served. *In re Nartron Corp.,* 330 B.R. 573, 591 (Bankr. W.D. Mich. 2005). Indeed, any presumption in favor of allowing a debtor to remain in possession and control of its affairs vanishes completely when management, as is the case here, does not comply with their fiduciary duties of care and loyalty. *See Commodity Futures Trading Comm'n v. Weintraub,* 471 U.S. 343, 355 (1985).

## B.    "Cause" Exists for Appointment of a Chapter 11 Trustee Under 11 U.S.C. § 1104(a)(1).

The Bankruptcy Code provides that a chapter 11 trustee shall be appointed **"for cause,**

---

[3] Other courts have a reduced standard of proof for the appointment of a chapter 11 trustee, requiring only a showing by a "preponderance of the evidence". *See Tradex Corp. v. Morse,* 339 B.R. 823, (D. Mass. 2006).

**including fraud, dishonesty, incompetence or gross mismanagement of the affairs of the debtor**

**by current management, either before or after the commencement of the case, or similar cause**

**. . ."** 11 U.S.C. §1104 (a)(1) (emphasis added). "It isn't necessary to carefully delineate whether

the 'cause' consists of fraud or dishonesty as opposed to incompetence or gross mismanagement.

Obviously, the result is the same since the finding of any one of these causes mandates [the

appointment of a trustee]." *In re St. Louis Globe-Democrat, Inc.,* 63 B.R. 131, 138 (Bankr. E.D.

Mo. 1985) (emphasis added). *See also In re Rivermeadows Assocs.,* 185 B.R. at 617 ("The

appointment [of a trustee] is mandatory under §1104(a)(1) if a court finds cause, including 'fraud,

dishonesty, incompetence, or gross mismanagement' ...") (internal citation omitted).

Moreover, Section 1104(a)(1) is not meant to contain an exhaustive list of causes.

*Marvel Entertainment Group, Inc.,* 140 F.3d 463, 472 (3d. Cir. 1998).  A number of factors may

be also considered in determining whether cause exists to warrant the appointment of a chapter 11

trustee. These additional factors include "the overall management of the debtor, both past and

present; the trustworthiness of the debtor's management; the nature of and availability of financial

records; the movement of funds between the debtor and related entities; the ability of management to

act as a fiduciary for the estate; and pragmatic considerations such as cost." *Rivermeadows*

*Assocs.,* 185 B.R. at 617 (emphasis added). *See also In re Microwave Products of America, Inc.,*

102 B.R. 666, 671 (Bankr. W.D. Tenn. 1989) (the bankruptcy court must look at the debtor's pre-

petition as well as post-petition conduct in determining the necessity for a trustee). *See also In re*

*Breland*, 570 B.R. 643, 657 (Bankr. S.D. Ala. 2017) (other considerations include "(1) materiality of

the misconduct; (2) evenhandedness or lack of same in dealings with insiders or affiliated entities

vis-a-vis other creditors or customers; (3) the existence of pre-petition voidable preferences or

fraudulent transfers; (4) unwillingness or inability of management to pursue estate causes of action;

(5) conflicts of interest on the part of management interfering with [the debtor's] ability to fulfill fiduciary duties to the debtor….").

Consideration of all of the factors which the courts have considered in weighing the appointment of a Chapter 11 trustee militates in favor of the appointment of a chapter 11 trustee for the Debtor. Pre-petition, the Debtor and its management, the Wheelers, created or authorized the creation of "doctored" promissory notes which can only be rationalized as motivated by their desire to mislead Bank of America, their auditors, and creditors who received copies of financial statements into believing that all or substantially all of the Unsecured Loans which remained unpaid as of the Petition Date were not due and payable until at least late 2018. In the meantime, the Debtor and the Wheelers continued to take millions of dollars directly from the coffers of the Debtor and/or use the Debtor's funds to pay for dubious expenses such as fitness club memberships, personal trainers, drycleaners, vacations, groceries, dining out, tanning clubs, medical bills, limousine service, and more. Particularly egregious expenses include credit card expenses that were recorded as "business expenses" but were incurred by the wives of two of the Wheelers on business credit cards accounts of the Debtor in which the wives had user cards in their name, despite neither wife being employed by the Debtor.

This case is now one year old. Yet, in the one year since the case was filed, the Debtor has not filed a single adversary proceeding seeking to recover potentially in excess of one million dollars in preferential transfers or millions of dollars in potentially fraudulent transfers, most of which flowed to the Wheelers and family members. During this same period, the Debtor strenuously objected to granting the Committee derivative standing to investigate and bring the very claims which the Debtor and its management chose not to investigate and pursue.

In seeking broad releases of any claims which the Debtor possesses against the Wheelers,

in both its only filed plan and throughout the course of this case, as well as being willing to destroy any hope that unsecured creditors have in obtaining value from the Loan Portfolio if they could not obtain such releases, the Wheelers have demonstrated their utter lack of fiduciary responsibility to the estate and creditors. Ample "cause" exists for the appointment of a Chapter 11 trustee.

## C.     Appointment of a Trustee is in the Best Interest of Creditors.

While the Committee submits that ample cause exists for appointment of a chapter 11 trustee under 11 U.S.C. § 1104(a)(1), appointment of a chapter 11 trustee is independently warranted under 11 U.S.C. §1104(a)(2). Section 1104(a)(2) allows for appointment of a trustee "if such appointment is in the interest of creditors" even if "cause" under 11 U.S.C. § 1104(a)(1) has not been shown.

In considering whether appointment of a trustee is in the creditors' best interests, courts have acknowledged that "creditors are the best judge of their own best interests." *In re Camden Ordnance Mfg. Co. of Ark., Inc.,* 245 B.R. 794, 802 (E.D. Pa. 2000).   Factors which justify appointment of a trustee under 11 U.S.C. § 1104(a)(2) are highly diverse and reflect the practical reality that a trustee is needed to manage the debtor's affairs. *In re Nartron,* 330 B.R. at 592. In cases where conflict or acrimony exists between the debtor in possession and its creditors, courts have often found appointment of a chapter 11 trustee to be appropriate. *See Marvel Entertainment Group.,* 140 F.3d at 473 (holding that a chapter 11 trustee should be appointed where there is "deep-seeded conflict and animosity" between the debtor and its creditors and the creditors have no confidence in the debtor's ability to act as a fiduciary).

In addition, a creditor's loss of confidence in a debtor's ability to manage and reorganize its affairs is also grounds for the appointment of a trustee. *See In re Ionosphere Clubs, Inc.,* 113 B.R. 164, 170 (Bankr. S.D.N.Y. 1990) (where a debtor was unable to make operating projections with a

longevity of more than several months and suffered enormous losses, creditors lost confidence and the appointment of a trustee was warranted); *In re Cardinal Indus., Inc.,* 109 B.R. 755, 767 (Bankr. S.D. Ohio 1990) (the court appointed a trustee where creditors "lost faith in the Debtors' intentions and abilities to reorganize their affairs"); *Marvel Entertainment Group*, 140 F.3d at 474 (bickering between parties caused creditors to lose confidence in debtor's ability to reorganize, necessitating the appointment of a Chapter 11 trustee).

It is the considered opinion of the Committee in this case, representing the interests of all unsecured creditors, that present management of the Debtor, the Wheelers, are not only incapable of acting in the best interests of creditors but have demonstrated their willingness to harm such creditors as a means to extract the releases which they seek. Moreover, present management cannot be trusted to act as a good faith partner with the Committee and Bank to present and move forward on a confirmable plan which benefits all creditors. Accordingly, it is in the best interest of creditors that a Chapter 11 trustee be appointed, who can make an independent analysis and decision as to whether a Chapter 11 plan is feasible or this case should be converted to Chapter 7.

**D.      Appointment of a Chapter 11 Trustee is Appropriate Under Section 1104(a)(3)**

The Bankruptcy Abuse and Consumer Prevention Act added a third prong for the Court to appoint a chapter 11 trustee under Section 1104(a)(3). The added provision provides that the court shall appoint a trustee "if grounds exist to convert or dismiss the case under section 1112, but the court determines that the appointment of a trustee or an examiner is in the best interests of creditors and the estate". 11 U.S.C. §1104(a)(3).

The Debtor and the Wheelers have previously argued that this Chapter 11 case should be converted to Chapter 7. This Court has even questioned why conversion of this case to Chapter 7 and the appointment of a Chapter 7 trustee would not be a more appropriate course of action in this

case.  The Committee submits that conversion would deny unsecured creditors with the opportunity to obtain value from the Loan Portfolio through a runoff which Bank of America is willing to support.  As a plan fiduciary would still be able to bring any appropriate litigation claims, the appointment of a Chapter 11 trustee, who could still convert to Chapter 7 after making an independent determination as to the viability of a joint Committee/Bank of America plan, would serve the interests of all creditors in this case and satisfy the requirements of Section 1104(1)(3) of the Bankruptcy Code.

## IV CONCLUSION

The appointment of an independent Chapter 11 trustee is not only warranted  pursuant to Section 1104(a) of the Bankruptcy Code, but provides the Court with the most appropriate means to obtain an objective assessment of the direction in which this case should proceed. While the Court may believe that conversion is appropriate, conversion of this case to Chapter 7 will deny unsecured creditors the opportunity to obtain value from the Loan Portfolio.  A Chapter 11 trustee would be able to provide the Court with an independent assessment of the viability of the Committee's plan and the benefits of leaving this case in Chapter 11.

Dated this 2nd day of April, 2019.

**RICE PUGATCH ROBINSON STORFER & COHEN, PLLC**
*Attorneys for the Official Committee of Unsecured Creditors*
101 NE Third Avenue, Suite 1800
Fort Lauderdale, Florida 33301
Telephone:  (954) 462-8000

By: */s/ Craig A. Pugatch*
　　**CRAIG A. PUGATCH**
　　Florida Bar No.: 653381
　　capugatch@rprslaw.com
　　**KENNETH B. ROBINSON**
　　Florida Bank No. 559474
　　krobinson@rprslaw.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served via the

Court's CM/ECF system upon all parties receiving service by this method; and by US Mail to all

parties on the attached service list dated this 2nd day of April, 2019.

/s/   Kenneth B. Robinson
**KENNETH B. ROBINSON**

Label Matrix for local noticing
113C-0
Case 18-13389-RBR
Southern District of Florida
Fort Lauderdale
Tue Apr  2 14:50:31 EDT 2019

Argo Partners
12 W 37th St 9th Fl
New York, NY 10018-7381

Bank of America, N.A., administrative and co
c/o Liebler, Gonzalez & Portuondo
44 W Flagler Street
Courthouse Tower - 25th Floor
Miami, FL 33130-1808

Broward County
c/o Records, Taxes & Treasury
Attn:  Bankruptcy Section
115 S. Andrews Ave # A-100
Ft. Lauderdale, FL 33301-1888

Bypass Trust Hasmukh & Chandravalli Patel 05
c/o Law Office of Brooks, Frank & De La
10 Northwest LeJeuen Road, Suite 620
miami, fl 33126-5473

Garber Revocable Trust
POB 1293
Wilson, NY 83014-1293

Jacaranda Professional Park Association, Inc
Frank Weinberg & Black, PL
c/o David Neal Stern, Esq.
1875 NW Corporate Blvd.
Suite 100
Boca Raton, FL 33431-8550

Robert Hendler IRA
21493 Linwood Court
Boca Raton, FL 33433-7436

ST CLOUD LLC
c/o Thompson PLLC
214 Brazilian Ave.
Suite 200
Palm Beach, FL 33480-4676

Summit Financial Corp.
100 NW 100 Ave
Plantation, FL 33324-7008

Wheeler Real Estate
Bradley S. Shraiberg
Shraiberg, Landau & Page, PA
2385 NW Executive Center Dr., #300
Boca Raton, FL 33431-8530

ALFRED L RINALDO JR
1754 TECHNOLOGY DRIVE
120 F
SAN JOSE, CA 95110-1308

ALS Resolvion
8927 J M Keynes Drive
Suite 360
Charlotte, NC 28262-8433

ALS Resolvion
POB 745182
Atlanta, GA 30374-5182

Access Point
1100 Cresent Green, Suite 109
Cary, NC 27518-8105

Access Point Inc
1100 Crescent Green
Suite 109
Cary, NC 27518-8105

Alabama Department of Revenue
P.O. Box 327320
Montgomery, AL 36132-7320

Almor Electric
11042 NW 18 Pl
Fort Lauderdale, FL 33322-3453

Alvin G. Wheeler
7156 Mandarin Dr
Boca Raton, FL 33433-7412

Alvin G. Wheeler
c/o Bradley S. Shraiberg
Shraiberg, Landau & Page, PA
2385 NW Executive Center Dr., #300
Boca Raton, FL 33431-8530

American Recovery Specialists
2296 W State Rd 84
Ft. Lauderdale, FL 33312-4838

American Recovery Specialists
POB 50077
Pompano Beach, FL 33074-0077

Ampleton Group Limited
Priors Court
Churchmeme Road
Sutton Courtenay, NR Abingdon
OX 14 4AQ UK

Andrew R. Weiss Trust Agreement
2124 NE 59 Place
Fort Lauderdale, FL 33308-2118

Argo Partners
12 West 37th Street, 9th Floor
New York, NY 10018-7381

Arlene G. Fried, as Trustee
17341 Bridleway Trail
Boca Raton, FL 33496-3210

BMO Harris Bank N.A.
c/o Sue Blazis
111 W. Monroe St.
Chicago, IL 60603-4095

BMO Harris Bank, N.A.
111 W Monroe St
Chicago, IL 60603-4095

BMW Capital, LP
974 Sand Iron Dr
Incline Village, NV 89451-8913

BYPASS TRUST HASMUKH & CHANDRAVALLI PAT
LAW OFFICES OF ALFRED L RINALDO JR
1754 TECHNOLOGY DRIVE
120 F
SAN JOSE, CA 95110-1308

Bank of America Corporate Card
PO Box 15796
Wilmington, DE 19886-5796

Bank of America, N.A.
335 Madison Ave 6 Fl
New York, NY 10017-4611

Bank of America, N.A.
c/o James S. Rankin, Jr., Esq.
Parker, Hudson, Rainer & Dobbs LLP
303 Peachtree St NE # 3600
Atlanta, GA 30308-3225

Bloodhound Recovery
2135 Highway 126
Bristol, TN 37620-1507

Bonial & Associates
Formery Buckley Madole
7501 Ester Blvd, #190
Box 224108
Irving, TX 75063-4025

Bonial & Associates, P.C.
PO Box 9013
Addison, Texas 75001-9013

Broward County
c/o Records, Taxes & Treasury
Attn:  Bankruptcy Section
115 S. Andrews Ave A-100
Ft Lauderdale, FL 33301-1888

Broward County Tax Collector
POB 29009
Fort Lauderdale, FL 33302-9009

CBS Marketing
17701 SW 18 St.
Hollywood, FL 33029-5233

COHEN-ST. CLOUD, LLC
c/o Thompson PLLC
214 Brazilian Ave., Suite 200
Palm Beach, FL 33480-4676

CT Corporation
3 University Plaza Dr
Suite 506
Hackensack, NJ 07601

Canteen
POB 50196
Los Angeles, CA 90074-0196

Carfax
16630 Collection Center Dr
Chicago, IL 60693-0166

Cedar
One Ravinia Dr.
#1700
Atlanta, GA 30346-2168

Cedar Document Technologies
One Ravinia Drive
Suite 1700
Atlanta, GA 30346-2168

Chandravalli H. Patel
560 Elm St # 204
San Carlos, CA 94070-2253

CitiBusiness Card
POB 9001037
Louisville, KY 40290-1037

City of Plantation Utlitilites
POB 31132
Tampa, FL 33631-3132

Crowe Horwath
POB 71570
Chicago, IL 60694-1570

Crowe Horwath LLP
POB 3697
Oak Brook, IL 60522-3697

David Wheeler
12345 NW 14 St
Fort Lauderdale, FL 33323-2400

David Wheeler
c/o Bradley S. Shraiberg
Shraiberg, Landau & Page, PA
2385 NW Executive Center Dr., #300
Boca Raton, FL 33431-8530

DealerTrack
POB 6129
Great Neck, NY 11024

Dealertrack
3400 New Hyde Park Road
New Hyde Park, NY 11042-1226

Defi
POB 675129
Detroit, MI 48267-0001

(p)DEFI SOLUTIONS
ATTN ACCOUNTING DEPT
1500 SOLANA BLVD STE 6400
WESTLAKE TX 76262-1703

Dennis Lee Scott
POB 173859
Denver, CO 80217-3859

Dennis Scott IRA
1249 Shepards Way
Yerington, NV 89447-9551

Digital Recognition Network
4150 International Plaza
Suite 800
Fort Worth, TX 76109-4875

Digital Recognition Network
POB 45591
San Francisco, CA 94145-0591

Dunbar
POB 64115
Baltimore, MD 21264-4115

Dunbar Armored Inc.
50 Schilling Road
Hunt Valley, MD 21031-1424

Elaine J. Beresh Trust
7449 Kendlewood
West Bloomfield, MI 48322-1090

Elissa Weiss
2124 NE 59 Place
Fort Lauderdale, FL 33308-2118

Engel, Hairston & Johanson
109 North 20 St.
POB 11405
Birmingham, AL 35202-1405

Equifax
POB 105835
Atlanta, GA 30348-5835

Experian
POB 881971
Los Angeles, CA 90088-1971

Experian, Inc.
c/o Joseph D. Frank
FrankGecker LLP
1327 W. Washington Boulevard
Suite 5G-H
Chicago, IL 60607-1912

Falcon International
28 Fentress Blvd
Daytona Beach, FL 32114

Falcon International
728 Fentress Blvd.
Daytona Beach, FL 32114-1241

FedEx Corporate Services Inc.
Module G, 3rd Floor
3965 Airways Blvd
Memphis, TN 38116-5017

Fedex
POB 660480
Dallas, TX 75266-0480

Fibernet
POB 744470
Atlanta, GA 30374-4470

Florida Power and Light
General Mail Facility
Miami, FL 33188-0001

Florida Security & Recovery
POB 21631
Saint Petersburg, FL 33742-1631

Force One Recovery
4920 SW 104 Ave.
Fort Lauderdale, FL 33328-3335

Force One Recovery
4920 SW 104 Avenue
Cooper City, FL 33328-3335

Freedom Automotive
6730 NW 83 Terrace
Pompano Beach, FL 33067-1017

George J. Spathis
Levenfeld Pearlstein, LLC
2 N. LaSalle St.
Suite 1300
Chicago, IL 60602-3709

Grant Printing
6109 Pembroke Rd.
Hollywood, FL 33023-2213

(c)GREGORY A THOMAS
L.A. PERKINS ESP
3839 NW 2ND AVE STE 200
BOCA RATON FL  33431-5862

Ilene Garber
POB 1293
Wilson, WY 83014-1293

Ilene Garber IRA Mainstar Trust
POB 1293
Wilson, WY 83014-1293

(p)ILES COOPER
900 GROVE STREET
ORWIGSBURG PA 17961-1522

Innovis
POB 535595
Pittsburgh, PA 15253-5595

Internal Revenue Service
Centralized Insolvency Operation
P.O. Box 7346
Philadelphia, PA 19101-7346

Jacaranda Professional Park
1800 Eller Drive, #212
Fort Lauderdale, FL 33316-4209

Jay Shechtman
2498 Poinciana Dr
Fort Lauderdale, FL 33327-1416

Jay Shechtman
811 SW 7th Avenue
Ft Lauderdale FL 33315

Jean Ruben
3330 Warrensville Center Rd Unit 605
Shaker Heights, OH 44122-3791

Jennifer Friend
9635 Waterview Way
Pompano Beach, FL 33076-2898

Jerome Hulak
5865/ 2 Forest Grove Dr
Boynton Beach, FL 33437-5826

Jones, Robin & Robin
315 Cedar Street
Post Office Box 888
Atlanta, GA 30301-0888

Judith Goldberg
2556 NE 26 Ave
Fort Lauderdale, FL 33305-1611

Kastenbaum Family Partnership L.P.
1 Gracie Square
New York, NY 10028-8001

Kenneth Gillman
132 Terrace Linda Place
Palm Beach Gardens, FL 33418-1742

Killgore, Pearlman, Semanie, Denius & Squire
P.O. Box 1913
Orlando, FL 32802-1913

Killgore, Pearlman, Semanie, Denius PA
POB 1913
Orlando, FL 32802-1913

Lola Pasahow Revocable Living Trust
17009 Ryton Lane
Boca Raton, FL 33496-3206

MAINSTAR TRUST / FBO SUDHIRA ARGADE IRA
6961 NW 66TH ST
PARKLAND, FL 33067-1476

Mainstar Trust IRA ACCTSudhira A. Argade
6961 NW 66 St
Pompano Beach, FL 33067-1476

Marsha Baker
3104 Hazelwood Ct
Bedford, TX 76021-2952

Martin M Shenkman Amended and Restated
Revocable Living Trust
1512 Palisade Ave, #10 N
Fort Lee, NJ 07024-5308

Matthew Gorstein
21 Rivers Point
Row 12H
Charleston, SC 29412-3612

Max Resnick
707 North Wells St
Unit 503
Chicago, IL 60654-3567

Megasys
500 City Parkway West
#350
Orange, CA 92868-2977

Megasys, Inc.
500 City Parkway West
Suite 350
Orange, CA 92868-2977

Michael Dittmore And Lynne Dittmore,
as Trustees Of Dittmore Living Trust
7629 E Tuckey Ln
Scottsdale, AZ 85250-4617

Microbilt
1640 Airport Rd.
Suite 115
Kennesaw, GA 30144-7038

Microbilt
POB 1473
Englewood, CO 80150-1473

Mindy Baroff
1225 Laurel Ct
Fort Lauderdale, FL 33326

NBS
7501 Ester Blvd, #190
Box #224585
Irving, TX 75063-4025

NEC
24189 Network Place
Chicago, IL 60673-1241

NEC
250 Pehle Avenue
Suite 704
Saddle Brook, NJ 07663-5837

(p)NEC FINANCIAL SERVICES
250 PEHLE AVE
STE 704
SADDLE BROOK NJ 07663-5888

National Bankruptcy Services, LLC
PO Box 9013
Addison, Texas 75001-9013

Norman Blomberg and Karen J. Blomberg
21260 Bellechasse Court
Boca Raton, FL 33433-7403

Norman M. Blomberg
21260 Bellechasse Ct
Boca Raton, FL 33433-7403

Office of the US Trustee
51 S.W. 1st Ave.
Suite 1204
Miami, FL 33130-1614

Parks & Thompson, Inc.
POB 160518
Hialeah, FL 33016-0009

Patricia Gillman
7001 Islegrove Pl
Boca Raton, FL 33433-7462

Patricia Gillman Revocable Trust - DTD 11/14
7001 Islegrove Place
Boca Raton, Florida 33433-7462

Paul Revere Life Insurance
5829 Collections Center Dr.
Chicago, IL 60693-0058

Pensco
POB 173859
Denver, CO 80217-3859

Pensco Custodian IRA Alvin G. Wheeler
7156 Mandarin Dr
Boca Raton, FL 33433-7412

Pensco Trust Company Custodian
FBA Warren R Wiebe Jr Trust IRA
974 Sand Iron Drive
Incline Village, NV 89451-8913

Pensco Trust Company LLC Custodian FBO Rober
c/o Beth A. Hendler, Esq.
500 E. Broward Blvd, #1710
Fort Lauderdale, FL 33394-3012

Pensco Trust Company LLC FBO Robert Hendler
c/o Beth A. Hendler, Esq.
500 E. Broward Blvd., #1710
Fort Lauderdale, FL 33394-3012

Pitney Bowes - Global
POB 371896
Pittsburgh, PA 15250-7896

Proshred Security
5217 NW 35 Ave.
Fort Lauderdale, FL 33309-3303

Proshred Security
803 Pressley Road
Unit 108
Charlotte, NC 28217-0971

Prudential
POB 856138
Louisville, KY 40285-6138

Rachel Weiss
2124 NE 59 Place
Fort Lauderdale, FL 33308-2118

Rajiv Gudka
101 Kingsbridge Ct
Roseville, CA 95747-5929

Recovery Database Network
1620 S. Stapley Dr.
Suite 232
Mesa, AZ 85204-6656

Recovery Database Network
1620 S. Stpley Dr.
#232
Mesa, AZ 85204-6656

Rex Meyers
16366 NW 13 St.
Hollywood, FL 33028-1307

Robert Baker
3104 Hazelwood Ct
Bedford, TX 76021-2952

Robert Hendler IRA
21493 Linwood Ct
Boca Raton, FL 33433-7436

Robert S. Cohen
950 Ponce De Leon
Apt 207
Boca Raton, FL 33432-7604

Robin L. Pekkala
42 Cayman Place
Palm Beach Gardens, FL 33418-8092

Robin Pekkala
42 Cayman Pl
Palm Beach Gardens, FL 33418-8092

Robyn Weiss Revocable Trust
2498 Poinciana Dr
Fort Lauderdale, FL 33327-1416

Robyn Weiss Revocable Trust
c/o Catherine D. Kretzschmar, Esq.
Akerman LLP
350 E. Las Olas Blvd., Suite 1600
Fort Lauderdale, FL 33301-4247

Ronni Wheeler
466 Stonemont Dr
Fort Lauderdale, FL 33326-3500

Rosalee Bogie-Ventura
174 Lake Evelyn Dr.
West Palm Beach, FL 33411-4134

RouteOne
16902 Collections Center Dr.
Chicago, IL 60693-0001

SHIL RAJIV GUDKA
LAW OFFICES OF ALFRED L RINALDO JR
1754 TECHNOLOGY DRIVE
120 F
SAN JOSE, CA 95110-1308

SUDHIRA ARGADE
6961 NW 66TH STREET
PARKLAND, FL 33067-1476

Sand Castle Field Services
165 Bishops Way
Suite 150
Brookfield, WI 53005-6244

Sand Castle Investments
165 Bishops Way
#150
Brookfield, WI 53005-6244

Sandra L. Cole Revocable Trust
6879 West Liseron
Boynton Beach, FL 33437-6475

Sapurstein & Bloch
9700 S. Dixie Hwy
#1000
Miami, FL 33156-2863

Sapurstein and Bloch, P.A.
9700 South Dixie Highway
Suite 1000
Miami, FL 33156-2863

Saul Gitomer
10036 Hardy Dr
Overland Park, KS 66212-3485

Scott Cooper
206-23 Richland Ave
Oakland Gardens, NY 11364-3228

Scott Wheeler
466 Stonemont Dr
Fort Lauderdale, FL 33326-3500

Scott Wheeler
c/o Bradley S. Shraiberg
Shraiberg, Landau & Page, PA
2385 NW Executive Center Dr., #300
Boca Raton, FL 33431-8530

Sharon Bogie
7407 NW 34 St
Fort Lauderdale, FL 33319-7103

Shell
POB 9001015
Fort Lauderdale, FL 33329

Sherry K. Seligson
10036 Hardy Drive
Overland Park, KS 66212-3485

Sherry Seligson TTEE DTD 4/19/96
10036 Hardy Dr
Overland Park, KS 66212-3485

Shil Gudka
101 Kingsbridge Ct
Roseville, CA 95747-5929

St Cloud LLC
129 Ponsbury Rd
Mount Pleasant, SC 29464-6603

Stanley Cohen
129 Ponsbury Rd
Mount Pleasant, SC 29464-6603

Storm Recovery
4313 SW 64 Ave
Davie, FL 33314-3435

Storm Recovery
POB 292375
Fort Lauderdale, FL 33329-2375

Sudhira A. Argade
6961 NW 66 St
Pompano Beach, FL 33067-1476

Sydelle Lazar
21438 Linwood Ct
Boca Raton, FL 33433-7436

Tag Agency of Pinellas
3050 Scherer Dr. N
#B
Saint Petersburg, FL 33716-1005

Tag Agency of Pinellas, Inc.
3050 Scherer Dr North
Suite B
St. Petersburg, FL 33716-1005

The Arlene G. Fried Revocable Trust
c/o Catherine D. Kretzschmar, Esq.
Akerman LLP
350 E. Las Olas Blvd., Suite 1600
Fort Lauderdale, FL 33301-4247

Thomas Cleaning Services
16200 Gold Club Road
#213
Fort Lauderdale, FL 33326-1654

Transunion, LLC
POB 99506
Chicago, IL 60693-9506

Triangle Fire
7720 NW 53 Street
Miami, FL 33166-4102

Victor and Roseanna Smith
9 Bentley Lodge
182 High RD
WD 23 1NS
Bushey Heath, Herts, UK

Vimal Tambay
6961 NW 66 St
Pompano Beach, FL 33067-1476

Warren Richard Wiebe, Jr.
974 Sand Iron Dr
Incline Village, NV 89451-8913

Warren Richard Wiebe, Jr.
Irrevocable Trust dtd 1/27/17
974 Sand Iron Dr
Incline Village, NV 89451-8913

Western Union
POB 60528
City of Industry, CA 91716-0528

Wheeler Real Estate Enterprises, LLC
100 NW 100 Avenue
Fort Lauderdale, FL 33324-7008

Wheeler Real Estate Enterprises, LLC
c/o Bradley S. Shraiberg
Shraiberg, Landau & Page, PA
2385 NW Executive Center Dr., #300
Boca Raton, FL 33431-8530

William Hyman Family Trust
2556 NE 26 Ave
Fort Lauderdale, FL 33305-1611

William Hyman Family Trust
c/o Catherine D. Kretzschmar, Esq.
Akerman LLP
350 E. Las Olas Blvd., Suite 1600
Fort Lauderdale, FL 33301-4247

Zafi Gamlieli
35624 N 86 Pl
Scottsdale, AZ 85266-1059

Alan Fyne
1515 N University Dr #114
Coral Springs, FL 33071-6084

Alvin G. Wheeler
c/o Bradley S. Shraiberg
Shraiberg, Landau and Page, PA
2385 NW Executive Center Dr., Ste 300
Boca Raton, FL 33431-8530

David Wheeler
c/o Bradley S. Shraiberg
Shraiberg, Landau & Page, PA
2385 NW Executive Center Dr., Ste 300
Boca Raton, FL 33431-8530

Douglas J. Jeffrey Esq.
6625 Miami Lakes Dr E #379
Miami Lakes, FL 33014-2705

Eric Rubin
c/o Moecker Auctions Inc
1883 Marina Mile Blvd #106
Ft Lauderdale, FL 33315-2232

Felipe Plechac-Diaz
2699 Stirling Rd c401
Fort Lauderdale, FL 33312-6598

Ido J Alexander Esq
Leiderman Shelomith Alexander et al.
2699 Stirling Rd.
C-401
Fort Laudedale, FL 33312-6598

Jeff J. Marwil, Esq
70 West Madison Street, Suite 3800
Chicago, IL 60602-4342

Rajiv Gudka
c/o Law Office of Brooks, Frank & De La
10 Northwest LeJeuen Road, Suite 620
miami, fl 33126-5473

Robin Ishmael
500 Mamaroneck Avenue
Harrison, NY 10528-1633

Scott Wheeler
c/o Bradley S. Shraiberg
Shraiberg, Landau and Page, PA
2385 NW Executive Center Dr., Ste 300
Boca Raton, FL 33431-8530

Shil Rajiv Gudka
c/o Law Office of Brooks, Frank & De La
10 Northwest LeJeuen Road, Suite 620
Miami, fl 33126-5473

Soneet Kapila
c/o Kapila & Company
1000 South Federal Highway
Suite 200
Fort Lauderdale, FL 33316-1237

Stanley Cohen
c/o Thompson PLLC
214 Brazilian Ave.
Suite 200
Palm Beach, FL 33480-4676

Zach B Shelomith
2699 Stirling Rd # C401
Ft Lauderdale, FL 33312-6598

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Defi Solutions
1026 Texan Trail
Suite 150
Grapevine, TX 76051

Iles Cooper
900 Grove St
Orwigsburg, PA 17961

NEC Financial Services, LLC
250 Pehle Ave
Saddle Brook, NJ 07663-5806

Addresses marked (c) above for the following entity/entities were corrected
as required by the USPS Locatable Address Conversion System (LACS).

Gregory A Thomas
L.A. Perkins Esp
3839 NW Boca Raton Blvd # 200
Boca Raton  FL  33431


The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.


(u)Ampleton Group Limited            (u)Andrew Weiss, as Co-Trustee of the Robyn W        (u)Arlene G. Fried, as Trustee of the Arlene


(u)Creditor Committee                (u)Experian, Inc.                                    (u)Madeline Hyman, as Trustee of the William


(u)Robyn Weiss, as Co-Trustee of the Robyn We    (d)Garber Revocable Trust            (u)Gregory A. Thomas
                                                 POB 1293
                                                 Wilson, NY 83014-1293


(u)Howard Bruce Garber               (u)Ilene Resnick Garber                              (u)Judith Goldberg


End of Label Matrix
Mailable recipients   199
Bypassed recipients    12
Total                 211

# EXHIBIT "1"

**SUMMIT FINANCIAL CORP**
Fort Lauderdale, Florida

**FINANCIAL STATEMENTS**
December 2015 and 2014

SUMMIT FINANCIAL CORP
Fort Lauderdale, Florida

FINANCIAL STATEMENTS
December 31, 2015 and 2014

CONTENTS

INDEPENDENT AUDITOR'S REPORT ................................................................................................... 1

FINANCIAL STATEMENTS

    BALANCE SHEETS ......................................................................................................................... 3

    STATEMENTS OF OPERATIONS.................................................................................................. 4

    STATEMENTS OF CHANGES IN STOCKHOLDER'S EQUITY......................................................... 5

    STATEMENTS OF CASH FLOWS.................................................................................................. 6

    NOTES TO FINANCIAL STATEMENTS ......................................................................................... 7



**Crowe Horwath LLP**
Independent Member Crowe Horwath International

INDEPENDENT AUDITOR'S REPORT

Management and Stockholder
Summit Financial Corp
Fort Lauderdale, Florida

**Report on the Financial Statements**

We have audited the accompanying financial statements of Summit Financial Corp (the "Company"), which comprise the balance sheet as of December 31, 2015, and the related statements of operations, changes in stockholder's equity, and cash flows for the year then ended, and the related notes to the financial statements.

***Management's Responsibility for the Financial Statements***

Management is responsible for the preparation and fair presentation of these financial statements in accordance with accounting principles generally accepted in the United States of America; this includes the design, implementation, and maintenance of internal control relevant to the preparation and fair presentation of financial statements that are free from material misstatement, whether due to fraud or error.

***Auditor's Responsibility***

Our responsibility is to express an opinion on these financial statements based on our audit. We conducted our audit in accordance with auditing standards generally accepted in the United States of America. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free from material misstatement.

An audit involves performing procedures to obtain audit evidence about the amounts and disclosures in the financial statements. The procedures selected depend on the auditor's judgment, including the assessment of the risks of material misstatement of the financial statements, whether due to fraud or error. In making those risk assessments, the auditor considers internal control relevant to the entity's preparation and fair presentation of the financial statements in order to design audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the entity's internal control. Accordingly, we express no such opinion. An audit also includes evaluating the appropriateness of accounting policies used and the reasonableness of significant accounting estimates made by management, as well as evaluating the overall presentation of the financial statements.

We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our audit opinion.

(Continued)

***Basis for Qualified Opinion***

As described in Note 1, the Company has not consolidated the operations of SumFin Reinsurance Corporation, Ltd., a variable interest entity to which the Company is deemed to be the primary beneficiary that, in our opinion, is required under accounting principles generally accepted in the United States of America.  The financial information for SumFin Reinsurance Corporation, Ltd. is not determinable by management and consequently, the effects of not consolidating SumFin Reinsurance Corporation on the Company's financial statements have not been determined.

***Qualified Opinion***

In our opinion, except for the effects of the matter described in the Basis for Qualified Opinion paragraph the financial statements referred to above present fairly, in all material respects, the financial position of Summit Financial Corp as of December 31, 2015, and the results of its operations and its cash flows for the year then ended in accordance with accounting principles generally accepted in the United States of America.

***Other Matter***

The financial statements of Summit Financial Corp as of December 31, 2014 were audited by other auditors whose report dated June 8, 2015, expressed a qualified opinion on those statements. The basis for qualification was due to the fact that the Company had not consolidated the financial statements of SumFin Reinsurance Corporation, Ltd., which in their opinion, is required under accounting policies generally accepted in the United States of America.

*Crowe Horwath LLP*

Crowe Horwath LLP

Fort Lauderdale, Florida
April 29, 2016

2.

SUMMIT FINANCIAL CORP
NOTES TO FINANCIAL STATEMENTS
Years ended December 31, 2015 and 2014

**NOTE 5 – PLEDGED ASSETS AND DEBT** (Continued)

The Company's subordinated debt consists of various unsecured debenture notes with related and unrelated parties. The notes have one-to-three year terms, but are callable by the debt holder with a 60-day written notice. The notes bear interest at the rate of 12% per annum.

Aggregate maturities for subordinated debt at December 31, 2015 are as follows:

|  | 2016 | 2017 | Total |
|---|---|---|---|
| Senior debt | $    86,424,605 | - | $    86,424,605 |
| Subordinated debt | 3,000,000 | $    14,521,791 | 17,521,791 |
| Related party subordinated debt | 8,700 | 9,111,722 | 9,120,422 |
| Total | $    89,433,305 | $    23,633,513 | $    113,066,818 |

**NOTE 6 – RELATED-PARTY TRANSACTIONS AND BALANCES**

Related-party subordinated debt balances totaled $9,120,422 and $8,078,422 at December 31, 2015 and 2014. These subordinated debt agreements bear interest at the rate of 12% per annum. Total interest paid for the related-party subordinated debt agreements totaled $973,974 and $857,259 for the years ended December 31, 2015 and 2014, respectively. Principal paid to shareholders totaled $0 for each of the years ended December 31, 2015 and 2014.

The Company is affiliated through one of the shareholders with a real estate company that owns the building in which the Company operates. Rent expense paid to the related party totaled $288,000 for each of the years ended December 31, 2015 and 2014.

The Company is affiliated through common ownership and management with SumFin Reinsurance Corporation, Ltd., a credit reinsurance company. Beginning June 1, 2003, all credit insurance written by the Company is reinsured by the related-party reinsurance company. The Company and its principal stockholders guarantee a letter of credit for the benefit of SumFin Reinsurance Corporation, Ltd. For amounts up to $175,000 and $190,000 for the years ended December 31, 2015 and 2014, respectively.

**NOTE 7 – EMPLOYEE BENEFITS**

The Company has a salary deferral plan under Section 401(k) of the Internal Revenue Code. The plan allows eligible employees to defer a portion of their compensation pursuant to IRS regulations. Such deferrals accumulate on a tax deferred basis until the employee withdraws the funds. The Company, at its option, may match a portion of the employees' contribution up to 4% of the employee's contribution. Total expense recorded for the Company's contribution for the years ended December 31, 2015 and 2014, was $53,533 and $50,706, respectively.

# EXHIBIT "2"

**SUMMIT FINANCIAL CORP**
Fort Lauderdale, Florida

**FINANCIAL STATEMENTS**
December 2016 and 2015

SUMMIT FINANCIAL CORP
Fort Lauderdale, Florida

FINANCIAL STATEMENTS
December 31, 2016 and 2015

CONTENTS

INDEPENDENT AUDITOR'S REPORT ......................................................................................................   1

FINANCIAL STATEMENTS

    BALANCE SHEETS ...........................................................................................................................   3

    STATEMENTS OF OPERATIONS....................................................................................................   4

    STATEMENTS OF STOCKHOLDER'S EQUITY .............................................................................   5

    STATEMENTS OF CASH FLOWS....................................................................................................   6

    NOTES TO FINANCIAL STATEMENTS ..........................................................................................   7

 Crowe Horwath.

**Crowe Horwath LLP**
Independent Member Crowe Horwath International

INDEPENDENT AUDITOR'S REPORT

Management and Stockholders
Summit Financial Corp
Fort Lauderdale, Florida

**Report on the Financial Statements**

We have audited the accompanying financial statements of Summit Financial Corp (the "Company"), which comprise the balance sheets as of December 31, 2016 and 2015, and the related statements of operations, stockholder's equity, and cash flows for the years then ended, and the related notes to the financial statements.

***Management's Responsibility for the Financial Statements***

Management is responsible for the preparation and fair presentation of these financial statements in accordance with accounting principles generally accepted in the United States of America; this includes the design, implementation, and maintenance of internal control relevant to the preparation and fair presentation of financial statements that are free from material misstatement, whether due to fraud or error.

***Auditor's Responsibility***

Our responsibility is to express an opinion on these financial statements based on our audits. We conducted our audits in accordance with auditing standards generally accepted in the United States of America. Those standards require that we plan and perform the audits to obtain reasonable assurance about whether the financial statements are free from material misstatement.

An audit involves performing procedures to obtain audit evidence about the amounts and disclosures in the financial statements. The procedures selected depend on the auditor's judgment, including the assessment of the risks of material misstatement of the financial statements, whether due to fraud or error. In making those risk assessments, the auditor considers internal control relevant to the entity's preparation and fair presentation of the financial statements in order to design audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the entity's internal control. Accordingly, we express no such opinion. An audit also includes evaluating the appropriateness of accounting policies used and the reasonableness of significant accounting estimates made by management, as well as evaluating the overall presentation of the financial statements.

We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our qualified audit opinion.

**Basis for Qualified Opinion**

As described in Note 1, the Company has not consolidated the operations of SumFin Reinsurance Corporation, Ltd., a variable interest entity to which the Company is deemed to be the primary beneficiary that, in our opinion, is required under accounting principles generally accepted in the United States of America. The financial information for SumFin Reinsurance Corporation, Ltd. is not determinable by management and consequently, the effects of not consolidating SumFin Reinsurance Corporation on the Company's financial statements have not been determined.

**Qualified Opinion**

In our opinion, except for the effects of the matter described in the Basis for Qualified Opinion paragraph, the financial statements referred to above present fairly, in all material respects, the financial position of Summit Financial Corp as of December 31, 2016 and 2015, and the results of its operations and its cash flows for the years then ended in accordance with accounting principles generally accepted in the United States of America.

*Crowe Horwath LLP*

Crowe Horwath LLP

Fort Lauderdale, Florida
March 30, 2017

SUMMIT FINANCIAL CORP
NOTES TO FINANCIAL STATEMENTS
December 31, 2016 and 2015

**NOTE 5 – PLEDGED ASSETS AND DEBT** (Continued)

The Company's senior debt consists of an obligation under a line of credit agreement with maximum borrowings totaling $105,000,000 at December 31, 2016, and subject to a borrowing base calculation on eligible receivables. The senior debt is subject to the London InterBank Offered Rate (LIBOR) and WSJ Prime. The applicable margin for LIBOR loans is 3.50% when the excess availability is greater than 10% and 3.75% for LIBOR loans when the excess availability is less than or equal to 10%. The applicable margin for WSJ Prime loans is 2.50% when the excess availability is greater than 10% and 2.75% for Prime loans when the excess availability is less than or equal to 10%. At December 31, 2016 and 2015, the effective interest rate on LIBOR loans was 4.52% and 4.17%, respectively. The line of credit is collateralized by substantially all assets of the Company, and repayment is personally guaranteed by the stockholders. Prime rate at December 31, 2016 and 2015 was 3.75% and 3.50%, respectively.

The senior debt loan agreement contains various restrictions, including but not limited to the maintenance of certain financial ratios, distributions for tax purposes, minimum requirements for the allowance for credit losses, and minimum required amount of subordinated debt. The senior debt matured on December 31, 2016. A new amended and restated agreement was entered into that extended the stated maturity date through February 15, 2018. Refer to Note 8 – subsequent events, for additional details of the amended and restated agreement.

At December 31, 2016, and for the year then ended, the Company was in compliance with all covenants related to the senior debt.

The Company's subordinated debt consists of various unsecured debenture notes with related and unrelated parties. The notes have one-to-three year terms, but are callable by the debt holder with a 60-day written notice. The notes bear interest at the rate of 12% per annum.

Aggregate maturities for subordinated debt at December 31, 2016 are as follows:

|  | 2017 | 2018 | Total |
|---|---|---|---|
| Subordinated debt | 550,000 | 17,990,853 | 18,540,853 |
| Related party subordinated debt | - | 9,295,422 | 9,295,422 |
| Total | $    550,000 | $  27,286,275 | $    27,836,275 |

**NOTE 6 – RELATED-PARTY TRANSACTIONS AND BALANCES**

Related-party subordinated debt balances totaled $9,295,422 and $9,120,422 at December 31, 2016 and 2015. These subordinated debt agreements bear interest at the rate of 12% per annum. Total interest paid for the related-party subordinated debt agreements totaled $1,074,768 and $973,974 for the years ended December 31, 2016 and 2015, respectively. There was no principal repaid on subordinated debt to shareholders for each of the years ended December 31, 2016 and 2015.

The Company is affiliated through one of the shareholders with a real estate company that owns the building in which the Company operates. Rent expense paid to the related party totaled $288,000 for each of the years ended December 31, 2016 and 2015.

(Continued)

SUMMIT FINANCIAL CORP
NOTES TO FINANCIAL STATEMENTS
December 31, 2016 and 2015

## NOTE 6 – RELATED-PARTY TRANSACTIONS AND BALANCES (Continued)

The Company is affiliated through common ownership and management with SumFin Reinsurance Corporation, Ltd., a credit reinsurance company. Beginning June 1, 2003, all credit insurance written by the Company is reinsured by the related-party reinsurance company. The Company and its principal stockholders guarantee a letter of credit for the benefit of SumFin Reinsurance Corporation, Ltd. for amounts up to $250,000 and $175,000 for the years ended December 31, 2016 and 2015, respectively.

## NOTE 7 – EMPLOYEE BENEFITS

The Company has a salary deferral plan under Section 401(k) of the Internal Revenue Code. The plan allows eligible employees to defer a portion of their compensation pursuant to IRS regulations. Such deferrals accumulate on a tax deferred basis until the employee withdraws the funds. The Company, at its option, may match a portion of the employees' contribution up to 4% of the employee's contribution. Total expense recorded for the Company's contribution for the years ended December 31, 2016 and 2015, was $47,913 and $53,533, respectively.

## NOTE 8 – SUBSEQUENT EVENTS

Summit entered into a new Amended and Restated Loan and Security Agreement between Bank of America, N.A. and BMO Harris Bank N.A., as of February 14, 2017, thereby removing Wells Fargo Bank as a Lender. Under the amended line of credit agreement, the maximum borrowings remain $105,000,000. The maturity was extended to February 15, 2018.

As part of the amended and restatements agreements, the Company converted $2,500,000 of the subordinated debt from related parties into 10 shares of common stock.

EXHIBIT "3"

**Fill in this information to identify the case:**

Debtor 1    SUMMIT FINANCIAL CORP.

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:    Southern District of Florida

Case number    18-13389-BKC-RBR

## Official Form 410

# Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

*Sydelle Lazar*
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

*Sydelle Lazar*
Name
*21438 Linwood Court*
Number    Street
*Boca Raton Fl*
City    State    ZIP Code
Contact phone *516-668-2682*
Contact email *Ethan Lazar (Son)*
*mslazar@bellsouth.net*

Where should payments to the creditor be sent? (if different)

*Sydelle Lazar*
Name
*21438 Linwood Court*
Number    Street
*Boca Raton Fl*
City    State    ZIP Code
Contact phone *516-668-2682*
Contact email *Ethan Lazar (Son)*
*mslazar@bellsouth.net*

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_ _ _ _ _ — _ _ _ _ — _ _ _ _ — _ _ _ _

**4. Does this claim amend one already filed?**

☑ No
☐ Yes.  Claim number on court claims registry (if known) _____

Filed on _____
MM  / DD  / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes.  Who made the earlier filing? _____

**Part 2:** Give Information About the Claim as of the Date the Case Was Filed

| | |
|---|---|
| 6. Do you have any number you use to identify the debtor? | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ___ ___ ___ ___ |

7. How much is the claim?    $ 600,000 .   Does this amount include interest or other charges?

☑ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. **What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Promissory Note

9. **Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:    $_____

Amount of the claim that is secured:    $_____

Amount of the claim that is unsecured: $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:    $_____

Annual Interest Rate (when case was filed)_____%

☐ Fixed

☐ Variable

10. **Is this claim based on a lease?**

☑ No

☐ Yes. Amount necessary to cure any default as of the date of the petition.    $_____

11. **Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☑ No<br>☐ Yes. *Check one:* | Amount entitled to priority |
|---|---|---|
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3:    Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.
18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☐ I am the creditor.
☑ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  07 26 2018
　　　　　　　　　　MM / DD / YYYY

_____
Signature

Print the name of the person who is completing and signing this claim:

Name    Ethan          Harris          Lazar
　　　　First name      Middle name      Last name

Title    authorized agent

Company  _____
Identify the corporate servicer as the company if the authorized agent is a servicer.

Address  6534 NW 39th Terrace
　　　　　Number      Street
　　　　　Boca Raton          Florida      33496
　　　　　City                State        ZIP Code

Contact phone  516-668-2682      Email  elazar@Cambridgecompanies.net

# SUMMIT FINANCIAL CORPORATION

## UNSECURED SUBORDINATED PROMISSORY NOTE

**Dated:** JULY 1, 2013                     Amount: $600,000.00

FOR VALUE RECEIVED, Summit Financial Corporation, a Florida corporation, (the "obligor"), promises and agrees to pay to the order of Sydelle Lazar Whose address is 21438 Linwood Ct. Boca Raton, FL 33433 and whose Taxpayer Identification or Social Security Number is ▇▇▇▇▇▇▇ Or any successors or assigns (the "Holder"), at such address as may be designated from time to time in writing by the Holder, in lawful money of the United States of America, the principal sum of Six Hundred Thousand dollars ($600,000.00) together with interest from the date hereof on the unpaid principal balance outstanding from time to time hereon. Interest shall be at the rate of twelve percent (12%) per annum payable monthly in arrears by the fifth business day of each month. Principal shall be due and payable to the Holder two (2) years from the date hereof, together with any accrued and unpaid interest.

1. This Unsecured Subordinated Promissory Note is not secured by any assets of the Obligor and shall be subordinated to all claims of any asset-based lender of the Obligor.

2. This Unsecured Subordinated Promissory Note is assumable from the original Holder upon written notice from the Holder, confirmed by the Obligor, stating the name, address, transfer date and Taxpayer Identification or Social Security Number of the new Holder.

3. The Obligor may prepay this Unsecured Subordinated Promissory Note without penalty upon sixty (60) days prior written notice. The Holder may request prepayment of this Unsecured Subordinated Promissory Note upon sixty (60) days prior written notice to the Obligor without penalty.

4. All payments under this Unsecured Subordinated Promissory Note shall be first applied to interest on the unpaid balance, and then to principal. This unsecured Subordinated Promissory Note shall be in default if any payment is not paid within ten (10) days of the date on which it is due. While in default, this Unsecured Subordinated Promissory Note shall bear interest at the rate of fifteen percent (15%) per annum. If this Unsecured Subordinated Promissory Note is in default, the aggregate unpaid indebtedness shall, at the option of the Holder, become immediately due and payable without any penalty.

5. In the event that there occurs any breach of any obligation of the Obligor under this Unsecured Subordinated Promissory Note and such breach is not cured within ten (10) days following written notice from the Holder to the Obligor, the Holder may institute all available legal actions for the collection of all principal, interest and collection costs. The Holder may waive any default before or after the same has been declared and restore this Unsecured Subordinated Promissory Note to full force and effect without impairing any rights hereunder, such right of waiver being a continuing one.

6. The obligor hereby waives presentment for payment, protest, notice of protest, notice of nonpayment, demand, notice of demand and all legal diligence by Holder in enforcing collection, and further agrees to pay all costs, charges and all expenses of collection, including reasonable attorneys' fees if this Unsecured Subordinated Promissory Note is in default in the payment of interest or principal.

7. This Unsecured Subordinated Promissory Note has been executed and delivered in, and shall be governed by and construed according to the laws of the State of Florida.

8. This Unsecured Subordinated Promissory Note and its terms may not be altered or terminated without prior written approval of the Holder and the Obligor. No waiver of any term or provision hereof shall be valid unless in writing signed by the Holder.

9. Any notice of the Obligor provided for in this Unsecured Subordinated Promissory Note shall be given by mailing such notice by first class mail, addressed to the Obligor at the address stated below, or to such other address as Obligor may designate by notice in writing to the Holder. Any notice to the Holder shall be given by mailing such notice by certified mail, return-receipt-requested, to the Holder at the address stated in this Unsecured Subordinated Promissory Note or at such address stated in this Unsecured Subordinated Promissory Note or at such address as may have been last designated by notice to the Obligor.

ADDRESS OF OBLIGOR:

100 N.W. 100th Avenue
Plantation, Florida 33324

SUMMIT FINANCIAL CORPORATION,
A Florida Corporation

By: _____

Title: V.P.

EXHIBIT "4"

# SUMMIT FINANCIAL CORPORATION

## UNSECURED SUBORDINATED PROMISSORY NOTE

**Dated:** December 31, 2016                    Amount: $600,000.00

FOR VALUE RECEIVED, Summit Financial Corporation, a Florida corporation, (the "obligor"), promises and agrees to pay to the order of Sydelle Lazar Whose address is 21438 Linwood Ct. Boca Raton, FL 33433 and whose Taxpayer Identification or Social Security Number is 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 Or any successors or assigns (the "Holder"), at such address as may be designated from time to time in writing by the Holder, in lawful money of the United States of America, the principal sum of Six Hundred Thousand dollars ($600,000.00) together with interest from the date hereof on the unpaid principal balance outstanding from time to time hereon.  Interest shall be at the rate of twelve percent (12%) per annum payable monthly in arrears by the fifth business day of each month.  Principal shall be due and payable to the Holder two (2) years from the date hereof, together with any accrued and unpaid interest.

1. This Unsecured Subordinated Promissory Note is not secured by any assets of the Obligor and shall be subordinated to all claims of any asset-based lender of the Obligor.

2. This Unsecured Subordinated Promissory Note is assumable from the original Holder upon written notice from the Holder, confirmed by the Obligor, stating the name, address, transfer date and Taxpayer Identification or Social Security Number of the new Holder.

3. The Obligor may prepay this Unsecured Subordinated Promissory Note without penalty upon sixty (60) days prior written notice.  The Holder may request prepayment of this Unsecured Subordinated Promissory Note upon sixty (60) days prior written notice to the Obligor without penalty.

4. All payments under this Unsecured Subordinated Promissory Note shall be first applied to interest on the unpaid balance, and then to principal.  This unsecured Subordinated Promissory Note shall be in default if any payment is not paid within ten (10) days of the date on which it is due.  While in default, this Unsecured Subordinated Promissory Note shall bear interest at the rate of fifteen percent (15%) per annum.  If this Unsecured Subordinated Promissory Note is in default, the aggregate unpaid indebtedness shall, at the option of the Holder, become immediately due and payable without any penalty.

5. In the event that there occurs any breach of any obligation of the Obligor under this Unsecured Subordinated Promissory Note and such breach is not cured within ten (10) days following written notice from the Holder to the Obligor, the Holder may institute all available legal actions for the collection of all principal, interest and collection costs. The Holder may waive any default before or after the same has been declared and restore this Unsecured Subordinated Promissory Note to full force and effect without impairing any rights hereunder, such right of waiver being a continuing one.

6. The obligor hereby waives presentment for payment, protest, notice of protest, notice of nonpayment, demand, notice of demand and all legal diligence by Holder in enforcing collection, and further agrees to pay all costs, charges and all expenses of collection, including reasonable attorneys' fees if this Unsecured Subordinated Promissory Note is in default in the payment of interest or principal.

7. This Unsecured Subordinated Promissory Note has been executed and delivered in, and shall be governed by and construed according to the laws of the State of Florida.

8. This Unsecured Subordinated Promissory Note and its terms may not be altered or terminated without prior written approval of the Holder and the Obligor. No waiver of any term or provision hereof shall be valid unless in writing signed by the Holder.

9. Any notice of the Obligor provided for in this Unsecured Subordinated Promissory Note shall be given by mailing such notice by first class mail, addressed to the Obligor at the address stated below, or to such other address as Obligor may designate by notice in writing to the Holder. Any notice to the Holder shall be given by mailing such notice by certified mail, return-receipt-requested, to the Holder at the address stated in this Unsecured Subordinated Promissory Note or at such address stated in this Unsecured Subordinated Promissory Note or at such address as may have been last designated by notice to the Obligor.

ADDRESS OF OBLIGOR:

100 N.W. 100th Avenue
Plantation, Florida 33324

SUMMIT FINANCIAL CORPORATION,
A Florida Corporation

By:_____

Title:____VP_____

EXHIBIT "5"

| Fill in this information to identify the case: |
|---|

Debtor 1    SUMMIT FINANCIAL CORP.

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:  Southern District of Florida

Case number    18-13389-BKC-RBR

Official Form 410

# Proof of Claim

04/16

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

## Part 1:    Identify the Claim

| | |
|---|---|
| 1.  **Who is the current creditor?** | Pensco Trust Company LLC Custodian FBO Robert Hendler IRA <br> Name of the current creditor (the person or entity to be paid for this claim) <br><br> Other names the creditor used with the debtor    Robert Hendler IRA |
| 2.  **Has this claim been acquired from someone else?** | ☑ No <br> ☐ Yes.  From whom? _____ |

3.  **Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent? (if different)** |
|---|---|
| Beth A. Hendler, Esq. | Pensco Trust Company LLC Custodian FBO Robert Hendler IRA |
| Name | Name |
| 500 E. Broward Blvd., #1710 | PO Box 173859 |
| Number        Street | Number        Street |
| Fort Lauderdale        FL        33394 | Denver        CO        80217-3859 |
| City        State        ZIP Code | City        State        ZIP Code |
| Contact phone    954-848-2918 | Contact phone    800-820-4903 |
| Contact email    beth@bahpa.com | Contact email |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

___ ___ ___ ___ — ___ ___ ___ ___ — ___ ___ ___ ___ — ___ ___ ___ ___

| | |
|---|---|
| 4.  **Does this claim amend one already filed?** | ☑ No <br> ☐ Yes.  Claim number on court claims registry (if known) _____        Filed on _____ <br><br> MM / DD / YYYY |
| 5.  **Do you know if anyone else has filed a proof of claim for this claim?** | ☐ No <br> ☑ Yes.  Who made the earlier filing?    Robert Hendler IRA |

Official Form 410                                Proof of Claim                                page 1

| **Part 2:** | **Give Information About the Claim as of the Date the Case Was Filed** |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

---

**7. How much is the claim?**  $_____ 700,000.00. **Does this amount include interest or other charges?**

☑ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

---

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Promissory Note- This claim relates to and/or replaces claim #14 filed by Robert Hendler, IRA as note originally entered with Robert Hendler IRA and was re-issued per the attached when former custodian resigned and Pensco became new IRA account custodian FBO Robert Hendler IRA. The re-issued note solely changes the custodian's name from the original note dated 2013 of Morgan Stanley and added Pensco as the custodian FBO Robert Hendler IRA

---

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**  $_____

**Amount of the claim that is secured:**  $_____

**Amount of the claim that is unsecured:**  $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**  $_____

**Annual Interest Rate** (when case was filed)_____%

☐ Fixed

☐ Variable

---

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**  $_____

---

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

---

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Yes. *Check one:* | **Amount entitled to priority** |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☑ I am the creditor.
☐ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   08/01/2018
                   MM / DD / YYYY

Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Robert | | Hendler |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | | | |
| Company | | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 21493 Linwood Court | | |
| | Number        Street | | |
| | Boca Raton, Florida 33433 | | |
| | City | State | ZIP Code |
| Contact phone | 561-487-6939 | Email | rh2251@aol.com |



**PENSCO**
TRUST COMPANY

June 23, 2016

PENSCO Trust Company LLC Custodian FBO ROBERT HENDLER IRA
PENSCO Account ending 4072

**Please complete and return the below confirmation via one of these methods:**
- Email: AssetConfirm@PENSCO.com.
- Fax: 303-614-7092
- Mail: PO Box 173859  Denver, CO 80217

July 7, 2016                           Yes
_____    _____
Transfer Effective Date               Certificate Issued (Yes or No)

N.A.                                  700,000
_____    _____
Current Shares                        Current Price

S.corp                                N.A.
_____    _____
Asset Type (i.e. LP, LLC, Offshore)   Fund Account Number (if applicable)

**Are there any outstanding capital commitments to be fulfilled?** ___None___

By Signing below you are also acknowledging that the investment is held through an IRA under the
registration and Tax ID number provided.

_____cFO_____    ___July 7th, 2016___
Asset Sponsor Signature               Date

Summit - Unsecured Note       avia@summitfinancial corp.org
_____    _____
Asset Sponsor Name                    Email

**Important Information:**

- **Annual valuations are required at a minimum.** We will send a notice out during the first
  quarter of every year with an official request but you are able to provide statements for us to
  update anytime throughout the year as well.
- This investment is part of a tax-sheltered retirement plan, and is exempt from federal income tax
  withholding.
- All disbursements must be made payable and sent to the updated name and address with no
  withholding.
- Forward all K-1's and fund updates directly to the underlying client.
  If there is a request for additional funding, PENSCO will perform an administrative review and
  require your company documents. The required documents are listed on the form titled Private
  Equity Investment Notification located at www.pensco.com/forms.
- For ongoing service needs, please contact us at 800-820-4903.



**PENSCO**
TRUST COMPANY

June 23, 2016

SUMMIT FINANCIAL CORP PROM NOTE
100 N.W 100TH AVE
PLANTATION FL 33324

RE: Re-registration of SUMMIT FINANCIAL CORP PROM NOTE

MSSB* C/F FBO ROBERT HENDLER Account #████████

The referenced client has membership interest or shares in the above investment held within a retirement account with Morgan Stanley under tax ID #████████ Morgan Stanley has elected to transfer this investment to PENSCO Trust Company. **Please update your records to ensure that the registration, address, Tax ID #, and wiring instructions for the referenced account are as follows:**

PENSCO TRUST COMPANY LLC                    Wiring Instructions
CUSTODIAN FBO                               Citibank
ROBERT HENDLER IRA                     ABA #321171184
PO Box 173859                               PENSCO Trust Company
Denver CO 80217-3859                        Account #████9978
Tax ID #████6633                            FFC: Client Name / Account Number

**This change is to update the registration, address and Tax ID only. It is imperative that all other standing instructions and account options remain in effect.** If you are required to assign a new account number, please ensure that all financial representative information and account options are carried forward to the new account.

Please complete the confirmation on the next page to confirm these changes have been made. If you have questions regarding any aspect of this request, please call 1-855-872-7541 or email your inquiry to AssetConfirm@PENSCO.com.

Accepting Custodian:                        Resigning Custodian:

PENSCO Trust Co                             Morgan Stanley - see LPOA attached
AUTHORIZED SIGNATURE                        AUTHORIZED SIGNATURE

**\*Please refer to the LPOA for other entity registrations**

SIGNATURE GUARANTEED
MEDALLION GUARANTEED
OPUS BANK

( PNSC05 )                      AUTHORIZED
                                Y 9 0 1 3 0 9
SECURITIES TRANSFER AGENTS MEDALLION PROGRAM

PO BOX 173859 | DENVER, COLORADO | 80217-3859
WWW.PENSCO.COM

# SUMMIT FINANCIAL CORPORATION

## UNSECURED SUBORDINATED PROMISSORY NOTE

**Dated: July 7, 2016**                          Amount: $·700,000.00

      FOR VALUE RECEIVED, Summit Financial Corporation, a Florida corporation,
(the "obligor"), promises and agrees to pay to the order <u>PENSCO TRUST COMPANY
LLC CUSTODIAN FBO ROBERT HENDLER IRA</u>  Whose address is <u>PO Box 173859.
Denver, CO 80217-3859</u> and whose Taxpayer Identification is ▮▮▮▮▮▮▮ Or any
successors or assigns (the "Holder"), at such address as may be designated from time to
time in writing by the Holder, in lawful money of the United States of America, the
principal sum of Seven Hundred Thousand dollars ($700,000.00) together with interest
from the date hereof on the unpaid principal balance outstanding from time to time
hereon.  Interest shall be at the rate of twelve percent (12%) per annum payable monthly
in arrears by the fifth business day of each month.  Principal shall be due and payable to
the Holder two (2) years from the date hereof, together with any accrued and unpaid
interest.

1.  This Unsecured Subordinated Promissory Note is not secured by any assets of the
    Obligor and shall be subordinated to all claims of any asset-based lender of the
    Obligor.

2.  This Unsecured Subordinated Promissory Note is assumable from the original Holder
    upon written notice from the Holder, confirmed by the Obligor, stating the name,
    address, transfer date and Taxpayer Identification or Social Security Number of the
    new Holder.

3.  The Obligor may prepay this Unsecured Subordinated Promissory Note without
    penalty upon sixty (60) days prior written notice.  The Holder may request
    prepayment of this Unsecured Subordinated Promissory Note upon sixty (60) days
    prior written notice to the Obligor without penalty, or at any time with a penalty
    interest rate of eight percent (8%) per annum for the period of time during which this
    Unsecured Subordinated Promissory Note is outstanding and payable.

4.  All payments under this Unsecured Subordinated Promissory Note shall be first
    applied to interest on the unpaid balance, and then to principal.  This unsecured
    Subordinated Promissory Note shall be in default if any payment is not paid within
    ten (10) days of the date on which it is due.  While in default, this Unsecured
    Subordinated Promissory Note shall bear interest at the rate of fifteen percent (15%)
    per annum.  If this Unsecured Subordinated Promissory Note is in default, the
    aggregate unpaid indebtedness shall, at the option of the Holder, become immediately
    due and payable without any penalty.

5. In the event that there occurs any breach of any obligation of the Obligor under this Unsecured Subordinated Promissory Note and such breach is not cured within ten (10) days following written notice from the Holder to the Obligor, the Holder may institute all available legal actions for the collection of all principal, interest and collection costs. The Holder may waive any default before or after the same has been declared and restore this Unsecured Subordinated Promissory Note to full force and effect without impairing any rights hereunder, such right of waiver being a continuing one.

6. The obligor hereby waives presentment for payment, protest, notice of protest, notice of nonpayment, demand, notice of demand and all legal diligence by Holder in enforcing collection, and further agrees to pay all costs, charges and all expenses of collection, including reasonable attorneys' fees if this Unsecured Subordinated Promissory Note is in default in the payment of interest or principal.

7. This Unsecured Subordinated Promissory Note has been executed and delivered in, and shall be governed by and construed according to the laws of the State of Florida.

8. This Unsecured Subordinated Promissory Note and its terms may not be altered or terminated without prior written approval of the Holder and the Obligor. No waiver of any term or provision hereof shall be valid unless in writing signed by the Holder.

9. Any notice of the Obligor provided for in this Unsecured Subordinated Promissory Note shall be given by mailing such notice by first class mail, addressed to the Obligor at the address stated below, or to such other address as Obligor may designate by notice in writing to the Holder. Any notice to the Holder shall be given by mailing such notice by certified mail, return-receipt-requested, to the Holder at the address stated in this Unsecured Subordinated Promissory Note or at such address stated in this Unsecured Subordinated Promissory Note or at such address as may have been last designated by notice to the Obligor.

ADDRESS OF OBLIGOR:                SUMMIT FINANCIAL CORPORATION,
                                   A Florida Corporation
100 N.W. 100th Ave.
Plantation, Florida 33324          by: _____

                                   Title: Vice President _____

# SUMMIT FINANCIAL CORPORATION

## UNSECURED SUBORDINATED PROMISSORY NOTE

**Dated: November 11, 2013**                    <u>Amount: $ 700,000.00</u>

       FOR VALUE RECEIVED, Summit Financial Corporation, a Florida corporation, (the "obligor"), promises and agrees to pay to the order of <u>Morgan Stanley Smith Barney LLC, Custodian for Robert C. Hendler IRA</u>  Whose address is <u>21493 Linwood Court, Boca Raton, FL 33433</u> and whose Taxpayer Identification or Social Security Number is ▮▮▮▮▮▮▮▮ or any successors or assigns (the "Holder"), at such address as may be designated from time to time in writing by the Holder, in lawful money of the United States of America, the principal sum of Seven Hundred Thousand dollars ($700,000.00) together with interest from the date hereof on the unpaid principal balance outstanding from time to time hereon.  Interest shall be at the rate of twelve percent (12%) per annum payable monthly in arrears by the fifth business day of each month.  Principal shall be due and payable to the Holder two (2) years from the date hereof, together with any accrued and unpaid interest.

1.  This Unsecured Subordinated Promissory Note is not secured by any assets of the Obligor and shall be subordinated to all claims of any asset-based lender of the Obligor.

2.  This Unsecured Subordinated Promissory Note is assumable from the original Holder upon written notice from the Holder, confirmed by the Obligor, stating the name, address, transfer date and Taxpayer Identification or Social Security Number of the new Holder.

3.  The Obligor may prepay this Unsecured Subordinated Promissory Note without penalty upon sixty (60) days prior written notice.  The Holder may request prepayment of this Unsecured Subordinated Promissory Note upon sixty (60) days prior written notice to the Obligor without penalty, or at any time with a penalty interest rate of eight percent (8%) per annum for the period of time during which this Unsecured Subordinated Promissory Note is outstanding and payable.

4.  All payments under this Unsecured Subordinated Promissory Note shall be first applied to interest on the unpaid balance, and then to principal.  This unsecured Subordinated Promissory Note shall be in default if any payment is not paid within ten (10) days of the date on which it is due.  While in default, this Unsecured Subordinated Promissory Note shall bear interest at the rate of fifteen percent (15%) per annum.  If this Unsecured Subordinated Promissory Note is in default, the aggregate unpaid indebtedness shall, at the option of the Holder, become immediately due and payable without any penalty.

5. In the event that there occurs any breach of any obligation of the Obligor under this Unsecured Subordinated Promissory Note and such breach is not cured within ten (10) days following written notice from the Holder to the Obligor, the Holder may institute all available legal actions for the collection of all principal, interest and collection costs. The Holder may waive any default before or after the same has been declared and restore this Unsecured Subordinated Promissory Note to full force and effect without impairing any rights hereunder, such right of waiver being a continuing one.

6. The obligor hereby waives presentment for payment, protest, notice of protest, notice of nonpayment, demand, notice of demand and all legal diligence by Holder in enforcing collection, and further agrees to pay all costs, charges and all expenses of collection, including reasonable attorneys' fees if this Unsecured Subordinated Promissory Note is in default in the payment of interest or principal.

7. This Unsecured Subordinated Promissory Note has been executed and delivered in, and shall be governed by and construed according to the laws of the State of Florida.

8. This Unsecured Subordinated Promissory Note and its terms may not be altered or terminated without prior written approval of the Holder and the Obligor. No waiver of any term or provision hereof shall be valid unless in writing signed by the Holder.

9. Any notice of the Obligor provided for in this Unsecured Subordinated Promissory Note shall be given by mailing such notice by first class mail, addressed to the Obligor at the address stated below, or to such other address as Obligor may designate by notice in writing to the Holder. Any notice to the Holder shall be given by mailing such notice by certified mail, return-receipt-requested, to the Holder at the address stated in this Unsecured Subordinated Promissory Note or at such address stated in this Unsecured Subordinated Promissory Note or at such address as may may have been last designated by notice to the Obligor.

ADDRESS OF OBLIGOR:

100 N.W. 100th Ave.
Plantation, Florida 33324

SUMMIT FINANCIAL CORPORATION,
A Florida Corporation

by

Title: Vice President

EXHIBIT "6"

# SUMMIT FINANCIAL CORPORATION

## UNSECURED SUBORDINATED PROMISSORY NOTE

**Dated: December 31, 2016**                      <u>Amount: $ 700,000.00</u>

   FOR VALUE RECEIVED, Summit Financial Corporation, a Florida corporation, (the "obligor"), promises and agrees to pay to the order <u>PENSCO TRUST COMPANY LLC CUSTODIAN FBO ROBERT HENDLER IRA</u> Whose address is <u>PO Box 173859, Denver, CO 80217-3859</u> and whose Taxpayer Identification is <u>02-0526633</u> Or any successors or assigns (the "Holder"), at such address as may be designated from time to time in writing by the Holder, in lawful money of the United States of America, the principal sum of Seven Hundred Thousand dollars ($700,000.00) together with interest from the date hereof on the unpaid principal balance outstanding from time to time hereon.  Interest shall be at the rate of twelve percent (12%) per annum payable monthly in arrears by the fifth business day of each month.  Principal shall be due and payable to the Holder two (2) years from the date hereof, together with any accrued and unpaid interest.

1.  This Unsecured Subordinated Promissory Note is not secured by any assets of the Obligor and shall be subordinated to all claims of any asset-based lender of the Obligor.

2.  This Unsecured Subordinated Promissory Note is assumable from the original Holder upon written notice from the Holder, confirmed by the Obligor, stating the name, address, transfer date and Taxpayer Identification or Social Security Number of the new Holder.

3.  The Obligor may prepay this Unsecured Subordinated Promissory Note without penalty upon sixty (60) days prior written notice.  The Holder may request prepayment of this Unsecured Subordinated Promissory Note upon sixty (60) days prior written notice to the Obligor without penalty, or at any time with a penalty interest rate of eight percent (8%) per annum for the period of time during which this Unsecured Subordinated Promissory Note is outstanding and payable.

4.  All payments under this Unsecured Subordinated Promissory Note shall be first applied to interest on the unpaid balance, and then to principal.  This unsecured Subordinated Promissory Note shall be in default if any payment is not paid within ten (10) days of the date on which it is due.  While in default, this Unsecured Subordinated Promissory Note shall bear interest at the rate of fifteen percent (15%) per annum.  If this Unsecured Subordinated Promissory Note is in default, the aggregate unpaid indebtedness shall, at the option of the Holder, become immediately due and payable without any penalty.

5.  In the event that there occurs any breach of any obligation of the Obligor under this Unsecured Subordinated Promissory Note and such breach is not cured within ten (10) days following written notice from the Holder to the Obligor, the Holder may institute all available legal actions for the collection of all principal, interest and collection costs. The Holder may waive any default before or after the same has been declared and restore this Unsecured Subordinated Promissory Note to full force and effect without impairing any rights hereunder, such right of waiver being a continuing one.

6.  The obligor hereby waives presentment for payment, protest, notice of protest, notice of nonpayment, demand, notice of demand and all legal diligence by Holder in enforcing collection, and further agrees to pay all costs, charges and all expenses of collection, including reasonable attorneys' fees if this Unsecured Subordinated Promissory Note is in default in the payment of interest or principal.

7.  This Unsecured Subordinated Promissory Note has been executed and delivered in, and shall be governed by and construed according to the laws of the State of Florida.

8.  This Unsecured Subordinated Promissory Note and its terms may not be altered or terminated without prior written approval of the Holder and the Obligor. No waiver of any term or provision hereof shall be valid unless in writing signed by the Holder.

9.  Any notice of the Obligor provided for in this Unsecured Subordinated Promissory Note shall be given by mailing such notice by first class mail, addressed to the Obligor at the address stated below, or to such other address as Obligor may designate by notice in writing to the Holder. Any notice to the Holder shall be given by mailing such notice by certified mail, return-receipt-requested, to the Holder at the address stated in this Unsecured Subordinated Promissory Note or at such address stated in this Unsecured Subordinated Promissory Note or at such address as may have been last designated by notice to the Obligor.

ADDRESS OF OBLIGOR:

100 N.W. 100th Avenue
Plantation, Florida 33324

SUMMIT FINANCIAL CORPORATION,
A Florida Corporation

By:_____

Title:_____