UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

In re:                                              CASE NO. 18-13389-RBR

SUMMIT FINANCIAL CORP.                              CHAPTER 11

      Debtor.
_____/
THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS and ROBERT HENDLER IRA
                                                    ADV. NO.

      Plaintiffs,
v.

ALVIN WHEELER, DAVID WHEELER
and SCOTT WHEELER,

      Defendants.
_____/

## ADVERSARY COMPLAINT

Plaintiffs, The Official Committee of Unsecured Creditors for Debtor Summit Financial Corp., and Robert Hendler IRA file this Adversary Complaint against Defendants, Alvin Wheeler, David Wheeler and Scott Wheeler (collectively "Defendants" or "Wheelers"), and allege as follows:

1.    This adversary proceeding is brought under 11 U.S.C. § 510(c) to equitably subordinate the claims of Alvin Wheeler, David Wheeler and Scott Wheeler, directors and officers and/or former directors and officers of the Debtor Summit Financial Corp., or alternatively, to reclassify such claims, filed as unsecured debt, to equity.

## JURISDICTION, VENUE AND PARTIES

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b)(1) and (2)(A), (B) and (O), and 1334(b).

3. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (O).

4. Venue is proper in this District pursuant to 28 U.S.C. § 1409 in that the Chapter 11 case of Debtor Summit Financial Corp. is pending in this District and Defendants reside in this District.

5. Plaintiff, the Official Committee of Unsecured Creditors (the "Committee") for Debtor Summit Financial Corp., was appointed by the Office of the United States Trustee on April 20, 2018.

6. Plaintiff Robert Hendler IRA (also referred to on Claim as Pensco Trust Company LLC Custodian FBO Robert Hendler IRA) ("Hendler"). Hendler is a member of and Chairman of the Committee and has filed Claim No. 45 in the amount of $700,000 against the Summit estate.

9. Defendant Alvin Wheeler is a resident of Broward County, Florida and at all material times relevant to this Complaint, was the President of Summit. Upon information and belief, it is Plaintiffs' understanding that Defendant Alvin Wheeler has advised certain parties that he has resigned as an officer and director of Summit.

10. Defendant David Wheeler is a resident of Broward County, Florida and is the Chief Executive Officer and Vice President of Summit.

11. Defendant Scott Wheeler is a resident of Broward County, Florida and is the Treasurer of Summit.

## FACTS COMMON TO ALL COUNTS

12. Debtor Summit Financial Corp. is a Florida corporation that was formed in

2

or about 1984 and was and remained as of Summit's bankruptcy filing on March 23, 2018 (the "Bankruptcy Petition Date"), in the business of purchasing and servicing automobile retail installment sales contracts originated at franchised automobile dealerships and select independent used car dealerships located in the State of Florida.

13. The Debtor financed its operations through secured credit facilities. The most recent such facility, in the principal amount of up to $105 million, was amended and restated on February 14, 2017 pursuant to a Third Amended and Restated Loan and Security Agreement between the Debtor and Bank of America, N.A. ("Bank of America") as administrative and collateral agent for itself and BMO Harris Bank, N.A. ("BMO Harris" and collectively with Bank of America, "Bank of America").

14. As of the Bankruptcy Petition Date, Bank of America possessed and presently possesses a security interest in substantially all of Summit's business assets, including all monies due and owing or received from collections upon the automobile retail installment contacts purchased by Summit. Bank of America also is in possession of certain personal guaranties executed in its favor by each of the Defendants.

15. Defendants Alvin Wheeler and David Wheeler, and upon information and belief, Scott Wheeler, also solicited financing for Summit through unsecured loans (the "Unsecured Loans") provided by private third-party lenders (the "Private Lenders").

16. These Private Lenders were ostensibly third parties who were friends of the Wheeler family and specifically knew the Defendants whether through social or professional relationships or in one case even worked as a housekeeper for one of the Defendants.

17. The Defendants memorialized the Unsecured Loans solicited from and provided by these Private Lenders by way of an "Unsecured Subordinated Promissory Note" (the

"Subordinated Note(s)") issued by Summit in favor of these Private Lenders. The typical Subordinated Note provided for (i) monthly interest payments, in arrears, at a rate of 12 percent per annum, and (ii) a maturity date of two (2) years from issuance, at which time all principal and any unpaid interest would be due and payable.

18. Although the Subordinated Notes issued by Summit to the Private Lenders qualified as "securities" which, it is submitted, were not exempt from registration requirements under both federal and state securities laws, Defendants failed to comply with such registration requirements in violation of Section 12(d)(1) of the Securities Act of 1933 and Fla. Stat. § 517.07. Notwithstanding, Defendants continued to raise funds from such Private Lenders based, in part and on occasion, on false representations made to these Private Lenders as to the financial wherewithal of Summit and Defendants' intentions to repay the Private Lenders before repayment of any monies due and owing to Defendants or Defendants' immediate family members.

19. In fact, from March 22, 2014 through the Bankruptcy Petition Date, the financial records of Summit reflect that Summit distributed, in the aggregate, approximately $11 million to Defendants, which distributions were booked either as wages and expense reimbursement, interest repayments or equity distributions. Indeed, in the one year period preceding the Bankruptcy Petition Date, Defendants received distributions totaling approximately $1.7 million, which amount was increased as on July 25, 2017, Alvin Wheeler and David Wheeler received alleged "Shareholder Loan Repayments" in the amounts of $499,584.00 and $379,594, respectively. Tellingly, neither of the Shareholder Loan Repayments that occurred on July 25, 2017, within the one-year pre-petition period, were disclosed in Summit's Statement of Financial Affairs.

20. In many, if not most cases, the Unsecured Loans made by these Private Lenders matured without Summit either paying all principal and interest due under such Loans or formally

renewing and extending such Loans. Rather, Summit simply would continue to pay the monthly interest payments provided for under the matured Subordinated Notes without regard to any principal reduction or satisfaction, or the demand nature of these matured Subordinated Notes.

21. Tellingly, upon information and belief, in order to mislead Bank of America and its auditor, Crowe Horwath, as to the true maturity dates of many of the Subordinated Notes, Defendants and Summit created "doctored" notes which reflected an issuance date of December 31, 2016, and attached as a second page to such notes, what appears to be a duplicate copy of the same signature page signed by Defendant David Wheeler. These "doctored" notes served to show loan maturity dates of Subordinated Notes issued by Summit to the Private Lenders well beyond their actual maturity dates and then were used by Defendants and Summit to apparently mislead Summit's auditors. Thus, Summit's 2014 and 2015 audited Financial Statement, issued in April, 2016, reflects approximately $14.5 million in non-related subordinated debt maturing in 2017. Yet, the audited Financial Statement for 2016, issued in 2017, reflects only $550,000 in subordinated non-related party debt maturing in 2017 and $17,990,853 maturing in 2018. True and correct copies of relevant excerpts from these Financial Statements are attached as Exhibits 1 and 2, respectively.

22. By example only, creditor Sydelle Lazar loaned the principal amount of $600,000 to Summit, which was memorialized in a Subordinated Note dated July 1, 2013 and attached to creditor Lazar's proof of claim 41-1 filed with the Bankruptcy Court. A true and correct copy of this claim and the attached Note are attached to this Complaint as Exhibit 3. Yet, the Subordinated Note which Defendants apparently provided to Bank of America prior to the Bankruptcy Petition Date and to the Committee in this case was a December 31, 2016 Subordinated Note attached hereto as Exhibit 4.

23.     By example only, in 2013, Plaintiff Robert Hendler loaned through the custodian for his IRA, Morgan Stanley, the sum of $700,000 to Summit, which was memorialized in a Subordinated Note dated November 1, 2013.  When Hendler changed custodian for his IRA to Pensco Trust, he requested a new Subordinated Note to reflect such new custodian and received a new Subordinated Note dated July 7, 2016 in the amount of $700,000, signed by Defendant Alvin Wheeler. True and correct copies of the foregoing Subordinated Notes are attached to Plaintiff Hendler's proof of claim 45-1, which is attached to this Complaint as Exhibit 5.  Yet, notwithstanding the issuance of a new Subordinated Note to Hendler in July, 2016, Defendants provided both Bank of America and upon information and belief, its auditor, with a "doctored" Subordinated Note dated December 31, 2016, which is attached to this Complaint as Exhibit 6.

24.     The foregoing examples are but two of many instances where Defendants created "doctored" Subordinated Notes dated December 31, 2016.

25.     Upon information and belief, the Debtor and the Wheelers authorized and/or perpetrated the creation of "doctored" Subordinated Notes, dated December 31, 2016 and thereafter, as well as misrepresented in the Debtor's 2016 Financial Statement the actual maturity of the Debtor's subordinated debt, for the purpose of causing Bank of America to continue to underwrite its credit facility and enter into a Third Amended and Restated Loan and Security Agreement in February, 2017 with the Debtor, as well as avoid the undeniable fact that millions of dollars in unsecured debt had matured and was due and owing. In addition, the Debtor provided these same "doctored" Notes to the Committee's financial consultants, Kapila/Mukamal, along with a schedule that corresponded to the maturity dates of the "doctored" Notes.

26.     Despite creating these "false" Subordinated Notes in order to extend the maturity of and draw under its secured credit facility with Bank of America, on March 23, 2018, after such

facility matured and being unable to either repay the credit facility or obtain refinancing, Summit filed for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court").

27. As of the time of Summit's Chapter 11 filing and as a result of the pre-bankruptcy failure of Defendants and Summit to satisfy the Unsecured Loans made by the Private Lenders upon maturity, a substantial portion of these Unsecured Loans remained unpaid when Summit filed for protection under Chapter 11. In its Schedule F filed with the Bankruptcy Court on April 20, 2018, the Debtor identified approximately $17,845,277 being owed to 43 Private Lenders (*non-insider) as of the Petition Date. In addition to such "scheduled claims," Private Lenders have filed 37 proofs of claim (*excluding duplicates) in the aggregate amount of approximately $15,005,277.

28. By the same token, in its Schedule F filed with the Bankruptcy Court on April 20, 2018, Summit identified $8 million of subordinated debt relating to alleged subordinated note claims of the Defendants (and an additional $339,000 relates to Wheeler Real Estate Enterprises, LLC). Schedule F also includes claims of other non-Wheeler legal insiders.

29. Once Summit filed for protection under Chapter 11, rather than taking actions in Summit's Bankruptcy Case to maximize distributions that could be made to such Private Lenders, Defendants chose to pursue a path designed to maximize Defendants' personal recoveries in the Bankruptcy Case to the detriment of the Private Lenders and insulate from attack or future recovery for the benefit of the Private Lenders, the in excess of $11 million which Defendants took out of the coffers of Summit in the four years preceding the Bankruptcy Petition Date.

30. Thus, despite the financial records of Summit revealing that monies went in and out of Summit from and to Defendants, without regard to classification or amount, Defendants,

7

each separately, filed proofs of claim 53-1 (Scott), 54-1 (David) and 55-1 (Alvin) in the respective amounts of $368,859.00, $1,200,000.00 and $6,936,640.00 (collectively, the "Defendant Claims"). These Defendant Claims are attached to the Complaint as Exhibits 7, 8 and 9. Defendant Alvin Wheeler's proof of claim includes $2.5 Million related to monies Alvin Wheeler put into Summit *after* Bank of America apparently discovered that due to alleged misrepresentations of Summit as to the quantity and quality of the Bank's Collateral, the Bank had over-advanced amounts to Summit. When Defendant Alvin Wheeler attempted to "book" such monies as a loan, Bank of America insisted that the monies be reclassified as capital.

31. Not only did the Defendant Claims allege as their basis "loan and shareholder investment," and seek amounts which were not supported by the financial records of Summit, but to support such Claims, Defendants merely attached G/L spreadsheet type print outs of financial records they alone control. In connection with the Committee's discovery and investigation of all claims, David and Alvin Wheeler provided the Committee with all of the alleged subordinated notes. The notes that were provided to the Committee included alleged notes to the Wheelers that were the same type of "doctored" promissory notes (albeit with dates in 2017 and 2018) containing the copied signature page of Defendant David Wheeler which Defendants had previously presented to both its auditors and Bank of America.

32. It is the position of the Defendants that the Defendant Claims are invalid in that they are not based on legitimate and verifiable loans which the Defendants made to Summit. Notwithstanding, during Summit's bankruptcy case, the Defendants attempted to use their filing of the Defendant Claims and assertion that they could vote against and block any Chapter 11 plan proposed by the Committee as a basis to compel both the Committee and Private Lenders to support plan provisions which would release Defendants from any claims which Summit may

8

possess against Defendants. In fact, specifically, Defendants advised that absent the Committee and Private Lenders supporting Defendants being provided the releases in question, Defendants would cause Summit to seek conversion of this Bankruptcy Case to Chapter 7, which Summit did by filing a Motion to Convert on April 2, 2019 [ECF No. 470]. Knowing full well that conversion could undermine any ability of creditors to obtain value from Summit's Loan Portfolio, Defendants, using their control of Summit and in gross breach of their fiduciary duty, were willing to use their threat of conversion and the harm it would cause creditors as improper leverage to obtain releases from the Summit estate. As it turned out, despite Defendants' improper and disingenuous efforts to use the threat of harm to unsecured creditors to extract unwarranted releases from the Debtor, the Committee and Bank of America eventually agreed to a Stipulation and Liquidation Program which will potentially provide value to unsecured creditors from collections on the Loan Portfolio.

33. Defendants' attempt to use their control of Summit and their filing of invalid proofs of claim as a means to prevent a future fiduciary from investigating and potentially seeking to avoid and recover, all or a portion of the in excess of $11 million which Defendants received from Summit in the four year period preceding Summit's bankruptcy, constitutes a gross abuse of Defendants' fiduciary duty to creditors in this Bankruptcy Case and a gross abuse of the bankruptcy process.

33. Defendants have improperly attempted to undermine the bankruptcy process as a whole by providing falsified Subordinated Notes to the Committee and its professionals and using their control of Summit and threatening a conversion of this Chapter 11 case to Chapter 7 in an effort to extract personal releases which would protect them from potentially millions of dollars in liability. Furthermore, the Defendants have sought to undermine the role of the Committee and

its members by contacting Committee members and requesting that they disclose confidential Committee communications and attorney-client privileged communications.

34. One such example is an e-mail which Defendant Alvin Wheeler sent to Committee member Cathleen Scott on October 22, 2018. In such e-mail Defendant Alvin stated, in part: "I understand that you received an email from your lawyer accusing us of taking out money from this company. If you could send me a copy of that I would very much appreciate it. Of course, it is a lie." Defendants have contacted other Committee members in an effort to determine the contents of their communications with Committee counsel.

35. Defendants' inequitable conduct has caused injury to the unsecured creditors of Summit and conferred an unfair advantage on Defendants. Specifically, in raising funds from the Private Lenders, Defendants violated both federal and state securities laws and misrepresented that Defendants and their family members would be repaid on any monies put into Summit only after the Private Lenders had been repaid. In fact, Defendants took in excess of $11 million out of Summit in the four years preceding bankruptcy, which amount does not include hundreds of thousands of dollars in personal expenses directly paid by Summit on Defendants' behalf such as excessive personal credit card spending that was improperly reported as business expenses in for accounting and tax purposes. Defendants were also able to extend Summit's credit facility with Bank of America for an additional one-year period by providing the 'doctored' notes to Bank of America and their auditors. During this same one-year period, Defendants transferred to themselves from Summit an additional $2.7 million.

36. If the Bank of America credit facility was called in early 2017, the ability of unsecured creditors to be repaid would have been greater.

37.     All conditions precedent to the commencement of this proceeding have occurred, been waived or been performed.

## COUNT I
### (Equitable Subordination – 11 U.S.C. § 510(c)

38.     Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 37 above as if set forth in full in this paragraph.

39.     This is a count to equitably subordinate the Defendants' Claims to the claims of all other unsecured creditors pursuant to 11 U.S.C. § 510(c).

40.     Defendants Alvin Wheeler, David Wheeler and Scott Wheeler have engaged in inequitable and wrongful conduct as more fully set forth above, including without limitation, (i) raising funds from the Private Lenders without complying with federal and state securities laws, (ii) misrepresenting that such Private Lenders would be repaid prior to monies being transferred to Defendants or Defendants' family members and yet taking millions of dollars out of Summit prior to Summit's bankruptcy while the Private Lenders were left to assert collectively in excess of $15 million in claims in Summit's bankruptcy, (iii) creating "doctored" promissory notes which misled Bank of America and Summit's auditors as to the maturity of the Subordinated Notes issued to the Private Lenders and which information was utilized in Summit's Financial Statements and caused an extension of the credit facility with Bank of America, (iv) taking in excess of $11 million out of Summit during the four years preceding the Bankruptcy Petition Date, including close to $2.7 million in the one year preceding such Petition Date, which included alleged "loan" repayments, and using Summit funds to pay for hundreds of thousands of dollars in personal expenses, (v) filing proofs of claim in Summit's bankruptcy which were not supported by Summit's records, and in the case of at least $2.5 million claimed by Defendant Alvin Wheeler, was a "capital" contribution, and not indebtedness of Summit, and (vi) attempting to extract

unwarranted releases of their potential liability to Summit's bankruptcy estate by improperly threatening to harm the interests of unsecured creditors.

41. Defendants' inequitable and wrongful conduct injured and caused damage to Summit's creditors, including the named Plaintiffs and provided Defendants with an unfair advantage, including without limitation the ability to receive more than $11 million in transfers from Summit in the four years preceding bankruptcy, funding for Summit's continued operations through both the continuation of Bank of America's secured credit facility and loans from the Private Lenders and the ability to be paid close to $1 million in collective salary during the Bankruptcy Case.

42. Subordination of Defendants' Claims is consistent with the provisions of the Bankruptcy Code.

WHEREFORE, Plaintiffs request the entry of a judgment equitably subordinating Defendants' Claims and any other claims asserted by Defendants in this Chapter 11 case to the claims of all other unsecured creditors and granting such other and further relief as is just and proper.

## COUNT II
### (Re-characterization of Debt to Equity)

43. Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through 37 above as if set forth in full in this paragraph.

44. This count is plead in the alternative and seeks, if necessary, to re-characterize Defendants Claims from alleged debt to equity.

45. Defendants' proofs of claim filed in Summit's Bankruptcy Case each describe the basis of the claim, "loan and shareholder interest."

46. In fact, if the Court finds that any net monies were transferred by the Defendants

into Summit, such transfers were all in the form of capital contributions which Defendants thereafter withdrew from Summit at periodic times.

47. It would be inequitable and inaccurate to treat any transfer of monies from the Defendants into Summit as loans, subject to repayment, as the business and financial records of Summit reflect that Defendants continuously took monies out of and put monies into Summit and, after the fact, sought to treat such transactions in a manner most advantageous to Defendants but not reflective of their true nature.

WHEREFORE, Plaintiffs request the entry of a judgment re-characterizing any alleged loans or debt from Defendants into Summit as equity and capital contributions and granting such other and further relief as is just and proper.

Dated this 5th of June, 2019.

                    Respectfully submitted,

**RICE PUGATCH ROBINSON STORFER & COHEN, PLLC**
*Attorneys for Committee*
101 N.E. Third Avenue, Suite 1800
Fort Lauderdale, Florida   33301
Telephone:   (954) 462-8000

By: /s/Craig A. Pugatch
      **Craig A. Pugatch**
      Florida No. 653381
      capugatch@rprslaw.com
      **Kenneth B. Robinson**
      Florida Bar No. 559474
      krobinson@rprslaw.com

And

**BETH A. HENDLER, P.A.**
*Attorneys for Robert Hendler*
500 East Broward Blvd., Suite 1710
Fort Lauderdale, Florida   33394
Telephone:   (954) 848-2918

By: /s/Beth A. Hendler
      **Beth A. Hendler**
      Florida No. 89650
      beth@bahpa.com

J:\WPDocs\6115 Summit Financial\Pleadings\Committee Complaint against Wheelers v5.docx